United States District Court
For the District of Columbia


Robert J. Hickey
5601 Lambeth Road
Bethesda, Maryland 20814
202-659-0536
                        **Plaintiff**

Case: 1:07-cv-01866 (JDB)

**RECEIVED**

DEC 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Charlene Scott      v.
324 Shepherd Street, NW
Washington, D.C. 2011
202-291-0518
                        **Defendant**

AMENDED ANSWER TO COMPLAINT, DEFENSES AND COUNTERCLAIM

I, Charlene E. Scott, representing myself, offer the amended Answer in order to better comply with the expectations of the Court and respond to the Complaint as follows:

### Count I—Breach of Contract

4. Deny. I entered into an agreement with the Burch and Cronauer law firm, for whom I believed Mr. Robert Hickey was an associate attorney to represent me in a sexual harassment dispute with the United States Department of Energy. Mr. Hickey's "Attachment A" does not include the cover letter which reflects the letterhead of the Burch and Cronauer Law firm.

5. Deny, the contract was understood to be with Burch and Cronauer. I believed that Mr. Hickey was the principal attorney assigned to the case and that as such the firm would charge two hundred, twenty-five dollars per hour for his time.

6. Deny. Mr. Hickey, plaintiff, did not provide a summary to me, the defendant. Mr. Hickey provided a date of work and charged for a number of hours allegedly worked. He did not inform me of what work was performed on that day.

7. Deny. Refer to # 4. Furthermore, No interest on any outstanding balance was charged. Mr. Hickey did not bill me for interest nor did he submit interest charges to the party responsible for attorney fees (US Department of Energy) in the underlying case.

8. Deny. No statement to which objection could be raised was received from Mr. Hickey until two weeks after he submitted his attorney fee billing to the EEOC in October 2005. Objection to the billing was raised via telephone and in writing in November 2005.

 Additionally, in December 1998, I asked Mr. Hickey in writing why my attorney fees continue to accumulate at a rather consistent level since according to Mr. Hickey, there had been no activity on my case and I had not heard from him to know what was going on in my case. Mr. Hickey responded that he was doing "research", without further explanation.

9. Deny. Refer to #4

10. Deny. I saw Mr. Hickey's total attorney fee billing and summary statement approximately two weeks after he submitted the statement for review to the EEOC. The total for legal fees and disbursements was $186,295.86. At that point, I had paid Mr. Hickey about sixteen thousand, two hundred dollars ($16,200) in legal fee costs, for which I expected reimbursement.

11. Deny. Refer to # 8

12. Deny. Mr. Hickey refused to do further work on my case in October 2005, after a favorable EEOC Decision in September 2005, absent of a similar contract signed with Burch and Cronauer (in November 1997), which I informed him I could not sign. Repeated efforts to enlist Mr. Hickey's help in concluding the case failed. Six months after a favorable Decision, I enlisted the assistance of another attorney to conclude the case.

13. Deny.

14. Relief should be denied Mr. Hickey

   A. The contract in its entirety is not valid; Mr. Hickey is not entitled to any relief under the provision of the contract.
   B. Should Mr. Hickey prevail in this action, Mr. Hickey is not entitled to legal fees since he is representing himself.
   C. To be determined by this court.

## COUNT II

15. See responses 1-14.

16. Admit

17. Admit in part. The Administrative Judge ordered that "reasonable" Attorney fees be paid.

18. Unable to respond because I did quite a bit of work on the case at the Direction of Mr. Hickey. Additionally, Mr. Hickey asked me to send the same information to him over and over. Mr. Hickey also billed for secretarial services at an attorney rate.

19. Deny. The Administrative Judge assessed the legal billing statement and determined that $139,338.27 of the $186,295.86 fee statement was fair and reasonable and that amount should be paid to me for attorney fees. The Administrative Judge had no way of knowing how much of the $139,338.27 I had paid, whether that was the $139,338.27 or less. The remainder of the attorney fee charges was deemed excessive, repetitive or otherwise not eligible for payment.

   Thereafter, the Department of Energy mounted an appeal. Mr. Hickey's refusal to release the legal records impeded an appeal consideration on my part.

