**United States District Court**
**For the District of Columbia**

**Robert J. Hickey**
**5601 Lambeth Road**
**Bethesda, Maryland 20814**
**202-659-0536**

**RECEIVED**

JAN  7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**Plaintiff**

**Case: 1:07-cv-01866 (JDB)**

**Charlene Scott**          **v.**
**324 Shepherd Street, NW**
**Washington, D.C. 2011**
**202-291-0518**

**Defendant**

**Response to Plaintiff's Motion to Dismiss the Defendant's Amended**

**Answer and Counterclaim and in the Alternative, Motion to Strike.**

On October 17, 2007 the Plaintiff filed a Summons in a Civil case which was delivered to

The defendant's home on October 27, 2007 by carrier and accepted by the defendant's

grandson. An answer was required within 20 days after service. An answer was made

well within the 20 day time frame on November 6, 2007.

However, on November 20, 2007 the Plaintiff filed a Motion for Judgment on the

Pleadings or in the Alternative to Strike Defendant's Answer in Whole or in Part, stating

that the form was not correct. On the same date, the Plaintiff filed for an Entry of Default

claiming the Defendant's failure to respond in a timely manner. In response to the two

Motions, the Defendant filed an Amended Answer and included a Counterclaim on

November 30, 2007. Although the mailings were sent and apparently received, the mailings were re sent on December 6, 2007 because a routing error was noted on the mailing to the Plaintiff. The Court was informed of the error and re routing. On December 20, 2007, the Defendant responded to Plaintiff's Response.

The Plaintiff filed a Motion to Dismiss on December 26, 2007, the Counterclaim and Amended Answer for failure to defend in a timely manner and Defendant's failure to ask relief from the court to file an amended answer. On December 29, 2007 the Plaintiff filed a Motion to Strike Defendant's response to Plaintiff's Reply to opposition to the Plaintiff's Motion for Judgment.

Inasmuch as there was a Complaint filed and there was an Answer, the logical sequence of occurrence would appear to be a hearing. The Plaintiff is burdening the court with Motions and Responses which distract from the contract dispute and the counterclaim involved in the case.

Herein, I am forwarding a response to Plaintiff's Motion to Dismiss the Defendant's Amended Answer and Counterclaim and in the Alternative, Motion to Strike filed December 26, 2007.

## A. Response to: Plaintiff's Generalities

### 1. Response to: Defendant Failed to File a Motion Or Application For Leave To Her Amendment.

The Plaintiff addresses the Defendant's failure to request Leave to File the Amended Answer. The Plaintiff complained the first filing was not in the proper form.

The pace of Motions and Responses occurred so rapidly that the Defendant was not able to gain legal representation or obtain a copy of the rules which apply to the Federal

Court. The Defendant is not an attorney and some leeway is requested in this defense. However, the original filing contained the essentials of the Answer without the explanation and form which was added. The Court's indulgence is requested and the Defendant also request that the Amended Answer and Counterclaim be allowed into the record.

**2. Response to: the Defendant Failed to Confer With the Plaintiff Before Filing Her Amendment**

Until obtaining a copy of the rules the Defendant was not aware of the procedures. A copy of the rules was obtained on December 29, 2007. Prior to that, the Defendant attempted to imitate the conduct of the Plaintiff, who has not conferred with the Defendant about Motions that he has filed either. I believe that is it appropriate for both parties to confer before filing Motions.

**3. Response to: Defendant Fails to Comply With Federal Rules.**

To the contrary of Plaintiff's argument that my statement are not short and plain, my statements are direct, short and plain. The statements give explanation only when necessary.

**B. Answer**

**1. Response to: Untimely**

The Plaintiff served a Summons and Complaint dated as filed on October 17, 2007. However, service was not made until 10 days later on October 27, 2007. Mr. Hickey is incorrect that a response was due on November 10, 2007. The Answer was made within the 20 day prescribed response time after receipt. An amended answer was made on November 30, 2007 and re-sent on December 6, 2007.

