## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT J. HICKEY** | ) |
| **5601 LAMBETH ROAD** | ) |
| **BETHESDA, MARYLAND 20814** | ) |
| **202-659-0536** | ) |
| **Plaintiff** | ) |
| | )    **Case: 1:07-cv-01866 (JDB)** |
| **v.** | ) |
| **CHARLENE SCOTT** | ) |
| **324 SHEPHERD STREET NW** | ) |
| **WASHINGTON, DC 20011** | ) |
| **202-291-0518** | ) |
| **Defendant** | ) |

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION (RESPONSE) TO PLAINTIFF'S MOTION TO DISMISS AMENDED ANSWER TO COMPLAINT, DEFENSES AND COUNTERCLAIM AND, IN THE ALTERNATIVE, MOTION TO STRIKE[*]

---

[*]On January 7, 2007, Plaintiff received Defendant's Response (Opposition) to Plaintiff's Motion to Dismiss. The Response was 17 single spaced pages plus two attachments. It was Plaintiff's intent to file a Reply to this (which is attached). Under LCvR 7.1(c), Plaintiff is afforded only 5 days to file a Reply. On January 8, 2007, Plaintiff received the Court's Order. While the Order stays the proceeding pending further Order, it makes no mention of staying Plaintiff's obligation to meet LCvR 7.1(d). Accordingly, Plaintiff is filing the included Reply. If the prior Order was meant to include Plaintiff's Reply, Plaintiff requests that his Reply be included in the Court docket and be held in abeyance until further notice by the Court.

This January 8, 2008 Order, sua sponte, raises an issue of whether the Court has jurisdiction to determine the controversy. Specifically, whether the jurisdictional amount had been exceeded. This was an issue not raised by Defendant or briefed by the parties. The Verified Complaint by Plaintiff has only two Counts. The first, Count I, is a breach of contract claim for $170,095.86 plus contractual interest for the late payment for ten years. The second, Count II, is in constructive Trust for $139,338,27. Both claims on their face exceed the statutory amount of $75,000. Hartford Ins Group v. Lou Can Inc. 293 F3d 908 (5th Cir 2002). Because of the absence of briefs and a hearing, the Court has made certain assumptions regarding the underlying facts in the case. First, the Court appears to assume that the EEOC 's determination of fees under Title VII is relevant to the fee issue in Count I. The standard for fees under Title VII is radically different from that under parties' contract (Defendant had 30 days to submit written objections and by failing this waived any objection). The EEOC's ruling is limited to Title VII; the EEOC specifically stated it was making no determination under the parties' contract.

Second, the court indicated that the differences between the parties was $46, 957.59 and not the $75, 000 required by 28 USC 1332. The Court come to this conclusion by subtracting

On December 26, 2007, Plaintiff Robert J. Hickey, filed and served his Motion to

Dismiss/Motion to Strike upon Defendant Charlene Scott.[1]  On January 7, 2008, Plaintiff

received her Opposition (labeled a Response).  To this, Plaintiff files his Reply.  In so

doing, Plaintiff will follow the format and headings of his original Motion.

---

$123,138.27 of the $139,338.27 (allowing a credit to Defendant of $16,200) sought in Count II from the $170,095.85 in Count I.  This has three problems.  It ignores that $170,095.95 amount in Count I already has given Defendant credit for $16,200.  It ignores further that Plaintiff was seeking contractually agreed to late payment interest for 10 years (although not specifically determined, it is approximately in excess of $90,000) which Defendant has denied on the basis that the contract does not exist.  Lastly, it mistakenly assumed that Defendant has agreed to pay Plaintiff $123,138.37.  While the Court is correct that Defendant offered to pay Plaintiff $123,138.27 of the $139,338.27 of the amount awarded by the EEOC, she was only willing to do so if Plaintiff abandoned all his contractual claims against her which included not only the $46, 951 mentioned by the Court but the full $170,095.86 set forth in the Verified Complaint and his claim for interest under the contract for 10 years which is in excess of $90,000.  For example, in her September 10, 2007 letter Defendant made clear that she would forward the money in escrow **"in full payment for legal services."**  Further, any payment at this point would not affect the jurisdictional amount since that is determined at the time of Plaintiff's filing his claim and is not affected by subsequent events.  <u>Walker v. Walker,</u> 267 F. Supp 2d 31 (DDC 2002).  There is no assertion that the amounts claimed in the Verified Complaint were not made in good faith.  Nor is there any legal certainty that Plaintiff could not collect this amount.  <u>Pierce v. Showelle,</u> 357 F. Supp 2d 307 (DDC 2005).  There is no showing of a viable defense by Defendant, but even if there was one, this would not reduce the jurisdictional amount.  <u>Payne v. DC,</u> 559 F2d 809, 182 AppDC 1896 (1997).  Here, the Court's assumption that Defendant would turn over the escrow to Plaintiff is belied by the fact that this has not occurred; but if is this would occur in the future, it would not change the fact that the jurisdictional amount was met at the time of filing.  <u>Bettis v. Montgomery</u>, 701 F Supp 256, 257-8 (DDC 1989)  <u>Nelson v. Victory Electrical Workers</u>, 227 F. Supp 404, (D Md 1964) aff'd 338 F2d 994 (4th Cir 1967).  Additionally, in light of Defendant's challenged to contractual interest, this amount would have to be included in meeting the jurisdictional since it is part of the basis of the suit.  <u>Brown v. Webster,</u> 156 US 528 (1895); <u>Dash v. First Place Home Owners Trust</u> 248 F. Supp 489, 499, footnote 8 (MD NC 2003).  Based on established law Plaintiff's claims meet the jurisdictional amount.

