## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ROBERT J. HICKEY** | ) | |
| **5601 LAMBETH ROAD** | ) | |
| **BETHESDA, MARYLAND 20814** | ) | |
| **202-659-0536** | ) | |
| **Plaintiff** | ) | |
| | ) | **Case: 1:07-cv-01866 (JDB)** |
| **v.** | ) | |
| **CHARLENE SCOTT** | ) | |
| **324 SHEPHERD STREET NW** | ) | |
| **WASHINGTON, DC 20011** | ) | |
| **202-291-0518** | ) | |
| **Defendant** | ) | |

### PLAINTIFF'S REPLY TO DEFENDANT'S COUNTERCLAIM

### AND PLAINTIFF'S COUNTERCLAIM

Plaintiff, Robert J. Hickey, hereby replies Defendant's Counterclaim in Part I and sets forth his own Counterclaim in Part II.

### PART I—REPLY TO DEFENDANT'S COUNTERCLAIM

### FIRST DEFENSE

1. Denies.

2. Denies (both paragraphs) but admits he relocated his office on or about May 1, 1998.

3. Denies and avers that Defendant communicated with and visited Plaintiff's offices during the period November 1997 through September 30, 2005.

4. Admits first sentence; denies the second; Plaintiff further avers that he repeatedly raised payment of her legal bills with Defendant who stated she would pay when her financial situation improved but did not do so.

5. Denies and avers that Defendant refused to honor her existing contract after November 30, 2005 and or enter into any new arrangement whereby she would pay for all future work.

6. Denies.

7.  Denies and avers that Defendant refused to discuss payment of past and future bills after November 30, 2005.

8.  Denies.

9.  Denies and avers that Defendant never submitted written objections to any bill as required by paragraph 9 of their Agreement.

10.  Denies inasmuch as DOE refused to go through with "offer" and proposal was not agreed to by Defendant.

11.  Denies and avers that problems arose on or about November 29, 2005 when Defendant refused to pay on her existing bills despite having the financial resources to do so.

12.  Is without knowledge as to when Defendant retained Mr. Swinson and denies remainder of sentence.  Plaintiff was informed of the change in counsel on March 29, 2006.

13.  Denies and avers that Defendant would not pay for any future work on her case.

14.  Is without knowledge of DOE alleged awareness or actions.

15.  Denies.  Further, Defendant never provided a copy of the transcript or hearing exhibits to the Plaintiff, although she promised to do so.  Further, Defendant did not appeal.  The Administrative Judge's decision, page 23, set forth the factors she considered in determining compensatory damages.

16.  Denies.  See also answer #15.

17.  Admits to his experience in the employment law field but denies the remainder of the paragraph.  See also answer to #15.

18.  Denies.

19.  Denies and further avers that Defendant never appealed issues relating to her mortgage foreclosure.

20.  Denies but admitted he needed the documents for his contractual dispute with Defendant and had agreed to provide copies of any documents she did not have and to make arrangements for use of his copies where needed.

21.  Denies.  See also answer to #20.

22.  Denies except that Defendant did not pursue the issues of attorney fees although she had indicated she had no objection to Plaintiff appealing this issue as part of her appeal.

23.  Denies and avers that Defendant stated she could not afford Court litigation and further that Defendant wrote on January 16, 2002 that Plaintiff's judgment about "pursuing the matter from an administrative process is sound."

24.  Denies the first sentence and has no knowledge of the second sentence.

25.  Defendant was aware prior to entering into her contract with Plaintiff in 1997 that Plaintiff used a cane to assist him in walking.  Plaintiff denies he did not respond to Defendant's case as needed.

26.  Denies as speculative.

27.  Admits that Defendant provided damages information to Plaintiff but Defendant was fully aware that any recovery of two million dollars by her was highly unrealistic.

28.  Denies.

29.  The contents of unnumbered paragraph on the top of page 16 are denied and should have to been stricken as scandalous.

30.  To the extent not specifically admitted, each and every averment in the Counterclaim is denied. Further, to the extent that every averment in the Amended Answer is being used by Defendant to support her Counterclaim, they are denied.

**SECOND DEFENSE**

Defendant fails to set forth a claim for which relief can be granted.

**THIRD DEFENSE**

To the extent that Defendant is claiming that Plaintiff engaged in fraud and/or misrepresentation, Defendant has failed to comply with Rule 9(b) by not setting forth the circumstances constituting fraud with particularity.

## FOURTH DEFENSE

Inasmuch as Plaintiff has asserted that Defendant did not submit any written objection to any invoice within the 30 days of rendering required by paragraph 9 of their November 19, 1997 agreement, Defendant has failed to establish that it has performed a condition precedent under Rule 9(c).