   Mr. Hickey only wanted to participate in an Appeal to address his Attorney fees and nothing more. I continued to enlist Mr. Hickey's support in my legal case and even visited his office to discuss it after

retaining another attorney. Mr. Hickey refused to talk with me. He did not have my approval to participate in the Appeal on the matter of his fees, although he did request authorization from me and the EEOC to participate at that level. Despite that, Mr. Hickey attempted to inject himself into the Appeal. When that was thwarted, Mr. Hickey petitioned the Commission to place a lien on any monetary remedy received by me. The EEOC Commission rejected that.

20. Unable to Answer. On or about June 20, 2007, I received the 139,338.27 for legal fees. This information was immediately conveyed to my Attorney of record. I have no information as to what Mr. Hickey knew or the action taken by my attorney at the time.

21. Admit in part. I explained to Mr. Hickey that of the $139,338.27 received for attorney fees and cost, $16,200 had already been paid to him; therefore, he was entitled to the $139,338.27 minus the $16,200 or $123,138.27 which represented all of the hours that the EEOC found acceptable.

22. Deny. See response to Count I

23. See response to # 21

24. I have offered to pay Mr. Hickey the Commission awarded amount of $139,338.27 fees that the EEOC deemed acceptable. I have already paid $16,200 for some of the hours worked.

25. refer to responses 21 & 24.

26. Relief as stated should not be granted
   A. Mr. Hickey is not entitled to the $16,200 also held in escrow, an amount which was previously paid him.

   B. Part of the escrow property does not belong to Mr. Hickey. At this time, no one is benefiting from the escrow account.

   C. Should be denied. See A & B.

    D. As of November 15, 2007, a total of $295.81 was paid this account. The current balance is $139,645.78. The account was opened with $10.

    E. Should be denied, refer to A & B

    F. Should be denied. Mr. Hickey represents himself and as such is not entitled to legal fees should he prevail.

DEFENSES

1. Mr. Hickey's claim is invalid in that he has no written contract with me. The contract at issue is uncertain in that Mr. Hickey misrepresented himself as a member of Burch and Cronauer, with whom I believed I was contracting. In this regard, a complaint was made to the District Bar Association which cautioned Mr. Hickey against misrepresenting himself.

2. Parts of Mr. Hickey's billing has already been decided to be unnecessary and repetitious by the Administrative Judge in the EEOC case. I should not have to pay Mr. Hickey for time that an Administrative Law Judge has found unreasonable.

A reduction in Mr. Hickey's fees can be personally substantiated by me. I did not see or speak to Mr. Hickey for four years consecutively and for long periods in between. My short telephone calls were primarily with his secretary.

After the initial sessions with Mr. Hickey at the start of my EEOC case, except for the Investigation interview with the assigned investigator, and the hearing itself, I have not spent more than 60 minutes with Mr. Hickey. Additionally, on the limited times that I spoke with Mr. Hickey on the telephone; the discussion was under ten minutes.

I wrote and rewrote numerous lengthy statements to questionnaires throughout my association with Mr. Hickey and at the investigation stage and at the hearing stage. I responded to interrogatories and I compiled

information for the remedy section and calculated the award amounts over and over, since Mr. Hickey suggested the calculations be done in different ways at different levels and at various stages of the process.

3. Mr. Hickey alleged in a case before the U.S. District Court, Civil Docket for case #:1:00-cv-01712-RJL, that he was in constant pain and unable to work. His medical records and his Income statements should attest to this; however, Mr. Hickey allegedly worked my case with fever and billed accordingly. (When stated before the District Bar, Mr. Hickey denied that he had a case in the US District Court at the same time that I was seeking to go into the District Court. However, I was able to forward that information to the Bar.)

4. Mr. Hickey terminated his legal services with me after a Decision in September 2005, but before remedies could be executed. Mr. Hickey left the underlying case at a critical time. This caused me considerable anxiety. The Department became aware of my legal difficulties. Subsequently, the work that Mr. Hickey performed was appealed.