## 2. Response to: No Short and Plain Statement

Again, my statements are as short and concise, with explanatory statements only as necessary. Mr. Hickey's dismissive characterization that my answers are vague and rambling is clearly only his opinion. Each statement is made in as a direct a fashion as possible.

## 3. Response to: Not responsive to Matters Raised in the Verified Complaint

The Plaintiff cites paragraph 12 wherein I, the Defendant discusses the Plaintiff's failure to execute the Decision of 2005-2006. However the Plaintiff's verified complaint number 12, incorrectly stated March 20, 2005. The correct date is March 20, 2006. The EEOC Decision was received on September 30, 2005. Mr. Hickey submitted his fee statement in October 2005. I objected in November 2005. Mr. Hickey and I discussed his fees and related issues until March 2006.

Paragraph 7 simply addresses the interest that the Plaintiff now would like to include in the outstanding balance; however he did not bill me interest nor did he submit interest charges to the EEOC or to DOE. Mr. Hickey represented me in an EEOC case involving DOE wherein I was awarded reasonable attorney fees. That is the only reason the EEOC case is reference and DOE mentioned.

Paragraph 18 discusses work performed by me over and over again, such as responses to the same questions, sending the same faxes for which the Plaintiff charged as though receiving new information. The answers offered are directly responsive to the Complaint, and in part, correct his inaccuracies.

**4. Response to: Dishonest Sham Assertions and Retraction of Admissions**.

The Answer is honest and sincerely submitted. Mr. Hickey continues to assert that his contract submission and my contract submission are the very same. The submissions are different because Mr. Hickey omits the cover letter which was stapled to the contract bearing the letterhead of the Law Offices of Burch and Cronuaer. At no time did I submit the contract in dispute to this court without the cover letter. Given the entirety of circumstances, how could one not conclude that Mr. Hickey claimed he was a member of the Burch and Cronauer firm? Mr. Hickey was remiss in not submitting the cover letter.

**5. Response to: Failure to Support Proposed Answer with An Affidavit or Verification**

I, the Defendant, certified that the document was correct and true to the best of my knowledge as called for in LCvR 5.1 (h). In the future, the phrase "under penalty of perjury" will be added. Any certified document submitted to the Federal Court is considered to be under penalty of perjury if knowingly was submitted fraudulently.

**C. Defenses Response**

**1. Response to: Does not Separate Defenses under Rule 8(b)**

According to the Plaintiff Rule 8 (b) the party must state in short and plain terms defenses to each claim asserted. The plaintiff objects to page 5 and the three unnumbered paragraphs. He asks if they are separate defenses, parts of other defenses or self serving comments. To answer, the additional paragraphs expound on # 2, which was necessary.

**2. Response to: No Short and Plain Statement**

The defenses are short and plain as possible and do not go into the depth of explanation that could be given in the future. The defenses directly relate to the Plaintiff's Complaint

by espousing the belief that the contract the Plaintiff relies on is without validity beyond April 1998. The contract was signed when Mr. Hickey was believed to be a member of another law firm. So, the strict terms of the contract were not in force after he left the law firm of Burch and Cronauer. However, Mr. Hickey continued as my attorney after his departure from Burch and Cronauer, but without a contract. It was understood through discussions with Mr. Hickey that he would be fairly compensated for his services, and attorney fees would be part of the remedies. Discussion also took place wherein the Defendant repeatedly stated the belief that whatever the Defendant paid would be reimbursed with a victory. Even so, Mr. Hickey walked away at a critical time from my case (after a favorable decision, but before enforcement of the Decision or other remedies could occur). That would seem to be a breach/termination initiated by him of the (understood) contract initiated by him.

Even if the original contract bore any weight, Mr. Hickey's billing was not honest.

### D. Counterclaim

### 1. Response to: No Explanation Given For Omission from the Original Answer.

I, the Defendant, was recuperating from surgery of October 26, 2007, which required three weeks bed rest. The Plaintiff was aware of this through a telephone conversation which occurred about one week after service on October 27, 2007. I was in a weaken condition and unable to actively pursue every action that was appropriate. I was not sure how to make a counterclaim, which had to be investigated. It continues to be my belief that a Counterclaim does not have to be included in an Answer but can be added at a later time.