[1]In March 2006, Defendant retained Leon Swinson to represent her both in the appeal filed by DOE in her sexual harassment/retaliation dispute and in her contract dispute with Plaintiff.  She reaffirmed on September 17, 2007 that Mr. Swinson was representing her on the contract dispute with Plaintiff.  Despite this, Defendant has refused to explain the present status of Mr. Swinson.  She has not indicated whether he was terminated, withdrew or is providing assistance to her.  It is clear that her Opposition (Response) was prepared by an attorney, whether it was Mr. Swinson or another attorney is unknown.

**ARGUMENT**[2]

**I. MOTION TO DISMISS**

**A.  GENERALLY**

**1.  Defendant Failed to File A Motion or Application For Leave to File Her**

**Amendment.** Pl Motion 2; Def Opp 2-3

Defendant does not dispute that she did not file a Motion for Leave as required by LCvR 7.1

(i) and the cases cited by Plaintiff.  Instead she contends on page 2-3 that events happened

so rapidly that she did not have the opportunity to gain legal representation or a copy of the

Court rules.  The principal problem with this is that Defendant was fully aware of the

possible litigation on her dispute with the Plaintiff for two years and, in fact, obtained a

lawyer, Mr. Leon Swinson, for this purpose in March 2006. She reaffirmed that he

represented her in the matter on September 17, 2007.  Defendant was also aware of the

Court requirement since she repeatedly bypassed her attorneys and filed directly.  She also

had the active assistance of her sister, an attorney, in these matters.  Finally, even though

she now admittedly has the Rules, she still has not filed a Motion for Leave and gives no

reason for not doing so.[3]  Eldridge v. Spring Industries, 882 F Supp 356 (SD NY 1995).

**2.  Defendant Failed to Confer with Plaintiff Before Filing Her Amendment.**

Pl. Motion 2-3, Def Opp 3.    Defendant does not dispute that she did not confer with

Plaintiff.  The real reason for not doing this was that she did not filed the required Motion

---

[2] Under LCvR 7.1(b) Defendant is required to file "points and authorities in opposition." However, Defendant does not meet the obligations of this Rule since she fails to cite any cases throughout her Response.  Nor does she distinguish the cases cites by Plaintiff in his Motion.

[3] On page 3, Defendant states she should be given "some leeway" since she is not an attorney.  However, Defendant wants the Court to ignore the fact that she has retained an attorney and has the assistance of her sister, an attorney.  Because of this Defendant should not be given the advantage of a pro se litigant in light of the legal resources that Defendant has.

for Leave, a non-dispositive Motion.  Instead, she argues that all she was doing was following "the conduct of Plaintiff."   However, she does not give a single example of Plaintiff not conferring with Plaintiff on a non-dispositive Motion—the reason being it that is never has occurred.  In his only non-dispositive Motion to Strike in December 2007, Plaintiff conferred with Defendant and asked whether she was going to file an opposition. Defendant stated she would get back to him but never did.  This was duly noted in the Motion as required.  Since Defendant is clearly in violation of LCvR 7.1 (m), her proposed Amendment must be dismissed.

**3.  Defendant Fails to Comply with the Federal Rules.**  Pl 3; Def Opp 3.

Plaintiff has stated Defendant has failed to comply with the Federal Rules**.**  The remainder of his Motion gives examples of this.  He also points out that Plaintiff had complained to Defendant previously about her failure to follow the Rules.   This failure is particularly astonishing since she works in the D.C. Superior Court building, has retained an attorney, Mr. Swinson, and has her sister to advise her.  Her only response to this is to say that her statements on the proposed Amendment are "direct, short and plain, " none of which is true from an objective reading of her proposal.  Whether read in part or in whole, her proposal is in clear violation of Rules 8 (b) and 8(e)(1) as with other Rules.

**B.  ANSWER**

**1.  Untimely** Pl. Motion 3, Def Opp 3.  Defendant contends that she was not served the Verified Complaint until October 27, 2007 but provides no proof of that.  But even if correct, her proposed Answer was not received until December 7, 2007 which clearly is beyond the time to respond.  Further, Defendant had not been requested or granted leave to file her proposed Answer late.  Accordingly, under any set of calculations, her proposed Answer would be untimely.

**2. No Short and Plain Statement**.  Pl. Motion 3-4;  Def. Opp. 4.

In his Motion, Plaintiff pointed out that Defendant's proposed Answer did not comply with

Rule 8(b) and (e)(1)[4] but instead engaged in arguments in a rambling response so that it is

impossible for Plaintiff to defend.  Defendant's only response is a general conclusion to the

contrary with no explanation of the facts.  Defendant's proposed Answer on its face is

contrary to Rule 8(b) and (e). This is particularly true of her interlarded commentaries to

each Answer.  Bernier v. Pagagianopoulos,, 2003 WL 22510375 (C NY 2003).  Some of her

Answers do not affirm, deny or state that she is without knowledge.  See proposed Answer

no 18, 20, 23,24.  Other answers admit "in part" but do not state what parts she is admitting

or denying.  See proposed Answers nos 17, 21.  She has multiple unnumbered paragraphs.