## FIFTH DEFENSE

Defendant's Counterclaim is barred as an attempted relitigation of issues determined adversely to her by the District of Columbia Bar Counsel.

## SIXTH DEFENSE

To the extent that Defendant's Counterclaim is based on an alleged contract with the firm of Burch & Cronauer, it should be denied as no such contract existed.

## SEVENTH DEFENSE

Plaintiff's contract with Defendant entered into in November 1997 governed the contractual obligations of the parties until March 29, 2006 when it was terminated by Defendant.

## EIGHTH DEFENSE

The transmittal letter dated on or about November 19, 1997 accompanying Plaintiff's proposed November 19, 1997 contract contained no contract terms and was not integrated into or referred to in the November 19, 1997 agreement.

## NINTH DEFENSE

No contractual obligation existed obligating Plaintiff to represent Defendant without a contract or guarantee of payment for future work.

## TENTH DEFENSE

Defendant is bound by the provision of her November 19 1997 contract with Plaintiff governing format and objections to bills, which she had entered into voluntarily; nor she did not seek such a change to these contractual provisions prior to November 2005.

### ELEVENTH DEFENSE

Defendant blocked an attempt by Plaintiff to have the issues of the Administrative Judge's reduction of his fees for services rendered by him in Defendant's Complaint against the DOE and of the failure of the Judge to follow the procedures for resolving fee disputes as established by the Judge, determined by the EEOC even though Defendant had previously agreed to such a procedure.

### TWELFTH DEFENSE

Defendant's Counterclaim should be dismissed inasmuch as the subject of the Counterclaim does not alleged any specific loss to Defendant flowing from any actions taken by Plaintiff.

### THIRTEENTH DEFENSE

Defendant, to the extent that she is alleging in her Counterclaim that Plaintiff has engaged in legal malpractice, has failed to allege what standards of care are applicable or how Plaintiff did not meet those standards.  It is also inconsistent with her claim that no contractual relationship existed with Plaintiff.

### FIRST AFFIRMATIVE DEFENSE

Defendant's Counterclaim is barred by Defendant's fraud and misrepresentation from November 5, 1997 though March 29, 2006.

### SECOND AFFIRMATIVE DEFENSE

Defendant's Counterclaim is barred by Defendant's bad faith in her relationship with Plaintiff relating to the payment of legal fees.

### THIRD AFFIRMATIVE DEFENSE

Defendant is collaterally estopped from raising any issue as to time spent by Plaintiff on any legal service for Defendant where Defendant chose not to appeal these issues to the EEOC.

## FOURTH AFFIRMATIVE DEFENSE

Defendant is promissorily estopped from asserting that a contract between Plaintiff and Defendant for legal services was not formed in November 1997 with Plaintiff which continued until March 29, 2006 where Plaintiff has acted to his detriment in reliance on Defendant's action.

## FIFTH AFFIRMATIVE DEFENSE

Defendant is equitably estopped from claiming a contractual relationship did not exist with Plaintiff obligating Defendant to pay for Plaintiff's legal services where the relationship existed for eight years during which time Plaintiff provided and Defendant accepted legal services to Plaintiff's detriment on his reliance on Defendant's promise that Defendant would compensate Plaintiff for such services according to the terms of the contractual commitment by Defendant in November 1997.

## SIXTH AFFIRMATIVE DEFENSE

Defendant is estopped from raising any objections to Plaintiff's invoices submitted to Defendant from November 1997 to October 2005 since Defendant waived any objections including those related to billing by failing to object in writing within 30 days of rendering of the invoice as required by paragraph 9 of their November 1997 Agreement.

## SEVENTH AFFIRMATIVE DEFENSE

Defendant, by not filing written objections, including those relating to billing within 30 days of rendering of invoices as required by paragraph 9 of their November 1997 agreement, waived and released Plaintiff from any objections made after 30 days that might have been made by a timely written objection.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent that Defendant challenges how her case was litigated by Plaintiff, this is a matter of Plaintiff's discretion protected by the business judgment rule.

## PART II

## PLAINTIFF'S COUNTERCLAIMS

### FIRST COUNTERCLAIM FOR FRAUD

1.  On November 5, 1997, Defendant contacted Plaintiff about his representing her in a dispute with the United States Department of Energy (DOE).

2.  On subsequent dates, Plaintiff and Defendant had several conversations discussing her legal problem and the cost of pursuing an equal employment claim against DOE.  Because of her financial concerns, Plaintiff agreed to reduce his normal rate to $225 per hour.  Defendant was informed that she would have to sign a retainer agreement with him which was discussed.