# COUNTERCLAIM

1. To my belief, I entered into a legal contract with Burch and Cronauer in November 1997, whereby Mr. Hickey acted as the primary attorney representing me in a dispute with the Department of Energy in a Title VII, Sexual Harassment Discrimination Case.

2. Mr. Hickey opened an office in or about April 1998, without seeking my approval on taking my case with him, and went into solo legal practice. His letterhead changed and his secretary informed me of the change in a passing manner.

   Later in that year, Mr. Hickey proposed a contract that he receive an hourly wage and a percentage of any awards. I informed him that I could not sign such a contract.

3. I never visited his new office until October 2002. Mr. Hickey and I communicated strictly by mail and through his secretary.

4. I received a favorable EEOC Decision in September 2005. It was at that point, Mr. Hickey raised the issue of his fees and the contract again.

5. In discussions with Mr. Hickey from October 2005-February 2006 regarding his contract, Mr. Hickey refused to sign another contract whereby he would list the day of activity, a description of the activity, and the length of time spent on the activity.

6. Mr. Hickey refused to continue work on my case despite a favorable ruling, in seeking to spell out a specific award amount for me. The Decision only said "three years back pay, minus interim earnings, plus interest". Mr. Hickey would continue to work only if I signed a contact with him that would use the same language as the contract signed with Burch and Cronauer. Mr. Hickey interpreted that language to cite only a date and amount of time.

7. Despite that, I wanted to meet with Mr. Hickey, who seemed to control my case at that time, to resolve the problem with the contract. He wrote in a letter dated February 17, 2006 that no such meeting would occur without acquiescence to his contract demand. He further stated in a telephone discussion that the only acceptable method of billing was the one he proposed which included no description of activity.

8. Mr. Hickey continued to talk with the Department of Energy about his fees only and never brought up specific remedies for me.

9. On receiving Mr. Hickey's billing statement to the EEOC two weeks after his dated statement to the EEOC in late October 2005. He over billed me for time spent with me, and had me doing work over and over again. I had to send him faxes over and over again, supply him information over and over again. He asked me to write the investigatory response to 20 questions, which eventually turned into over 32 pages. He had me write the interrogatories, which eventually became his statement of the facts for the hearing.

10. Mr. Hickey finally agreed to accept what DOE evaluated as fair and reasonable, $143,106.75 and return the $16,000 that I paid him.

11. The problem arose when I refused to sign another agreement similar to the agreement of November 1997.

12. I obtained another attorney, Mr. Leon Swinson, in March 2006, as a result of the impasse with Mr. Hickey.

13. Mr. Hickey's refusal to work my case allowed six months after a favorable decision, a critical time, to pass without representation for me.

14. The Department of Energy became aware of my lack of representation and acted to benefit the Agency.

15. During the EEOC Hearing in March 2005 when asked if I had seen a doctor regarding my mental health, he interjected that I had seen a doctor one time. (This is in the transcript) This was voluntary misinformation. Mr. Hickey had me keep a diary from October 1998 until 2003. The diary is pretty consistent in the beginning but trails off at the end. The first entry states that I have seen a doctor regarding my mental health three times as of the first entry. I was treated at least until 2002 for a Dysthymic condition (mood disorder) and then Major Depression from 2002 through 2003. He made copies of the entries, but never submitted any of it.

16. Further, Mr. Hickey did not require a psychological evaluation for me. The Magistrate Judge specially stated that she did not have a mental health evaluation to assist in determining a compensatory award. When I inquired of Mr. Hickey at a date before the hearing if a needed a psychological or psychiatric, he replied that was not necessary. A psychological could have established that I was profoundly effected, and fought to maintain sanity. To illustrate, I was disoriented as to time and space and used clues such as calendars to help.

17. Mr. Hickey, reputed to have vast EEOC and Title VII experience and served on the American Bar Association at the National level as an expert in the field, should have known what the requirement for the EEOC was in compensatory damages. The ceiling on this type of damage was $300,000. The hurt and damage I suffered emotionally easily should have meant more than it ultimately did at $45,000. The judge had nothing to hang her hat on except my word and the word of my family.