**2. Response to: Not Allowed Where Amendment would be sufficient.**

The counterclaim asserts separate, valid claims and if considered could be demonstrated

to be valid.

**3. Response to: Standard-Bell Atlantic**

The allegations can be supported and rise above the speculative level.

**4. Response to: Applies to Pro Se Litigant**

Mr. Hickey understands that I truly am Pro Se. I hope to retain an attorney by the time

this case is heard, or as quickly as possible. Despite that, the allegations made by me are

verifiable and can meet the sufficiency of claim guideline to which the Plaintiff refers.

**Grounds for Dismissal**

**a. Response to: Lack of Separate Counterclaim**

The counterclaim is clear. If the court requires more explanation or a different type of

separation that could be provided.

**b. Futile**

**(1)Response to: No Claim on its face Shown.**

I state malpractice, conflict of interest in representing me, putting his own interest

before my interest, over billing, failure to act as my attorney in concluding the case, and

causing harm to my case. Again if restatement or regrouping is necessary that can be

provided as soon as I obtain an attorney.

**Response to Counterclaim Violated Rule 8(a)**

The statements and charges made are given succinctly and clearly in order to address

the Plaintiff's billing and misrepresentation, and failure to represent me .

**(b) Response to: the Allegations are Frivolous**

The plaintiff does not describe what about the allegations are frivolous except to state that the defendant still wanted the Plaintiff to represent her on appeal. That is an assumption on the Plaintiff's part. What I, the defendant, wanted was for the Plaintiff to finish the hearing level case before him.

**(2) Response to: Not meritorious**

As stated, sufficiency of claim is established and the counterclaim is meritorious. The essentials of this counterclaim constitute legal malpractice.

The prayer for relief would be a finding that the Plaintiff is liable for his action and specific remedies within the Court's purview, such as a referral to a lawyer counseling program. Monetary relief for the Defendant whose case was mishandled by the Plaintiff would also be appropriate. A monetary value to be determined at a later date.

**c. Response to: Not Brought in Good Faith**

The Defendant is attempting to present a clear picture of the nature and professional interaction between the Plaintiff and the Defendant. The Plaintiff states that the defendant attempts to mislead the court in regards to the 1997 contract. Yet, it is the Plaintiff who continues to ignore the circumstances of the contract and the cover letter from the firm he was believed to be employed. Further, every letter from him bore the same letterhead. The Plaintiff, Mr. Hickey, was visited at the Burch and Cronauer law offices when the case was accepted after the Defendant called Burch and Cronauer for legal representation not Mr. Hickey's office. However, the Defendant has never alleged that the Plaintiff, Mr. Hickey, should not be paid for his earnest services.

He is entitled to reasonable payment. Mr. Hickey listed his many years of legal

representation in the Defendant's case; however, at least six years were not very eventful in that there was little activity. When the case became active in about 2004, Mr. Hickey began to ask the same questions that he asked repeatedly during the first few years as though he never was supplied the information. Most of the information was in written correspondence to him.

Mr. Hickey alleges that he was unaware of the Defendant's increase in salary. Yet, each time the Defendant received a raise or accepted a new position, he was informed. Also, the Defendant started submitting Lost Wage Statements to him in 2002 in preparation for remedies, which captured the defendant's earnings versus what I would have been making if the employment at DOE had not been terminated. Mr. Hickey also received Income tax statements.