There are a number of cross-references which make no sense, e.g., no 23, 25.  There are

multiple defects which warrant dismissing the proposed Answer in its entirety.

**3. Not Responsive to Matters Raised in the Verified Complaint.** Pl Motion 4, Def Opp.

4.  Plaintiff in his Motion had given four examples of Defendant's proposed Answer raising

matters not contained in the Verified Complaint.   Plaintiff pointed out that proposed

paragraph 7 refers to matters after EEOC decided it was not deciding matters involving the

contract between the parties.  In her response to paragraph 4, Defendant admits that only

reason that the EEOC is referenced is that Plaintiff had previously represented her in that

case.  She does not dispute that her allegation is not relevant to matters raised in the

Verified Complaint.  The same is true to her proposed paragraph 12 that the period

---

[4] Some of her response did not affirm or deny or state she was without knowledge.  See
Proposed Answer nos 18, 20, 24, 25.  In other response, she admitted in part by, she did not
specify what parts she was not admitting of denying.  See nos. 17, 21, 23. 25.

discussed by her is not covered by the Verified Complaint.[5]  Also, in response to proposed paragraph 18, Defendant does not dispute that Plaintiff's Fee Petition did not include any alleged work done by Defendant on her case and thus is irrelevant to Count II of the Verified Complaint.  Defendant does not address the confusion caused by her proposed paragraph 10.  Because Defendant does not dispute that above, her proposed Answer does not bear a relationship to the Verified Complaint and should be dismissed.

**4.  Dishonest Sham Assertions and Retraction of Admission.**  Pl. Motion 4-5, Def Opp. 5

In his Motion, Plaintiff had pointed out that Count I of his Verified Complaint corresponds directly with the terms of his contract signed by Defendant in November 1997.  This contract is identical to the one attached by Defendant to her original Answer.  Defendant does not dispute that the terms of those two attachments correspond to the paragraphs contained in Count I.  The Agreement clearing states in the introduction that it is between "Robert John Hickey" and "Ms. Charlene E. Scott".  The remaining nine paragraphs of that Agreement refer to the obligations of Mr. Hickey and Ms. Scott.  No other party is mentioned.  Paragraph 9 of the Agreement states" when full payment is not made, Mr. Hickey retains the right to seek any and all legal and equitable remedies available to him." The same paragraph also states "Ms. Scott is free to contact any bar association or attorney for counseling and information prior to signing the Agreement."

The only argument now advanced by Defendant is that the Agreement should include the cover letter from Plaintiff transmitting the proposed Agreement to her.  The transmittal letter was on the stationary of the firm Burch & Cronauer.[6]  There is nothing in that

---

[5] Defendant is correct that the date in paragraphs 12 of the Verified complain is March 20, 2006 and not 2005.  However, this further supports Plaintiff that matters raised in her proposed paragraph 12 is beyond the period covered by Count I of the Verified Complaint.

[6] Plaintiff had a work expense sharing Agreement with Burch & Cronauer in which it was to provide his office, secretary, and other expenses (including stationary) in exchange for a

transmittal letter, or in the actual Agreement, that states it is part of the parties' Agreement. Defendant cites no case, and none exists, which make a transmittal letter part of an Agreement. There is nothing offered by Defendant to show that the parties intended that Burch & Cronauer was to be a party to their Agreement. Proof of what the parties intended is found in the parties' written Agreement. Ekedahl v. COREstaff, 183 F3d 855, 387 App DC 236 (1999). Plain and clear language of the parties' Agreement is controlling in the absence of clear evidence to the contrary. Vogel v. Tenneco Oil Co., 465 F2d 563, 150 App DC 383 (1972). Parties to a contract are held to a reasonable interpretation and will not be permitted to rest on individual subjective intent as Defendant is attempting to do. NTA National Inc. v. NC Service Corp. 511 F5 210 (DDC 1981).

Given that the parties' Agreement does not refer to Burch & Cronauer and that enforcement of the Agreement for non-payment by Defendant is only in Plaintiff's hands, it is evident that the Agreement was with Plaintiff alone. Furthermore, Defendant has not expressed any willingness to pay Burch & Cronauer for service performed under the Agreement. Add to this, Plaintiff's arrangement with Burch & Cronauer terminated in April 1998 and Defendant continued to use his services through 2005, Defendant would be estopped from claiming that she is not responsible for compensating Plaintiff for this service for the entire period on the basis of their 1997 Agreement. Moore v. BC/BS, 70 F.Supp 2d 9 (DDC 1999). Defendant accepted the benefit of the legal representation under the Agreement and may not now take an inconsistent position to avoid the corresponding obligation of paying Plaintiff's for this service. First American Discount Corp. v. CFTC, 222 F3d 1008, 343 App DC 71 (2003). Here Defendant put forth the parties Agreement as part of her original

_____

portion of his fees based on an agreed upon formula. The stationary furnished had the name Burch & Cronauer. However, it did not indicate that Plaintiff was a member of or participate in that firm. The D.C. Bar Counsel so held. See Defendant's Response attachment page 3.