3.  On or about November 19, 1997, Plaintiff sent two copies of the retainer agreement with Plaintiff to be signed and returned with her check.  There is nothing in the transmittal letter indicating that is was to be part of the Agreement and it is not referred to in the Agreement.

4.  The Agreement states it is between Plaintiff and Defendant.  No other party is mentioned. Paragraph 5 states that Defendant is to pay Plaintiff "all legal fees and disbursements relating to pursuing this matter."  Paragraph 8 states that if "attorney fees are awarded by the Court or in settlement in an amount less than that billed by Mr. Hickey, Ms. Scott will pay Mr. Hickey the difference."

5.  The agreement provided that the Defendant would be "given a short summary of fees and disbursements for each month containing only the hours and fees spent on these matters along with a summary of disbursements."  Defendant could seek a change in the format which had to be agreed to in writing before an expense was incurred.  If Defendant had a dispute over the bill, she had, under paragraph 9, to make a written objection within 30 days of rendering the statement or it was a waived.

6. Defendant was told the purpose of the format was to prevent privilege and strategic information being contained in the bill and becoming accessible to DOE.  It also encouraged the parties to resolve disputes promptly.

7.  Defendant was informed that, if she had any questions before signing, she should contact him or any other attorney or bar association.  This was incorporated into paragraph 9 of the Agreement. Defendant had also informed Plaintiff that she had a sister who practiced employment law and another sister who was engaged in some aspect of labor relations.  On or about November 24, 1997, Defendant informed Plaintiff that she had read the Agreement and it seems "fair enough."  The Agreement including the format and procedures for objections remained the same until March 2006 when Defendant changed attorneys and terminated their contract.

8.  At no time did Defendant state that she believed she was contracting with Burch & Cronauer. She knew nothing about that firm.

9. At the end of April 1998, Plaintiff relocated his offices.  Defendant was aware of the change both in April and May 1998.  Defendant did not request that there be a change in the agreement as a result of the move.  Defendant communicated with the Plaintiff at his new offices by letter and phone.

10.  Soon after Defendant contacted Plaintiff in 1997, her contract with DOE ended and Defendant had difficulty getting new employment.

11.  Defendant, starting in 1998, kept informing Plaintiff that she was having financial difficulties and requested that she be allowed to pay reduced amounts.  Plaintiff stated that contract would remain in effect but he would be willing to accept smaller payments until her financial situation improved.  However, while Defendant's financial situation improved over time, she never increased the amount of her payments to Plaintiff.  Instead, she kept coming up with various reasons why payments were not possible.

12.  Defendant informed Plaintiff on March 7, 2000 that her sisters could not contribute to the legal costs of the litigation and did not respond to Plaintiff's inquiry whether her sister could otherwise assist her in the litigation.

13.  During the period from 1997 to 2005, Plaintiff continued to send invoices to Defendant all of which stated "pursuant to our Agreement."  At no time did Defendant question what "Agreement" was being referred to.

14. During the time Defendant continued to refer to Plaintiff as her attorney, signing various documents with this designation.

15.  Defendant was billed for no work after April l 30, 2005 including work done on the Petition for Fees.

16.  By October 1, 2005, Defendant had incurred $186,295.86 in legal fees of which she had paid only $16,200 for almost a nine-year period.

17.  On September 30, 2005, the EEOC Administrative Judge issued a Decision in Defendant's favor which ultimately resulted in her receiving approximately $250,000 in addition to legal fees which were awarded separately.

18.  On November 29, 2005, Plaintiff contacted Defendant by phone about her payment of the outstanding bills.  Defendant responded that she would not pay.  On November 30, 2005 Defendant sent a fax to Plaintiff stating that she was grateful for work that he had done for her, but set forth a list of complaints which she had not raised in the prior nine-year period, which Plaintiff denied on December 2, 2005.

19. From that date to March 29, 2006, there was an exchange of correspondence between Plaintiff and Defendant in which Defendant repeated she would not pay the outstanding amount due, that she did not recognize the existing contract, that she wanted Plaintiff to continue working on her case but would not agree to apply the existing contract to such work or otherwise guarantee payment for such future work and that the most Plaintiff could expect would be what was awarded by the EEOC despite paragraph 8 of the Agreement.

20. During the first two months of 2006, Plaintiff attempted to work out a resolution of payment for past and future work.

21. On March 29, 2006, Plaintiff received a fax from Defendant dated March 20, 2006 in which Defendant gave notice of terminating Plaintiff and substituting Leon Swinson as her attorney.