18. Mr. Hickey billed to the penny his every expense, but failed to tell me that I could recoup for my cost of over fifteen hundred dollars transportation and accommodating out-of-town witnesses. He later stated that he did not want to hold up the billing process.

19. Mr. Hickey failed to include important mortgage information when my house went into foreclosure as a result of my lost of employment. He asked me later if I was able to locate the information. He had the information, but did not include it. That particular mortgage statement was faxed to him at lest three times. This was an amount claimed by me, which appeared on the foreclosure lost statement. But was not included in his documentation. The amount was $24,000. I did not receive 33 percent of this amount.

20. Mr. Hickey refused to turn over my legal records saying that he needed them and that I had copies of everything, and if necessary my new attorney could come to his office and make copies of what he needed. Mr. Hickey did not think to make copies of what he perceived my new attorney needed. Mr. Hickey assumed that I

had records of everything. I informed him that I did not. I had given him original mortgage records statements. Additionally, I could not be certain which information I did not have. It was up to Mr. Hickey to product my record to my new attorney so that he could know my case. As it was, It was not possible to get the new attorney well acquainted with my case. We did not have the record of exhibits used at the hearing and other official information which would have made the new attorney comfortable with the case. Mr. Swinson and Mr. Hickey's schedules varied greatly. They were not available at the same time.

21. Clearly, Mr. Hickey's refusal to turn over the record saying that he needed them to support his fees missed the point that we needed the records to mount an effective appeal. Consequently, the decision was made not to appeal the very limited award of back pay that I was awarded.

22. No appeal of Mr. Hickey's attorney fees would be pursued especially since I could not justify his billing statement.

23. Mr. Hickey had a Conflict of Interest in bringing my case into the Federal Court. At first, Mr. Hickey told me that with a favorable EEOC Decision of the contractor/employee issue, we might consider going into the Federal Court. But when that happened in December 2001, Mr. Hickey was not anxious at all to go into the Federal Court. I subsequently learned that Mr. Hickey had a case wherein he alleged that he was in constant pain and unable to work. He filed that in 2000. I wanted to take my case into Federal Court in December 2001 after my employment status was found to be an "employee" rather than a "contractor". Mr. Hickey acted to dissuade me saying that I could not afford it. Even after asking how much would it be I never got an answer.

24. In the complaint made to the District Bar Association, Mr. Hickey denied having a case in the Federal Court. I mailed the case information to the District Bar Association.

25. Mr. Hickey never informed me that he was sick and might be unable to respond to my case as needed.

26. The federal court process would have been timelier and may have awarded the case more appropriately.

27. Mr. Hickey had me figure out damages over and over again. He had me research the Civil Services Retirement program, benefits packages, COLA's, etc. Using the information that he had me gather, I computed damages to be about two million dollars.

28. I learned at a pre-hearing conference in 2005 that the EEOC restricted the amount that the Commission awarded, unlike the federal Court according to the Magistrate Judge. Mr. Hickey, with his experience, should have known that.

The above highlight how Mr. Hickey sought his own enrichment and sacrificed my interest in the case that he handled for me. He lied before the Bar Counsel in defending his action. I feel that it is proper to state that undoubtedly Mr. Hickey practiced law in the chicanerous manner described in statements above. This type of practice should be stopped and Mr. Hickey strongly discouraged to refrain from unethical contracts, padding his billing, and putting his interest before the interest of his clients.

I ask for judgment against Mr. Hickey in an amount to be determined.

Respectfully submitted,

*Charlene E. Scott*
Charlene E. Scott
324 Shepherd Street, NW
Washington, D.C. 20011
(202) 291-0518

## Certificate

The undersigned certifies to the U.S. District Court for the District of Columbia that this document is correct and true to the best of my knowledge.

A copy was mailed to the Plaintiff, Mr. Robert J. Hickey, Law Offices of Robert J. Hickey, 733 15th Street, NW  Suite 700, Washington, D.C. 20005
on the date of November 30, 2007.

*Charlene E. Scott*
Charlene E. Scott

11/30/07
Date