Mr. Hickey's billing was questioned in December 1998 because of a spike in the attorney fees without any activity and again in November 2005, after receiving his attorney statement with an activity summary for the first time. Several discrepancies were noted. Specific examples will be given in regards to the Plaintiff's billing at a later date. The Magistrate Judge in the EEOC case, Kathryn Brown, wrote in her order with regards to the attorney fees:

> "As an initial matter, it must be noted that I am mindful of the unusually long period of time that this case has been in the administrative process, the contentious nature of the litigation, the EEOC, Office of Federal Operations appellate litigation that preceded the Agency's investigation of the complaint, and the relative complexity of the legal issues presented. Even after accounting for the circumstances unique to this case, I find that as an individual EEO complaint involving few legal claims, which was litigated exclusively in the administrative process, without taking or defending any depositions, this matter should have required substantially less than the 809 hours of legal representation"

Mr. Hickey was also informed in November 2005 that considering his credentials, the amount of research that he did seemed excessive. In response to his perception that his credentials were questioned, Mr. Hickey responded in a letter dated December 12, 2005 that:

> ...you raise questions about my experience. I have spent 43 years handling labor problems, and have handled discrimination cases and issues all over the country. I have spoken and written on the topic over the years, including the topic of sex harassment. I served for a number of years as officer of the American Bar Association Section on Administrative Law and Regulatory Practice, and currently serving as its co-chairman. I have also served on a number of other labor committees. In fact, given my experience, you should have been charged considerably more, let alone get the reduction I gave you...

Given this type of resume, the amount of research including research of the EEOC procedural process seems excessive. Mr. Hickey continues to reference the D.C. Bar's complaint that was made as rejected (the Decision in its entirety is attached for review). I was disappointed that the Bar concluded its investigation after the Complaint, and rebuttal by the Plaintiff without an interview of the Defendant or the successor attorney, Mr. Swinson, or a thorough investigation. However, the Bar did not find totally for the Plaintiff as implied by him. He was cautioned against "misrepresenting himself" by the use of another firm's letterhead. Mr. Hickey states that the defendant (refuse) to state if "someone" is assisting me legally with this litigation. Again, the answer is I am attempting to defend myself and to illuminate the facts as stated in my counterclaim.

**Response to: Motion To Strike**

**A. Answer**

**1. Response to: Irrelevant and Immaterial**

The Answer acknowledges a contract was signed with what was believed to be Burch and

Cronauer. Mr. Hickey proposed a new contract in late 1998, but did not obtain a new

contract. Further, the Answer addresses what is false billing even with the implication

that Mr. Hickey should be compensated for reasonable and fair services

provided. Mr. Hickey's argues that I, the Defendant, asserted in paragraph 12 that he

refused to do legal work for me for which Plaintiff sought payment which ended in April

2005, is a mistake. Although, I am not sure what the Plaintiff meant to state. The

Plaintiff's fee statement covered the period through September 30, 2005, for which he

sought payment. What the Defendant states is that he refused to complete the case before

him, despite a favorable decision on September 30, 2005. A case without enforcement of

remedies is no victory. He would not do anything to achieve the remedies. He stated  that

his refusal to do any more work absent a contract similar to the Burch and Cronauer

contract meant just that, "anything that was to occur in the future, a telephone call or any

discussion was future work".   To put this in everyday plain understanding, if I called

SEARS to my house to look at my washer and the assigned repair person said to me,

there is definitely something wrong with your washer. I think that I can fix it. Then the

assigned repair person left SEARS but continued to work on my washer that was already

dismantled. AND did fix, but before putting the buttons back on the washer stated " I

want the same contract that you had with SEARS. I do not have the same staff or

resources SEARS might have had, but I've fixed your washer. Before I put the buttons

on, you must agree to the same contract. I know that you think that I charged you for

things that I did not do but I want payment." What is a consumer to do?

Mr. Hickey redresses points already made and refuted.  Mr. Hickey refused my request

and the successor attorney's request for my legal records. He stated at one time that the

Defendant could copy anything that she did not have. Yet, according to Mr. Swinson, "attempting to discuss obtaining the records with Mr. Hickey was like falling into an endless abyss". Mr. Hickey went around and around on this. Further, on the occasion that I visited Mr. Hickey's office to discuss differences, he refused to see me. A new attorney was retained only after Mr. Hickey refused to conclude the case before him by doing "future work"on an EEOC case which was decided six months earlier, but no remedies discussed for me, the Plaintiff in that case, because of what Mr. Hickey labeled as "future work".