Answer may not retreat from that admission in her proposed Answer.  <u>Arista Records v. Flea World</u>, Motion page 4.

**5. Failure to Support Answer with an Affidavit or Verification.** Pl Motion 5, Def Opp

Defendant concedes on page 5 that her Response is not supported by any verification or affidavit in opposition to Plaintiff's Verified Complaint.  She attempts to make it appear she is swearing to the Response.  However, Defendant specifically refused to follow the language of LCvR 5.1 (b) by omitting the phrase "under penalty of perjury."

**C. DEFENSES**

**1. Does Not Separate Defenses Under Rule 8(b).** Pl Motion 5, Def Opp 5.

Plaintiff has pointed out that Defendant proposed Answer contained both unnumbered paragraphs and number paragraphs contained unrelated items inconsistent with Rule 8(b) (and probably Rule 10 as well.)  Defendant makes no response to numbered paragraphs containing unrelated items. As for unnumbered paragraphs, she claims they "expound on #2 which was necessary."  She does not explain this assertion and on its face, it is false.  None of the unnumbered paragraphs relate to the Administrative Judge's findings.[7]  The failure to separate her Defenses should result in their dismissal.

**2. No Short and Plain Statement.** Pl. Motion 5, Def Opp 5-6.

Defendant combines her response to Plaintiff's argument 2 with her response to her argument 3 without so stating.  The latter will be addressed in the following paragraph.  As to the former, Defendant merely repeats her position that her Defenses are short and plain as required by Rule 8(b) and (e) because she says so.  However, a review by the Court will show her Defenses as being unintelligible.

---

[7] Plaintiff disputes these findings but was prevented from appealing them when Defendant chose not to appeal and the EEOC held that he could not proceed in these circumstances.

**3. Irrelevant and Immaterial** Pl. Motion 5-6, Def Opp 3-6 (mistakenly included under her response to 2).  Plaintiff in his Motion had pointed out that none of Defendant's numbered and unnumbered defenses of her proposed Answer 5-6 relate to Count I and II of Plaintiff's Verified Complaint.  Defendant, instead of pointing out how each Defenses (both numbered and unnumbered) relate to a particular aspect of Count I and II of Plaintiff's Verified Complain, merely asserts that "the defenses <u>directly</u> relate to the Plaintiff's complaint by espousing the belief that the contract the Plaintiff relied on is without validity beyond April 1998."  This assertion is not even consistent with her Defenses.  In her Defense 1, Defendants claims that Plaintiff " has no written contract with me" while her current statement in her contract is "without validity beyond April 1998."  The validity of the parties' Agreement is addressed by Plaintiff under Part I B4, supra.  Furthermore, the remaining false[8] assertions in this Response have no relationship with anything in Count I and II and for that matter with nothing in Defenses on page 5.  Further nothing in the remaining numbered and unnumbered Defenses have anything to with the alleged invalidity of the parties' Agreement.  No matter how viewed, the Defenses do not relate to Plaintiff's Verified Complaint and must be dismissed.

**D. COUNTERCLAIM**

**1. No Explanation for Omission from Original Answer** Pl. Motion 6;  Def Opp 6

Defendant does not deny that she did not include her proposed Counterclaim in her original Answer.  Instead, Defendant give three different explanation for this:  1) that a

---

[8] As noted above, Defendant refused to swear on page 5 of her Response to support her Opposition "under penalty of perjury".  What Defendant is claiming is absurd on its face and without any facts.  She would have Plaintiff working for seven years without a contract in which he "would be reimbursed with a victory, " and that he would have to depend on Defendant to fairly compensate him, and that he terminated a contract that she alleged did not exist.  In addition, Defendant does not explain why he would be sending her bills without a contract or why she paid him $16,200.  All of this is fantasy and would not meet the legal sufficiency test of <u>Bell Atlantic v. Twombly</u>, 127 S Ct 1955 (2007).

Counterclaim does not have to be included in an original Answer; 2) that she did not know how to make a Counterclaim; and 3) that she was recovering from surgery.[9]  As to the first, Defendant cites no case supporting her position.[10]  As to the second, Defendant has an attorney, Mr. Leon Swinson, and her sister who is a lawyer to call upon for advice.  She gives no explanation why this was not done.  Further, Defendant who works at the D.C. Superior Court building had access to numerous others who could have advised her in this matter.  As to her third explanation, it is contrary to common sense to believe that her surgery recovery was so bad to prevent her from filing a Counterclaim but not bad enough to prevent her from filing her original Answer to the case.  Given the above, Defendant's filing her belated Amendment without a Motion for Leave should be rejected.

**2.  Not Allowed Where Amendment Would be Futile**  Pl. Motion 6, Def Opp 7.

Defendant doe not dispute Plaintiff's position that amendments are to be rejected if insufficient and futile.

**3.  Standard-Bell Atlantic**

Defendant does not challenge the standard for review set forth in <u>Bell Atlantic v. Twombly.</u>

**4.  Applies to Pro Se Litigant**, Pl Motion 7, Def Opp 7

Defendant does not challenge that the <u>Bell Atlantic</u> standard applies to <u>pro se litigants</u>. Contrary to Defendant's assertion that "Mr. Hickey understands I truly am <u>Pro Se</u>", just the opposite is the case.  Plaintiff both in his Motion and all other pleadings filed by him has questioned Plaintiff's claim as <u>pro se</u> litigant Plaintiff had been advised by Defendant that

---

[9] Defendant states that she had a conversation with Plaintiff about this but does not state when this occurred.  As far as Plaintiff is aware, no such conversation took place.