22. Plaintiff incorporates paragraphs 9-26 of his Verified Complaint.

23. The representations of Defendant were intended to deceive Plaintiff, to be false and/or made with reckless disregard of the truth in that

    A. Defendant knew she was entering into a contract with Plaintiff alone.

    B. Defendant knew that her contract with Plaintiff continued beyond April 1998 to March 2006.

    C. Defendant deliberately withheld full payment on invoices even though she was financially able to make payments.

    D. Defendant sought to have Plaintiff perform additional and future services with no intent to compensate him for such services.

    E. Defendant refused to pay $170,095.86 and interest to Plaintiff for services performed by him prior to April 30, 2005.

    F. Defendant falsely claimed that Plaintiff had terminated her contract even though she knew that she terminated it in March 2006.

    G. Defendant withheld from $139,338.27 awarded to her by DOE to which at least $123,138.27 she knew she had no legitimate claim.

24. Defendant further engaged in misrepresentation by concealing material information from or revealing only a part therefore to Plaintiff for the purpose of inducing a false understanding on Plaintiff's part, including:

    A. Any bona fide doubt that her contract was with Plaintiff.

    B. Any bona fide doubt that their contract with Plaintiff continued beyond April 1998 to March 2006.

    C. Any bona fide objection to any invoice.

D.  Her financial ability to pay for legal services which had been rendered

E.  Concealed information material to Plaintiff's continuing a contractual relationship with Defendant.

25.  All of the aforegoing representations and concealments were material to (1) Plaintiff entering into a contract with Defendant in November 1997 and continuing a contractual relationship with Defendant until March 2006.

26.  Defendant knew that her representations and concealments would be important to Plaintiff in choosing whether to enter into and continuing a contractual arrangement with Defendant.

27.  The Defendant's false representations and concealments were intended to and, in fact did, induce Plaintiff to perform uncompensated legal services.  They also permitted Defendant to retain monies that were properly Plaintiff's.

28.  Plaintiff was unaware of the falsity of Defendant's representations and her concealments.

29.  Plaintiff reasonably relied upon Defendant's representations and concealments to his detriment by not receiving full payment for his legal services, interest and legal fees for enforcing their Agreement.

30.  The loss to Plaintiff was the direct, material and proximate result of Defendant's failure to pay with interest the amount owed Plaintiff under her contract and give to Plaintiff money owed to him upon Plaintiff's request.

31.  Defendant's outrageous refusal to pay Plaintiff in accord with their Agreement and her retention of EEOC-awarded money for work done by Plaintiff held in escrow was done unjustifiably, willfully and maliciously.

32.  Defendant has fraudulently benefited from her misrepresentations and concealments.

33.  As a result of Defendant's fraud, Plaintiff also lost the opportunity to perform legal services for others for which he could have been fully compensated.

**34.  PRAYER FOR RELIEF**

A.  In addition to compensation sought in Count I and II of the Verified Complaint, Defendant should be required to pay:

(1) Punitive damages of $250,000,

(2) Court costs, including legal fees and post judgment interest,

(3) Compensatory and/or consequential damages arising from her fraud.

(4) Any other and further relief that the Court deems just and proper.

B.  Defendant should be enjoined from commencing any legal actions or Complaint in any forum against Plaintiff for filing his Verified Complaint and his Counterclaim.

.

## SECOND COUNTERCLAIM

## PLAINTIFF'S COUNTERCLAIM FOR CONVERSION

1. Plaintiff hereby incorporates Count II of its Verified Complaint.

2. Plaintiff hereby incorporates paragraph 20 to Count II by Defendant's Amended Answer to the extent Defendant admits she received $139,338.27 for legal fees and that portion of paragraph 21 in which Defendant admits Plaintiff is "entitled to $139,338.27 minus $16,200 or $123,138.27."

3. On July 20, 2007, Plaintiff informed Defendant that he was willing to accept the $123,138.27 and resolve later the disposition of the remainder being held by Defendant.

4. Defendant has not turned over to Plaintiff the $123,138.27 although she asserted no legitimate claim to this money.

5. Such actions by Defendant in not providing Plaintiff with this money constitute conversion and were taken intentionally, willfully unjustifiably and maliciously.

6. Plaintiff has suffered damages by the loss of the money.

**PRAYER FOR RELIEF**

    A. Plaintiff is entitled to at least $123,138.27 plus interest from the time of the award at normal legal rate.

    B. Plaintiff is entitled to punitive damages in the amount of $250,000 beyond what may be awarded under Counts I and II of the Verified Complaint.