**2. Response to: Argumentative**

The defenses are as succinct  and plain as possible and conform to Rule 8(b).

**Counterclaim**

**Response to: Not Short and Plain Statement.**

The counterclaim alleges that the Plaintiff malpracticed and gives the essentials to establish that fact. The counterclaim furthers alleges that the Plaintiff hurt the Defendant's Title VII case. Responses to the Plaintiff's lettered rebuttal statements are as follows:

    a.  The contract has been addressed repeatedly. The cover letter was left out by the Plaintiff. It established the context under which the contract was signed and the misleading information supplied by the Plaintiff.

    b.  Mr. Hickey continued to represent me after he left Burch and Cronauer. I was not consulted about Mr. Hickey taking my case with him. However, Mr. Hickey's discussion of an appeal, if necessary, is not establish. I was not sure if I wanted Mr. Hickey to continue to represent me under the

circumstances he proposed. I wanted Mr. Hickey to conclude the

case before him.

c.  I was aware that my attorney fee cost was rising even in uneventful periods. I

only became aware of the alleged reasons for the high attorney fees after Mr.

Hickey submitted his verified attorney costs. This was not consistent with the

repeated work that I performed in duplicating the same information, sending t

the same faxes or visiting his office. I further questioned the extensive

"research" being billed.

d.  It was not I who wanted a new contract, but rather it was Mr. Hickey who

wanted me to sign a contract in 2005-2006, similar to the contract signed with

Burch and Cronauer in which he would not have to inform me of the nature of

the work that he was performing. Mr. Hickey refused to conclude the case

absent my signature on such a contract.

e.  At the time, Mr. Hickey is alleging that I refused to pay him $170,095.86, he

does not acknowledge that I disputed his fees and that the EEOC had not

finished their review of his fees. Many of the EEOC disallowances had to do

with the same issues that I have raised.

f. After the Decision, Mr. Hickey only wanted to talk about attorney fees and

not approach the question of remedies awarded me and refused to do so.

g.  Mr. Hickey billed for the work he performed based on the repetitious work

that he had me, the Defendant, do as though it was new work he had

performed.

h. At one point, Mr. Hickey seemed amiable to accepting what the EEOC

deemed fair, minus what the defendant had paid him. At a later point when the defendant was forced to retain other representation. Mr. Hickey decided against accepting the fees.

i.   See the Bar Decision. The Decision was made absent an interview of me and accepted Mr. Hickey's denial; however did not totally favor the Plaintiff, especially as it relates to the contract in question and also adds that the Bar is not in position to decide some issues.

j.   Mr. Hickey made obtaining my legal records difficult, if not impossible. Discussion with my new attorney revolved in a circle. Finally, with no records produced, my options regarding an appeal were limited.

k.   Mr. Hickey was allowed to discuss his attorney fee issues prior to the decision not to appeal. Participation after that was denied. He attempted to ignore that fact even though he acknowledged in a letter immediately prior to the decision not to appeal that he could not appeal without the expressed written consent of the Defendant, which he did not receive. He also tried to have a lien on any monies awarded the defendant which was also denied.

l.   As early as 2000, with an initial victory on one basis and an expected win on appeal, I asked the Plaintiff about going into federal court as he said I could do after a win on that issue. However, he threw up road blocks and never responded to that request even in future request for transfer to the federal court. (See the attached letter dated March 7, 2000)

m.   Mr. Hickey is the attorney who directed me to compute my loss and he instructed me how to do that. I had no idea.

**Summary:.** The Plaintiff's statement is disingenuous that the Bar Counsel and EEOC rejected my arguments. I, the Defendant, support the decisions made by the EEOC and would like to forward the attorney fee amount the EEOC found to be fair and reasonable. I also requested the EEOC to deny Plaintiff's Request to Intervene and the Plaintiff's request that a lien be placed on any monetary award I might receive. Both requests by me were granted. The Bar Counsel decision can be reviewed for what it states (See attachment).