[10] Rule 13(a) clearly anticipated that a Counterclaim must be filed with the original response since it permits only amendment when the Counterclaim was not filed through oversight, inadvertence or excusable neglect and, even in these circumstances, the pleadings must ask leave of Court before doing so which did not occur here.

she had an attorney.  He is also aware that her sister, a lawyer, was active in the litigation.

Further, he believes her present response was prepared or substantially assisted by a lawyer.

**5.  Lack of Separate Counterclaim--Grounds for Dismissal**  Pl. Motion 7, Def Opp 7

Defendant does not deny that allegations in the proposed Counterclaim is an aggregation or

various assertions in which none of element for any claim is set forth.  Defendant's position

ignored the fact that while she states this can be done later, Plaintiff is required to file an

Answer to whatever Defendant's Counterclaim is permitted and this cannot be done later

without violating Plaintiff's rights.  Given the vagueness and confusion of her proposed

Counterclaim, it lacks legal sufficiency and must be dismissed now.

**b.  Futile**

**(1) No Claim on its Face Shown** Pl Motion 7, Def Opp 7

As pointed out by Plaintiff, the proposed Counterclaim contains numerous alleged

innuendoes about Plaintiff and does not on its face, set forth any specific claims against

him.  Defendant in her Response repeats these innuendoes but again provides no specifics

which would constitute a claim.[11]  Her response is that if "restatement or regrouping is

necessary that can be provided as soon as I can obtain an attorney."  This ignores that

Defendant already has an attorney, Mr. Swinson.  She also had her sister, an attorney and

the attorney who prepared her present Response helping her.  Further, Plaintiff is required to

---

[11] Defendant mentions six items.  As to item (1) (malpractice) and (6) (causing harm), there is no plausible explanation as to what is meant and is inconsistent with her attached D.C. Bar decision, page 3 noting the opposite of Plaintiff being successful in obtaining damages for her.  As for item (4) (over billing) and (5) (failing to represent her in the future), Defendant does not set forth any obligation on Plaintiff's part and is inconsistent with her allegation that no contract between the parties existing after April 1998.  As for item (2) (conflict of interest) and (3) putting his interest before hers), there is no explanation of what she means.  As to all of these, no element of each claim is set forth.

respond to the proposed Amendment, if it is permitted, and cannot await a further "restatement or "regroups" without being denied his rights.

**[a] The Counterclaim Violated Rule 8(a)** Pl. Motion 8 Def Opp 7

Plaintiff has pointed out that Defendant had violated Rule 8(a) by filing a rambling, confused, ambiguous and vague proposed Counterclaim which left Plaintiff from knowing what Defendant was claiming. Defendant does not dispute the applicable law cited by Plaintiff but merely states the statement and charges are succinct and clear when they are not. Defendant charges are addressed in Part I D 5 b (1) and footnote11 supra.

**[b] Allegations are Frivolous.** Def Motion 8, Def Opp 8. Defendant's Response is equally frivolous. Plaintiff pointed out that Defendant had complained about Plaintiff's prior representation at the same time she wanted him to represent her on appeal. In her Response, after stating that this was an "assumption on Plaintiff's part," she goes on "what I, the Defendant, wanted was for the Plaintiff to finish the hearing level case before him". This further supports the inconsistency of her position.

**(2) Not Meritorious.** Pl. Motion 8, Def Opp 8.

Plaintiff has pointed out that the proposed Counterclaim failed to set forth essential elements of any claim under any cognizable legal theory. Defendant replies that the essential of her Counterclaim is legal malpractice. However, she does not demonstrate the elements of such are found in her proposed Counterclaim. She also ignores that the D.C. Bar Counsel had already rejected this. See Plaintiff's Motion, page 8, footnote 3. Further, Defendant ignores the five other claims in her Response 7. She also does not deny that the proposed Counterclaim does not contain the required prayer for relief but merely goes on to mention various items of possible relief not mentioned in her Counterclaim without any explanation of how they would be applicable.

**c. Not Brought in Good Faith—Harassment** Pl. Motion 9-12; Def Opp 8-10.

Plaintiff sets forth in his Motion a detailed basis for determining that Defendant had acted in bad faith in filing her proposed Amendment as a continuation of her pattern of avoiding to compensate Plaintiff for his successful representation of her.  All of this was under oath. . Defendant denies Plaintiff's assertion but her statements are not under oath since as noted in her response 5 she refused to make her response "under penalty of perjury."