    C. Plaintiff is entitled to costs, including legal fees and post judgment interest.

    D. Plaintiff is entitled to such other and further relief as the Court may deem just.

## THIRD COUNTERCLAIM

## PLAINTIFF'S COUNTERCLAIM FOR ABUSE OF PROCESS

1. Throughout these proceedings, Defendant has perverted and abused process by taking the following actions:

11

A. Defendant's activities are made in bad faith in an attempt to not to compensate Plaintiff for legal services rendered to her and to harass.

(1) Defendant asserts in her Counterclaim that she did not enter into a contract with Plaintiff on November 19, 1997 but with the law firm, Burch & Cronauer, even though the Agreement states it is between "Robert J. Hickey….and Ms. Charlene Scott."

(2) Defendant asserts that any agreement ended in April 1996 even though Defendant never informed Plaintiff of this belief and repeatedly referred to Plaintiff as her attorney.

(3) Defendant claims that Plaintiff terminated their relationship even though Defendant specifically informed Plaintiff of his termination in March 29, 2006.

(4) During the period between November 19, 1997 and September 30, 2005 Defendant never filed any written objection to any invoice sent to her by Plaintiff.

(5) During the period between November 19, 1997 and September 30, 2005, Defendant never requested a change in the format of the invoice or the time period for filing objections.

(6) Prior to November 2005, the only reason given by Defendant for failure to pay on the invoices received was her alleged financial inability to do so.

(7) Prior to November 2005, Defendant never asserted to Plaintiff that she did not have a legal contract with Plaintiff and/or that she was not obligated to pay for his legal services beyond which might be awarded by the EEOC in her discrimination case.

(8) Prior to November 2005, Defendant never asserted that Plaintiff was required to perform legal services in the future without a contract or any guaranty of payment.

(9) Plaintiff was successful in obtaining for Defendant an award of approximately $250,000 over and above legal fees awarded against DOE.

(10) Although Defendant 's wages increased over the 8 years that Plaintiff represented Defendant, Defendant never paid Plaintiff commensurate with her increased income despite promising to do so.

(11) Defendant prevented Plaintiff from appealing the reduction in his fees to the EEOC by the Administrative Judge by not cooperating with the Plaintiff in an Appeal even though she had stated she would do so.

(12) The subject matter of Defendant's Counterclaim is the same as her Complaint with the D.C. Bar Association which was rejected.

(13) Defendant's claim of various alleged litigation misconduct from 1997 to 2006 is inconsistent with her requests that Plaintiff continue to represent her in 2005-2006.

(14) Defendant has withheld all $139,338.27 paid by DOE as awarded by EEOC even though she is claiming that is she owed only $16,200 of that amount and though she stated she would pay the remainder to Plaintiff.

(15) Contrary to the Court Order of May 12, 2008, Plaintiff is not speculating that Defendant is not entitled to pro se status because she continues to be represented by Mr. Leon Swinson, since Defendant specifically informed the Magistrate of this fact at the mediation session held on February 11, 2008 and Defendant has never denied the role of Mr. Swinson providing legal services to her.

B.  Defendant's Counterclaim lacks merit and is frivolous as set forth in Plaintiff's denial, defenses and Affirmative Defenses into this Counterclaim.

2.  The above actions by Defendant in paragraph 1 were taken with the ulterior motives of obtaining the improper purpose for which process is not designed, specifically the harassment of Plaintiff and the delay in the litigation in order to force Plaintiff to abandon the litigation for monies owed to him.

3.  The actions set forth in paragraph 1 were willful, intentional, malicious and not anticipated or contemplated in the regular proceedings in this case.

**PRAYER FOR RELIEF**:

As a result of the foregoing actions by Defendant:

A. Plaintiff has suffered damages beyond those normally associated with litigation from an institution of a civil proceeding.

B. Defendant is liable for all compensatory and the consequential damages that reasonably result from her abuse of process.

C. Plaintiff is entitled to punitive damages of $250,000 beyond what may be awarded under Count I and II of the Verified Complaint.

D.  Plaintiff is entitled to costs, including attorney fees and post judgment interest.

E.  Plaintiff is entitled to such other and further relief as the Court may deem just.

Respectfully submitted,

/S/_____
Robert J. Hickey, Bar No. 42341
Law Office of Robert J. Hickey
1050 17th Street NW, Suite 700
Washington, DC 20036
301.656.2364 (home)
202.659.0536 (office)
202.659.0537 (fax)
**Attorney for Plaintiff, Pro Se**

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of May 2008 Plaintiff's Reply to Defendant's Counterclaim and Plaintiff's Counterclaim was filed via the ECF system and by first class mail postage prepaid to Defendant Charlene Scott, 324 Shepherd Street NW, Washington, DC 20011.


/S/_____
Robert J. Hickey
1050 17th Street NW, Suite 700
Washington, DC 20036