The Bar Decision does not accept Mr. Hickey's contract position and cautions him not to misrepresent himself. It also states that the Bar is not in position to decide some issues. The Bar Decision was rendered based on Mr. Hickey's denial statement and surprisingly, did not include an interview of me or the successor attorney.

If additional information is needed, I, the Defendant, am willing and able to provide such

**3. Scandalous and Vituperative and Personal Attack.**

No false information is stated in the Amended Answer or the Counterclaim or in this document. Mr. Hickey did misrepresent his activity in his billing attorney fee statement and over billed. He lied to the District Bar. He stated that he had no case in the Federal Court, when in actuality he did. He refused to complete the EEOC case, even after a favorable decision, by refusing to discuss the remedies which were won.. He made no attempt to execute the remedies. Instead he insisted that I, the Defendant in this case, sign an unconscionable contract proven to be a tool for misuse in Mr. Hickey's hands.

The District Bar did an abbreviated investigation and cautioned Mr. Hickey not to misrepresent himself by using the letterhead of another firm. The Bar concluded that Mr.

Hickey did not hurt my EEOC case. However, the Bar decision does say the other issues raised in my complaint were outside their jurisdiction.

If Mr. Hickey valuated the EEOC findings or the District Bar finding , it is surprising that he did not submit the same, especially with him having vastly superior legal knowledge to me.

## III Conclusion

The Plaintiff is burdening the court with Motions and Responses which are smokescreens to the primary issues in the case, the disputed contract and the Defendant's Counterclaim case. It is requested that the Amended Answer as well as the Counterclaim be accepted and this case allowed to proceed.

Respectfully submitted,

*Charlene E. Scott*

Charlene E. Scott


Attachments ( 2 )

## Certificate

The undersigned certifies to the U.S. District Court for the District of Columbia that this document is correct and true to the best of my knowledge, under penalty of perjury.

A copy was mailed to the Plaintiff, Mr. Robert J. Hickey, Law Offices of Robert J. Hickey, 1050 17th Street, NW, Suite 700, Washington, D.C. 20036, on the date of January 4, 2008

_Charlene E. Scott_
Charlene E. Scott

Vincent Williams

_Vincent Williams_    1-4-08
witness

# OFFICE OF BAR COUNSEL

July 31, 2007

**_CONFIDENTIAL_**

*Serving the District
of Columbia Court
of Appeals and its Board
on Professional
Responsibility*

Wallace E. Shipp, Jr.
*Bar Counsel*

*Deputy Bar Counsel*
Elizabeth A. Herman

*Senior Assistant Bar Counsel*
Julia L. Porter
Judith Hetherton

*Assistant Bar Counsel*
Joseph N. Bowman
Ross T. Dicker
Gayle Marie Brown Driver
Catherine L. Kello
Asma Naeem
Becky Neal
William Ross
H. Clay Smith, III
Traci M. Tait

*Staff Attorney*
Lawrence K. Bloom

Ms. Charlene E. Scott
324 Shephard Street, N.W.
Washington, D.C. 20011

Re:   Hickey/Scott
      Bar Docket No. 2007-D070

Dear Ms. Scott:

This office has completed its investigation of the disciplinary complaint that you filed against Robert J. Hickey, Esquire. We have evaluated this matter in light of an attorney's obligations as set forth in the District of Columbia Rules of Professional Conduct ("Rules"). It is the burden of our office to find clear and convincing evidence of a violation of the Rules in order to sustain a disciplinary proceeding against an attorney. "Clear and convincing" evidence is more than a mere preponderance of the evidence, which would be sufficient in a civil proceeding. We do not find such evidence in our investigation of the matter, and therefore, we must dismiss the complaint.