On pages 11-12 of his Motion, Plaintiff summarizes six factors demonstrating her bad faith. As to the first, Defendant does not dispute that she did not pay Plaintiff what she was capable of paying even she concedes on page 8 that Plaintiff should be paid for his services. The EEOC judge in his disputed determination thought that Plaintiff should have been paid $139,338 which is considerably more that the $16, 200 actually paid by Defendant over eight years.  Second, Defendant does not dispute that there was an unrelated change by her to their contractual relationship, starting at least in April 1998.  Defendant does not dispute that the contract as signed by her in November 1997 was only between her and Plaintiff and that he never mutually agreed thereafter to any change. [12]  Third, Defendant does not dispute that she did nothing to assist Plaintiff in challenging the computation of his fees as made by the Administrative Judge which prevented him from increasing his recovery from the EEOC which would have benefited Defendant by reducing the amount owed to him. [13]

Fourth, Defendant acknowledges that D.C. Bar Counsel rejected her complaint to the

---

[12] Defendant contends that the Agreement was only with Burch & Cronauer even thought there is no mention of this in the Agreement.  See footnote 11 supra.  Her sole basis of this assertion is a transmittal letter dated November 19, 1997 which is attached to her original Answer.  The entire letter states:  "Pursuant to your conversation with my secretary and the requirement of D.C. law, I an enclosing two copies of the retainer Agreement.  Please sign both originals and return one to me with your check for $750 toward November services." There is nothing in the letter or the Agreement making the transmittal letter part of the Agreement or in any way modifying the terms of the Agreement.

[13] Both Defendant and her then counsel had agreed Plaintiff could file his objections to the award as part of her appeal.  However, after the time for an appeal had run, Defendant informed Plaintiff she did not appeal.

Association.  See attachment to her Response.  Fifth, Defendant admits in her Response 8 that despite her claims about Plaintiff's representation, she wanted him "to finish the hearing level case before him."  Sixth, Defendant does not dispute that she had withheld all 139,338.37 paid by DOE to her for legal work done by Plaintiff even though she alleges (without any legal support) that of that amount $16, 200 is not owed to him.[14]  Seventh, Defendant continues to refuse to explain the status of Mr. Leon Swinson as her attorney and who is providing legal assistance to her although delaying these proceeding because of her alleged pro se status.[15]  All the above reflect Defendant's bad faith which should result in a dismissal.  Defendant does not refute the cases cited by Plaintiff on page 12.

## II.  MOTION TO STRIKE

### A.  ANSWER

**1.  Irrelevant and Immaterial** Pl Motion 12-13, Def Opp 10-12

Plaintiff in his sworn Motion set forth several examples of immaterial allegations in

---

[14] Given her position, it is also clear that Defendant at a minimum has converted $123,138.27 of the money owed to Plaintiff.  MacAvoy v. Smithsonian, 757 F. Supp 60 (DDC 1991).  Plaintiff demands and Defendant's refusals to turn over this money shows adverse purpose of conversion.  Calvetti v. Antcliff, 346 F. Supp 92 (DDC 2004)

[15] While not among the seven points raised by Plaintiff, Defendant has raised other issues. Defendant claims that she was not aware of Plaintiff's activities until she received an activity summary.  She does not state when this occurred.  Plaintiff assumed that she is referring to the Petition for Fees sent to DOE and to her in October 2005.  What she does not state is that she was receiving various communications from Plaintiff's office during the entire period of representation.  In fact, the DOE complained there was too much communication between them.  She was also regularly receiving bills from Plaintiff and specifically refers to December 1998 billing which is long after April 1998 at a time which Defendant was claiming their the contract had ended.  The parties' Agreement allowed for a change in the format of the bills and to even for her filing objections to the bills, neither of which she exercised.  Further, although she received the Fee Petition in October 2005, she never went through it at that time or thereafter objecting to specific items in the Fee Petition.

Defendant's proposed Answer.  Defendant in her unsworn[16] Response refers to only two of them.  She does not discuss the immateriality of her proposed paragraphs 7,8,10,18, and 19.  As to her paragraph 4, Defendant's statement is that she believes her contract was with Burch & Cronauer although the contract on its face does not mention Burch & Cronauer, it only mentions Plaintiff.  Of course, Defendant's alleged subjective belief[17] is not sufficient to change the unambiguous contract[18].  Her paragraph 12 discussion has to do with future work by Plaintiff in 2006.[19]  Defendant does not dispute this but would have Plaintiff do this future work without a contract and without any assurance of getting paid.[20]

In addition, Defendant brings up her unfounded claim that she and her new attorney were denied by Plaintiff records in the EEOC case.  Besides being discussed supra, it should be noted that in her attachment of the D.C. Bar Counsel decision, page 3, the Bar Counsel specifically rejected this,  i.e., "we do not find evidence that Mr. Hickey withheld your files from your successor counsel."   Defendant also refers to Plaintiff refusing to meet her on a

---

[16] As noted, supra, Defendant would not make her Response "under penalty of perjury." Her reference to Mr. Swinson on page 12 is unfounded and unsupported hearsay, as well a meaningless.  There is no showing that Mr. Swinson (or Defendant for that matter) were denied copies of any records they did not have).  In fact, the D.C. Bar Counsel so found. See Defendant's attachment, page 3.

[17] This position is inconsistent with her prior position of relying on the transmittal letter discussed supra.

[18] Under Defendant's statement that there was no contract after April 1998 and that Plaintiff should be compensation for reasonable and fair service, this would leave Defendant paying nothing or whatever she pleased.

[19] On page 11, Defendant claims that the Fee Petition covered services performed through September 30, 2005 is clearly wrong since the last date of service in the Petition is April 30, 2005.  Plaintiff did not charge Defendant for any other work performed for her after that date.