We docketed this matter for investigation on March 6, 2007, following review of your letter of complaint. You state that you retained Mr. Hickey, an attorney with the law firm of Burch & Cronauer, on November 7, 1997, to represent you in a sexual harassment and retaliatory discharge case filed with the United States Equal Opportunity Commission ("EEOC") against the Department of Energy ("Agency"). You state that he left the firm and took your file without your permission or a new contract. You state that Mr. Hickey's invoices only contained the date and number of hours that he worked and not a description of his work. You state that from April 1998 until 2002, you had very little contact with Mr. Hickey, and most of that contact was by mail. You state there were no telephone calls or face-to-face meetings. You state that throughout the representation, Mr. Hickey asked you to do a tremendous amount of work and respond repeatedly to the same questions.



Ms. Charlene E. Scott
Bar Docket No. 2007-D070
Page 2

You state that on September 30, 2005, you received a favorable EEOC ruling, which granted an award for attorney fees. You state that Mr. Hickey submitted his verified statement for attorney fees on October 6, 2005, but you objected to some of the fees. You state that you wanted to go forward with your case in federal court, but Mr. Hickey advised against continued litigation. You state that despite being awarded fees Mr. Hickey wanted you to pay his invoices and he refused to perform additional work on your case without adding an addendum to your original retainer. You say that you refused to sign an addendum and retained new counsel in March 2006. You state that Mr. Hickey continued his discussions with the involved agency regarding his fee. You state that Mr. Hickey refused to release your files to your new counsel during the pending negotiations.

You state that the agency filed an appeal and Mr. Hickey filed a Petition to Intervene on Appeal, stating that he was the attorney on the issue of legal fees. You state that you decided not to appeal the ruling in your case and refused to sign the document submitted by Mr. Hickey authorizing him to be the attorney on the attorney fee issue. You state that your case was damaged because of Mr. Hickey's refusal to complete your case and because of the inflammatory language that Mr. Hickey used.

Mr. Hickey responded to your complaint by letter dated April 24, 2007. He denies your allegations and states that during the eight year period of his representation you never complained until he requested that you pay your outstanding bill. He states that you refused to pay and told him that he would receive his payment from the Court's attorney fee award.

Mr. Hickey states that he had an office sharing agreement with Burch & Cronauer, but that you retained him individually to represent you as evidenced by the fee agreement that you signed in November 1997. He states that pursuant to the terms of the fee agreement, the monthly invoices that were sent to you contained the hours and fees spent during the time period. He says that even though there was a clause in the retainer agreement that stated that you could request a different billing format, you never raised any questions about the style of the invoice until after he filed his petition for attorney fees and litigation costs following the EEOC decision.

Mr. Hickey states that he explained the decision to you and provided his analysis regarding whether you should appeal the decision. He states that pursuant to the decision, he filed a petition for attorney fees and expenses in the amount of $186,295.86. The agency filed its objections and countered with an offer of $143,106.76. He states that you advised that you would not pay your outstanding legal

Ms. Charlene E. Scott
Bar Docket No. 2007-D070
Page 3

fee. Mr. Hickey states that after you determined not to appeal the decision, he filed a motion to intervene for the purpose of resolving the issue of his fee.

Mr. Hickey denies that he withheld your file from successor. He states that he contacted successor counsel advising that your file was available for him to copy in total or to obtain materials that he might need to complete the file that you already had in your possession. He also states that he advised successor counsel that he could have the original file as long as there were provisions for Mr. Hickey to obtain the file for use if necessary to litigate your contract dispute. He denies that he failed to communicate with you and states that his success during the EEOC matter and his invoices attest to the communications that he had with you.

We have completed our investigation and do not find sufficient evidence that Mr. Hickey violated the Rules. The Rules require that an attorney make reasonable efforts to communicate with his client and to keep them abreast of the status of their case. The evidence shows that Mr. Hickey and/or his staff took reasonable efforts to respond to your requests and to keep you informed about the status of your case. Additionally, we do not find evidence that he withheld your file from successor counsel. We do not find evidence that Mr. Hickey was ever a member of the law offices of Burch & Cronauer, P.C., but the cover letter attached to your retainer agreement raises concerns. By way of this letter, we remind Mr. Hickey of Rule 7.1 and caution him that the use of another firm's letterhead in his business correspondence may give the misleading impression that he is a member of that firm.