[20] The example given on page 11 in her Response is inappropriate.  A better example is having a plumber come to your house to do work and later asking him to do additional work.  The plumber can refuse, but if does, he expects to be paid for his new work.

visit to his office but gives no specifics of that.  The Fee Petition contains numerous examples of Plaintiff meeting with her.  If Defendant is referring to 2006, she was told by Plaintiff that he could not discuss her case with her, while she was represented by another attorney, Mr. Swinson.

**2.  Argumentative,** Pl. Motion 13-14; Def Opp 13

Defendant does not respond to Plaintiff's comments and examples.

**B.  RULE 8(b) DEFENSES**  Pl Motion 14-15.

Defendant does not discuss

**C.  COUNTERCLAIM**

**1.  Not Short and Plain Statement**

Defendant does not respond to any cases cited by Plaintiff.  Not does she cite any case to the contrary.  Instead, Defendant claims that her proposed Counterclaim contains the "essentials" of a malpractice claim and Plaintiff had "hurt" her Title VII case.  She does not explain what she is referring to by "essential" and where they are found in proposed Counterclaim or how Plaintiff hurt her case since he was successful on her behalf.  Further, the Bar Counsel rejected both claims.  See attachment pages 3-4 to Defendant's Response.

**2.  Misleading**  Pl. Motion 15-19.  Defendant does not have a separate heading for this but her discussion is found on her pages 12-15.

**a.**  Defendant does not dispute that the parties' Agreement does not mention Burch & Cronauer.  The transmittal letter (which is stated in full supra) does not say it is part of the Agreement and does not abrogate any of the terms of the Agreement.  For the first time, Defendant refers to "misleading information" but does not state what it is or how it would affect an unambiguous contract.

**b.** Defendant still does not explain how Plaintiff continued to represent her from 1997 to 2006 without her approval. She claims she was not consulted despite his doing extensive work for her over an 8-year period which is preposterous. The remainder of the paragraph is inconsistent, i.e., that she was not sure she wanted Plaintiff to continue to represent her at the same time she is stating she wanted him "to conclude the case before her." She does not even state she would pay for this future work.

**c.** This is another example of Defendant's inconsistency. She claims that she had no contract after April 1998 but admits that her "billing fee costs was rising." She does not explain how this could happen in the alleged absence of a contract. As for only becoming aware of Plaintiff's work through the Fee Petition, she ignores multiple communications between them. She says she questions the extensive research despite the extensive record in the case. More important, the November 1997 Agreement gave Defendant both the right to seek changes in the format of the bills and the right to submit written objections to them, neither of which Defendant ever did.

**d.** Defendant provides no support for her statement. Plaintiff never wavered in his position that he had a contract with her. He was willing to work out a new mutually satisfactory arrangement but Defendant showed no interest. More important, Defendant still does not point to any contract which would have obligated Plaintiff to do future work, specifically without getting paid.

**e**. Defendant does not dispute that she refused to pay Plaintiff the $170,095.86 that was billed to her for services between 1997 and 2005. Nor does she assert that during that time she made a specific written objection to any bill let alone any objection within the 30 days

set forth in their Agreement.  Defendant does not dispute Plaintiff's assertion that Defendant was unwilling to pay him for future work.[21]

**f.**  Defendant does not dispute any of the assertions in this paragraph.  As this stage of the case, DOE had initially made a proposal to settle which after discussion with them, they backed down.  Throughout the litigation, Plaintiff repeatedly raised with DOE the possibility of settlement of Defendant's case even in 2005, but DOE did not want to do so but instead stated it was going to appeal the Judge's rulings (which it did,) Defendant was fully apprised of this in communications with her.

**g**.  Defendant does not dispute anything in the paragraph.  While not relevant to the paragraph, Defendant does not explain how Plaintiff was going to get information known only to her, particularly since her co-workers disputed her sexual harassment.

**h.**  Defendant again does not dispute the assertions in this paragraph.  Instead, Defendant brings up the point that Plaintiff was willing to work out a settlement with DOE based on its initial proposal which was effectively withdrawn when DOE refused to discuss it further.  Moreoever, Defendant herself had not agreed with this proposal. [22]

**i.**  Defendant does not dispute the allegations in Plaintiff's paragraph.  The March 7, 2000-letter attached to her Response does not support Defendant.  Defendant was constantly stating she did not have money or that she was facing bankruptcy as reasons for not paying Plaintiff.  She clearly did not have (if what she was saying was true) the money to finance

---

[21] Although not raised in subparagraph (e), Defendant's discussion of the EEOC ignores that the EEOC specifically held it was not ruling on the parties contract.  Further, Defendant does not correctly state what occurred.  The EEOC merely affirmed the Administrative Judge after ruling that Plaintiff could not appeal.  It did not discuss the Administrative Judge's relief or the merits of Plaintiff's objections.

[22]  Contrary to the Defendant's assertion, there was not a fee proposal made by DOE when Defendant's new attorney represented her (and Defendant points to none).   Further, Plaintiff could not participate in her case once she changed attorneys.  Nor did the EEOC allow Plaintiff to intervene on the fee issue on his own once Defendant failed to appeal.