We do not find any evidence that Mr. Hickey damaged your case. In fact, to the contrary, the evidence reveals that you prevailed in your EEOC case winning both compensatory and punitive damages despite the fact that you did not have documentation to support your claim for non-pecuniary losses. We also note that the September 30, 2005, EEOC decision directed Mr. Hickey to file a verified statement for an award of attorney fees and litigation costs. There is no evidence that Mr. Hickey held himself out as your attorney in his petition to intervene. The evidence shows that he filed the petition in January 2007, after the decision had been rendered in your case, and that he identified himself as "former counsel." We reviewed a copy of the EEOC decision dated April 24, 2007, which upheld the earlier decision in your favor and denied Mr. Hickey's request to intervene, stating that the fee dispute is a "private contractual matter not within our purview."

Absent an agreement or statutory provision to the contrary, Mr. Hickey is not bound to accept the attorney fees awarded by EEOC as full payment for his services.

Ms. Charlene E. Scott
Bar Docket No. 2007-D070
Page 4


Additionally, the Rules do not prohibit him from initiating legal action to obtain reasonable fees that are beyond those awarded in your EEOC case. This complaint essentially presents a fee dispute that is not resolved by this office. Enclosed with this letter is a package detailing the services of the District of Columbia Attorney-Client Arbitration Board, which attempts to resolve such disputes amicably. The other issues raised in your complaint are outside the jurisdiction of this office, therefore, we do not address those issues in this analysis. In light of the above discussion, we are dismissing this matter without further investigation.

Sincerely,

Gayle Marie Brown Driver
Assistant Bar Counsel

GMBD:jnb

Enclosure:    ACAB package

cc:            Robert J. Hickey, Esquire (w/o enclosures)

LAW OFFICES

# ROBERT J. HICKEY

SUITE 700

733 15TH STREET, N.W.

WASHINGTON, D.C. 20005-6008

———

(202) 737-4370

FAX: (202) 737-4371

March 7, 2000

Ms. Charlene E. Scott
324 Shepherd Street, NW
Washington, DC 20011

Dear Charlene,

I received your letter of February 24, 2000 regarding pursuing litigation at this time. You have asked me to estimate the cost of such litigation. Unfortunately, this is almost impossible to do in your situation since a decision has to made first on the independent contractor issue. Essentially, you are involved in two litigations. Since there are so many permutations on what a Court could do in your case, there is no way to come up with a fixed estimate of fees or even a range of fees. This is one of the reasons for waiting for a decision by the EEOC on DOE's motion for reconsideration on the independent contractor issue. I also need to know from you your proposal in regard to paying your outstanding fees and disbursements already owed to me.

One way you might consider reducing costs is by having your sister (who, I understand, does EEOC work) do most of the underlying work in the litigation with my role being limited to overseeing the case – a role similar to that of local counsel. Obviously, the more work your sister can do, the lesser need for work by me.

I hope that this is helpful in your raising the necessary fees and a payment guarantee from your family members that this can be done.

Sincerely,

Robert J. Hickey

## United States District Court
## For the District of Columbia

Robert J. Hickey
5601 Lambeth Road
Bethesda, Maryland 20814
202-659-0536
                                    **Plaintiff**

                                              **Case: 1:07-cv-01866 (JDB)**


Charlene Scott              **v.**
324 Shepherd Street, NW
Washington, D.C. 2011
202-291-0518

                                    **Defendant**


                                    ORDER

Upon consideration of the Plaintiff's Motion To Dismiss the Amended Answer to

Complaint, Defenses, and Counterclaim and in the alternative, Motion to Strike the

Motion(s) is DENIED.

The Amended Answer to the Complaint, defenses and Counterclaim is ACCEPTED.


                                        _____
                                              Judge
                                        United States District of
                                        the District of Columbia