18

which was expected to be an expensive litigation. Plaintiff had never agreed to provide this money. The letter shows that Plaintiff was trying to explore with her other means of financing the litigation. After the letter, Defendant offered no other financial sources for litigation. As noted, Bar Counsel already rejected this argument.

**j**. Again, Defendant does not dispute the assertion in this paragraph. Defendant's allegations were already rejected by Bar Counsel.[23] Neither Defendant or her then attorney ever identified any records that Plaintiff had but Defendant had not.

**h**. Defendant does not dispute this paragraph. In fact, she admits Plaintiff was originally allowed by Defendant to discuss his fees. The remainder of the paragraph is a misstatement. Plaintiff only learned of Defendant not appealing <u>after it</u> occurred. Because this was contrary to what Defendant and her then attorney had previously stated to him. He thought that a mistake had been made and suggested to Defendant how the mistake could be corrected.

**l.** Defendant does not address, let alone dispute, Plaintiff's allegations in this paragraph. As far as Defendant going to federal court, this was discussed in paragraph i. Again, This allegation was rejected by Bar Counsel.

**m**. Defendant does not dispute the allegations in the paragraph. All of the information that went into her computation came from Defendant which Defendant complained about. Defendant had informed Plaintiff what she was seeking. Plaintiff repeatedly cautioned her that she might not succeed in what she was asking. In any event, Defendant chose not to appeal the EEOC remedies and Plaintiff did not participate in that decision.

---

[23] Contrary to Defendant's assertion, Bar Counsel held that Plaintiff was not bound to accept attorney fees awarded by EEOC as full payment for his service and that he could initiate legal action to obtain such fees beyond what EEOC awarded. See attachment to Defendant's Response pages 3 and 4.

**Summary**

The above paragraphs support Plaintiff's allegations that Defendant proposed Counterclaim is misleading. Even her rebuttal is dishonest. On page 15, Defendant asserts she would like to forward the attorney fees that EEOC found to be fair and reasonable." As she admits, Defendant blocked Plaintiff from getting a hearing before the EEOC on the fairness of the fees under Title VII. As previously noted, the EEOC did <u>not</u> decide whether the fees were appropriate under the parties' contract. Further, despite her statement, there is nothing now or previously from preventing Defendant from forwarding all or part of the $139,338.20 she holds in escrow to Plaintiff. She has deliberately refused to do this. Even if she claims only $123,138.27 is owed, she has still not tendered this reduced sum to Plaintiff. What Defendant has stated is that she will forward part of the escrow to Plaintiff if he waives his rights under the contract for $170,095.86 and forgoes interest for the 10 years which is approximately $90,000 which Plaintiff has refused to do. [24]

**3. Scandalous and Vituperative Attack.** Defendant does not respond to Plaintiff's assertion that Defendant's attacks on him constitute scandalous behavior which must be stricken. She ignores the cases cited by him and cites no cases to support her position. Instead, she continues to engage in a personal attack on Plaintiff and attacks the Bar Association for ruling against her. [25]

**The Court on its Own Motion Should Impose Sanctions on Defendant and Her Unnamed Attorney.**

---

[24] For example, in her last letter, September 10, 2007, Defendant states "I have stated that I am willing for forward the money for legal work plus interest earned <u>in full payment for your legal services."</u>  Elsewhere, she states: Please advise me if the $123,138.27 plus interest can be forwarded to you <u>in full payment for your services</u>."  (emphasis added)

[25] Defendant's remaining arguments are discussed elsewhere in this Reply.

A review of the Response (Opposition) and other pleadings filed by Defendant demonstrate that they are being filed in bad faith as a way of not compensating Plaintiff for his successful representation of her.  Ridge v. USPS, 154 FRD 182 (ND Ill 1992), appeal dismissed.  983 F2d 1073 (7th Cir 1993) Clearly, Defendant by harassing Plaintiff is subject to sanctions despite her alleged pro se status.  Farriello v. Campbell, 860 F3d 547 (ED NY 1994); Wages v. IRS, 915 F2d 1230 (9th Cir 1994).  If, as evident by Defendant's Response, her Response was prepared by an unnamed attorney, that person would be subject to sanction.  In re Marker. 133 BR 340 (WD Pa 1991).  The Court has the inherent power to impose sanctions on her and her attorney.  It would also have this authority under FRCP Rule 11 (Farriello, supra) and under 29 USC 1927 (Wages, supra).  The sanction should include attorney fees, expenses and costs for work on his Motion to Dismiss and this Reply.

**CONCLUSION**

For reasons set forth above and in the initial Motions, Defendant's proposed Amendment should be dismissed, or in the alternative, it should be stricken in whole or in part.   Also, the Court, in its discretion, should impose sanctions on Defendant and her attorney.

Respectfully submitted,


/S/_____

Robert J. Hickey, Bar No. 42341
Law Office of Robert J. Hickey
1050 17th Street NW, Suite 700
Washington, DC 20036
202.659-0536 (office)
202.659.0537 (fax)
Attorney for Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of January 2008, Plaintiff's Reply was filed via the ECF system and by first class mail, postage prepaid to Defendant Charlene Scott, 324 Shepherd Street NW, Washington, DC 20011.

/S/_____

Robert J. Hickey
1050 17th Street NW, Suite 700
Washington, DC 20036