UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT J. HICKEY ) | |
| 5601 LAMBETH ROAD ) | |
| BETHESDA, MARYLAND 20814 ) | |
| 202-659-0536 ) | |
|           Plaintiff ) | |
| ) | Case: 1:07-cv-01866 (JDB) |
|    v. ) | |
| CHARLENE SCOTT ) | |
| 324 SHEPHERD STREET NW ) | |
| WASHINGTON, DC 20011 ) | |
| 202-291-0518 ) | |
|           Defendant ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE HER SECOND AMENDED ANSWER, COUNTERCLAIM AND AFFIRMATIVE DEFENSES**

On October 17, 2006, Plaintiff filed his Verified Complaint in the above-captioned case. The Verified Complaint contained two counts: first, for breach of Defendant's contract with Plaintiff and second for a constructive trust for monies received by Defendant from the Department of Energy for legal services provided by Plaintiff to Defendant. Prior to this time, Defendant has filed an Answer on November 11, 2007 and a first Amended Answer on December 6, 2007. Now six months later, Defendant has petitioned on July 11 and July 14, 2008 this Court to be permitted to file a Second Amended Answer. In her prior Answer, Defendant based her defense primarily on a claim she had no contract with Plaintiff. In her Second Amended Answer, she does not deny she had a contract but now asserts various undetailed objections to this contract. In addition, Defendant for the first time raises 18 new Affirmative Defenses and 3 new Counterclaims. While the caption of her pleading refers to "Statement of Points and Authorities", none is included. She cites no cases to support the wholesale revision of her Answer. Nor does she attach an affidavit to support the allegations made in her Second Amended Answer. This despite the fact that Plaintiff's

Complaint was Verified. As discussed below, Plaintiff believes that Defendant's Motion should be denied because it is prejudicial to Plaintiff, because the claims contained therein are futile and could not survive a Motion to Dismiss and finally because the claims are made in bad faith to harass Plaintiff.

## ARGUMENT

### I. PREJUDICE

### A. General

FRCP Rule 15 (a) permits a party to amend her pleading absent undue prejudice, futility and bad faith. Davis v. Forman, 371 US 178,182 (1962). A principal reason to reject an amendment is when it causes prejudice to a non-moving party. Zenith Radio Corp. v. Hazelline Research , 401 US 321, 330-331 (1972). Prejudice can come about when new, complex Counterclaims are added. Acoste Mestre v. Hilton International, 156 F 3d 49, 52-52 (1st Cir 1998). Here, Defendant has added three new Counterclaims with no explanation as to why they could not have been submitted earlier. FDIC v. Staudinger, 797 F2d 908, 911 (10th Cir 1986).

The same is true where the matters to be added are complicated, such as Defendant's three new Counterclaims and 18 new Affirmative Defenses, Suehle v. Markem Machine, 38 FRD 69, 71 (D. Pa. 1965). Some of Defendant's allegations, such as her Counterclaim Count III (DCCPPA) bear only a tangential relationship to Defendant's original Answer. City v. Dombeck 203 FRD 10 (DDC 2001). No matter how viewed, Defendant's second proposed Answer is a radical departure from her original claim. Mississippi v. FHA, 139 FRD 542 (DDC 1981). It is clear that the changes proposed will unfairly disadvantage Plaintiff by substantially adding to his expense and his discovery needs. American Society v. Ringling Bros. 244 FRD 49, on recon 246 FRD 39 (DDC 2007). This addition will significantly delay resolution of the dispute. Block v. First Blood Association, 998 F2d 355 (2nd Cir

1992). The six-month delay will also result in major alterations in his trial strategy. Acoste Mistre, supra. Nwachukwu v. Karl, 222 FRD 208 (DDC 1985). This will leave Plaintiff unfairly disadvantages. Hartford Ins. v. Sociated People, 422 F Supp 2d 203 (DDC 2001)

A major problem stems from the fact that, in her original and First Amended Answer, Defendant denied that she had any contract with Plaintiff. In her present proposed Amendment, she seeks to nullify that position by admitting both the existence of a contract and terms thereof, but now claims vague unspecified reasons why the contract should not be honored at the same time she is raising new claims. Wirtz v. Savannah Bank, 362 F2d 857 (5th Cir 1966). Nor should a new counsel be allowed to retract Defendant's Answers where it had been relied on by Plaintiff. Arista Records v. Flea World, 356, F Supp 2d 411 (D NJ 2005) Rhodes v. Amarillo Hospital Dist 654 F2d 1148 (5th Cir 1981). Further, Plaintiff has not been paid on what he is owed for over 10 years which has caused an undue hardship on him. Eagle Wine & Liquor Co. v. Silverberg Glass Co. 402 A 2d 31 (DC 1979). Under all circumstances, Plaintiff has shown he will suffer substantial prejudice if Defendant is allowed to amend her Answer a second time.

## II. FUTILITY

### A. Defendant's New Counterclaims

### 1. General

The proposed Second Amended Answer contains three new Counterclaims. There is no explanation offered as to why they could not have been offered earlier and for that reason alone they should be denied. Flax v. Schertler, 935 A2d 1091 (DC 2007). Moreover, Defendant's proposed amendment should be dismissed for futility since most, if not all, of it would be subject to dismissal. National Wrestling Coaches v. DOE, 366 F3d 930, 961 App

DC 257 (DC Cir 2004), <u>MK v. Tenet</u> 216 FRD 133 (DDC 2002). Each of Defendant's new Counterclaims fails to meet the futility test and are discussed below.

**2. Alleged Violation of <u>D.C. Consumer Protection Act</u>**, 28 DCC 3901 et. al. (Count III, para 61-68).

This allegation should be rejected both on grounds of futility and frivolousness. It is clear that Defendant did not conduct a proper investigation of this claim as required by FRCP Rule 11 (b). The law in DC is fairly established that the DCCPPA does not apply to practicing attorneys. Not only is there no mention of such coverage in the Act itself but the Court itself has found that such coverage would be a violation of the separation of powers. <u>Banks v. Department of Regulatory Affairs</u>, 634 A 2d 433 (DC 1993). Further even if there were coverage, Defendant did not comply with the statute since she does not allege she filed a complaint with the D.C. Office of Consumer and Regulatory Affairs, as required by 28 DDC 3903. Thus, allowing Defendant to proceed would be futile. Further, the Court, under Rule 11(c)(1)(B) should impose sanctions on Defendant and her counsel for filing such a frivolous counterclaim.

**3. Alleged Breach of Fiduciary Duty**

(Count II, para 50-60)

Defendant's Counterclaim Count II claims only one substantive paragraph, i.e., 58, which is a repeat of other paragraphs in her pleading. Her claim that Defendant charged for services he did not provide is found not only in Affirmative Defense paragraph34 but also in her first proposed Counterclaim (Count I), paragraph 50. Her claim of violating Rule 1.5 of D.C. Rules of Professional Ethics is also found in her Affirmative Defenses, paragraphs 36 and 37. Her conclusion that plaintiff did not provide competent legal service is contradicted both by her being awarded approximately $250,000 and by her asking Plaintiff to continue to represent her (although without any guarantee of payment). Although Defendant asserts

4

in paragraph 59 that Plaintiff breached his duty of care, she does not state what these standards are.  <u>Mavity v. Fraas</u>, 456 F. Supp 2d 29 (DDC 2006).  She also failed to assert how she was placed in a worse position because of Plaintiff's action.  <u>Mavity v. Fraas</u>, supra; <u>Weaver v. Bratt,</u> 421 F Supp 2d 3 (DDC 2006) (client must explain specific harm she suffered and how her attorney caused such injury).  Because all of this is missing, her proposed second Count II must be dismissed.  Further, given the degree of duplication, the Court must consider this Count harassment of Plaintiff.

**4. Alleged Violation of Plaintiff's Duty to Care (Negligence)**

(Count I, paras 46-55)

Defendant's Counterclaim Count I consists of five separate items: (1) Failing to provide a description of services (paragraph 52), (2) allegedly spending an inordinate amount of time complete unnecessary tasks and motions (paragraph 51), (3) seeking fees for service he allegedly did not actually provide Defendant (paragraph 50), (4) allegedly failing to advocate for Defendant so she could receive all of the damages for which she was entitled (paragraph 53) and (5) failing to submit to EEOC a rate higher than his contract billing rate of $225.  None of these were raised by Defendant in her original and Amended Answers and permitting Defendant now to raise them would considerably expand the litigation and would prejudice Plaintiff.  In addition, they would be futile and subject to dismissal and thus it should be denied.  Each of these are discussed below.

**a.  Failure to Provide Description of Service**.  (No. 52).

Paragraph 6 of the parties' agreement provided

> **Mr. Hickey will render a short summary statement of fees and disbursement for each month containing <u>only</u> the hours and fees spend on these matters.**

This was what was provided to Defendant and Defendant in her Second Amended Answer does not contend otherwise.  The reason for this format was twofold.  First, as can be seen

from the Fee Petition, Defendant was in constant contact with Plaintiff and his office. In fact, in a letter dated November 25, 1997, Plaintiff specifically informed Defendant that each bill would give "you a good opportunity to discuss the amount of work to be done." Before signing Defendant was encouraged to contact the Bar Association and other attorneys about the Agreement. This is also found in paragraph 9 of the Agreement. It must also be noted that Defendant was in regular contact with her two sisters about the case. One sister was a lawyer specializing in discrimination law and another was in human relations.

Besides this, if Defendant was unhappy with this format, she could have sought a change under paragraph 6 of the Agreement. She never asked for the format to be changed. Finally, Defendant, under paragraph 9 of the agreement could have objected to any specific bill as long as she did so in writing "within 30 days of rendering the statement or be waived." D.C. has recognized that parties can place limitations on the time for them to act. <u>Centennial Ins. Co. v. Dowds</u> 306 A 2d 648 (DC 1973). In fact, this is a long-established policy. <u>Carothers v. C & O Canal</u> 4 DC 698 (CC DC 1836) (a party was given 20 days to object to an engineer's estimate) See also <u>Redstone Redevelopment Corp v. Schmitz</u> 1991 WL 83 848 76 (Va Cir Ct 1991)  (a party can make a promise conditioned on an exact performance before a specified date). During the almost eight years that followed, Defendant did not ever once write to Plaintiff raising any objection to a bill. Defendant should not even be allowed to complain after such a delay since it is highly prejudicial to Plaintiff.

There was a second reason for limiting the contents of the bills. Any bill rendered would not only be seen by Defendant but also by the opposing party, DOE, in the EEOC harassment case. Any detail would reveal confidences, privileged information and strategy to the opposing party, DOE. At the time the Fee Petition was filed, DOE made clear its

6

intent to pursue this litigation so that Defendant was taking a risk that more detailed information might hurt her in future litigation. This was explained to Defendant prior to the commencement of litigation. In fact, in these circumstances, it would be unethical for Plaintiff to provide detailed bills containing confidential privileged and strategic information. Linda, et. al v. RTC, 5 F3d 1508 (DC Cir 1993) Judwin Properties v. Gregg & Hanson, 911 S W2d 498 (Tex App 1995), U.S. v. MIT, 129 F3d 681 (1st Cir 1997). The revealing of such information could not be done without Defendant's consent which she never gave. D.C. Opinion No. 290 (1997). Further, by making partial payment on the bills, she should not be allowed to claim she does not owe the remainder of the bills. Nelsson, et.al v. Louisiana Hydrolic 854 F2d 1538 (9th Cir 1989) Thus, to permit this claim would be futile.

**b. Violated Duty By Allegedly Spending Inordinate Amounts of Time Completing Unnecessary Tasks No. 51**

See discussion under (a) above. As can be seen from the Petition for Fees, Defendant was fully aware of tasks that Plaintiff was performing and the reason for them. At no time during the eight years of representation did Defendant ever question any task or motion. Although she received a copy of the Petition for Fees in early October 2005, she never contacted Plaintiff about a single item in it until her present Motion, almost 3 years later. Further, if she believed that something was wrong with the Petition, she and her subsequent attorney should have brought this to the EEOC's attention which they never did. Her failure to do so (if true) would constitute unclean hands which would estop her as to this claim.

As to the research under 42 USC 1983, this was only undertaken after the DOE insisted that Defendant could not sue under Title VII and any rights she had would be under a different statute, such as 42 USC 1983. They persisted in this in every pleading they filed over the

next years. Defendant was fully aware of DOE's position which was discussed with her many times and to which she never objected. Contrary to Defendant's current position, Plaintiff was repeatedly successful in convincing EEOC of Defendant's Title VII rights. In these circumstances, any pursuit by Defendant on these grounds would be futile.

**c. Failure to Advocate for All Damages Owed Defendant**

(No. 5)

There is no explanation for this claim by Defendant. After the EEOC hearing in April 2005, Plaintiff submitted a closing brief on behalf of Defendant. The brief was reviewed by Defendant both before and after its filing on April 30, 2005 to make certain that it reflected her view on damages she was seeking. Neither at that time and to the present, did Defendant make any objection. Defendant was aware by Plaintiff and her own sister, the lawyer, that she might not receive everything she was seeking. Even after the EEOC Judge limited her damages, Defendant wrote to Plaintiff on October 8, 2005 stating she was grateful for Plaintiff for taking on her case. Plaintiff wrote to Defendant discussing items that could be raised in an appeal. However, Defendant terminated Plaintiff on March 20, 2006 without deciding to appeal. Defendant sometime in November 2006 decided not to appeal. Plaintiff was not involved in that decision and only learned of it after it occurred. Consequently, Defendant cannot now be allowed to challenge what EEOC awarded her when she intentionally refused to appeal and accepted what the EEOC awarded her. Having accepted the EEOC's Decision, Defendant cannot sue her former attorney complaining the terms were unfair.

**d. Violated His Duty of Care by Submitting Billing for Service Allegedly Not Provided. No. 50**

See (a) above. As noted, the Petition for Fees stated Plaintiff's services for Defendant. Until the present proposed amendment, Defendant has not made a claim that services were

not provided and meetings did not occur. Even here, she does not give a single example of this occurring. Nor did she ever ask that an invoice be revised to reflect this. She has had the Petition since October 2005 so that she could have gone through it in a few weeks to point out any error or mistake which she never did. Further, it she is implying that an intentional error was made, she and her new attorney have an obligation under FRCP Rule 9(b) to provide the details with particularity which has also not occurred. Her failure to do so would render such a claim futile. At this late day, Defendant should be estopped from making such assertions particularly as it would also prejudice plaintiff by unfairly expanding issues and discovery in this case.

**e. Defendant Asserts that Plaintiff Should Have Charged EEOC More Than It Charged Defendant So That He Could Have Collected an Additional $84,000.**
Nos. 48/49.

This is the height of frivolousness and an example of Defendant's bad faith. Even after being awarded $139,378.27 for legal work performed, Defendant for a full year refused to turn over $123,138.27 which she had admitted should have gone to Plaintiff. Even after she recently turned over this money, she refused to turn over all or part of $1800 in interest earned on this money. Plaintiff filed this Petition for Fees in accord with 28 CFR 501 (e)(2)(ii)(B). What Defendant would want Plaintiff to do would be to charge DOE an additional $84,000 not charged to Defendant which apparently she would also not turn over to him. Further, he would not be allowed to get this since Defendant blocked his appeal on the fees awarded.

Here Plaintiff has given Defendant a below market rate and let her make payment whenever she was able. Defendant repaid him by not paying him when she was fully able to do so and later by denying she had any contract with him. The irony is that Plaintiff sought additional compensation for the services provided to Defendant in his letter to DOE dated

9

June 7, 2006 but was denied this by Defendant blocking his appeal after she and her then attorney had agreed to do this. Defendant's argument is both futile and frivolous.

**B. DEFENDANT'S NEW ANSWER AND AFFIRMATIVE DEFENSES ARE FUTILE**

**1. General**

From November 29, 2005 until the present proposed Second Amendment, Defendant's position was that she had no contract with Plaintiff even though she had attached a copy of the contract to her original Answer. Now after almost three years, Defendant admits in her new Second Amendment that she has a contract with Plaintiff but contends that all of the operative clauses are invalid for frivolous reasons. Such a radical change of position clearly prejudices Plaintiff. Such inconsistency also warrants a denial of Defendant's Petition. Fleet National Reality Corp v. Impact Advertising Inc.. 206 A 2d 579 (DC 1965)

**2. "Bare Bones" Allegation Must Be Denied**

Defendant has set forth in her Motion 18 new Affirmative Defenses. Most of these include only "bare bone" language which courts have denied. National Shopmen Pension Fund v. Burtman Iron Works, 148 F Supp 2d 60 (DDC 2001). Here Defendant's Petition contains the following bare bones affirmative defenses: paragraphs 31 (estoppel/waiver), 32 (forfeiture), 33 (forfeiture/disgorgement), 39 (waiver/release), 40 (public policy) and 43 (illegality). Such conclusionary assertions are insufficient since they do not give fair notice to Plaintiff. Seabrook Sur. Co. v. Harbison, 304 F 2d 247 (7th Cir 1962), Sheckter v. Comptroller, 79 F 3d 261 (2nd Cir 1996). In the absence of a valid defense, a party is bound by the contract she signs. Booker v. Robert Hall International, 315 F Supp 2d 94 ( DDC 2004), aff 413 F3d 77,367 App DC 77 (DC Cir 2005). Accordingly, all such defenses would be futile.

**3. The Remaining Affirmative Defenses Are Equally Deficient**

The remaining affirmative defenses which barely rise above bare bones pleadings are discussed further.

10

**a. Completion of Services (No. 34) Exploitation of Fee Arrangement (No. 37) and Services not Permitted (No. 35)**

All of these imply that Plaintiff acted fraudulently in providing services to Defendant. None are pled with particularity as required by FRCP Rule 9(b). Welch v. Showen, 300 F2d 716, 112 App DC 124 (DC Cir 1962); Johnson v. Computer Technology Services, 670 F Supp 1036 (DDC 1987). Since none set forth the elements of fraud, they would have to be denied as they do not provide Plaintiff with sufficient information to prepare a defense. U.S. v. Martin –Baker Aircraft, 389 F 3d 1251, 1256 (DC Cir 2004). Further, as to paragraph 34 (alleged non-completion of services), paragraph 37 (wasteful procedure) and paragraph 35 (services not permitted), Defendant did not timely object to any bill and waived as untimely late complaints under paragraph 9 of their Agreement. See also discussion under II A 5 c and d supra. Thus to permit their amendments would be futile. Also, there is nothing in the parties' contract or in the law which prevents payment to staff for work relating to overtime, in the nature of paralegal work (e.g., assistance at hearing) to which Defendant was aware. It should be noted that Defendant, in addition to receiving a reduced rate, was not charged for the considerable time spent by Plaintiff's paralegal assistant (other than overtime). These overtime charges were all included in the Fee Petition to which Defendant made no complaint for three years until her present petition for which should now be estopped from raising. Such a late claim would be futile.

**b. Limitation (No. 29)**

Defendant asserts that Plaintiff's claims are barred by the "applicable" statute of limitations but does not state what that statute is or how it was applied to come to her conclusion it is a bar. Plaintiff assumes that Defendant is referring to the 3-year bar set in 12 DDC 301 (8) for contracts. Under DC law, when an attorney is terminated, he is entitled to compensation. Green v. Louis Fireison & Assoc 618 A 2d 185 (DC 1992). By not paying Plaintiff at that

11

time on March 20, 2006, Defendant breached her agreement with Plaintiff and payment of his fees were due at that time. Cunningham & Ass v. Dugan, 909 A 2d 1001 (DC 1996) An attorney is entitled or compensation up to the time of discharge. McGowan v. Parish, 237 US 285 (1915). Plaintiff's Complaint was filed on October 17, 2007 which is within the 3 years from March 20, 2006. Thus, a claim of limitation would be futile.

**c. Laches (No. 30)**

Plaintiff filed his claim 18 months after Defendant's breach. During that time, Plaintiff was successfully resisting Defendant's complaint filed with the Bar Association thus making any delay excusable. Defendant's action constituted unclean hands which would prevent the application of the equitable doctrine of laches (as well as equitable doctrine of estoppel in paragraph 31). Pond v. Insurance Co. of North America, 198 Cal Rptr 517(1984). In these circumstances, Defendant has failed to set forth sufficient facts to raise a claim beyond mere speculation and would be subject to dismissal under the Supreme Court's ruling in Bell Atlantic v. Twombly, 127 S Ct 1955 (2007). It would also be futile.

**d. Res Judicata (No. 38)**

Defendant asserts that res judicata applies to an EEOC Administrative Law Judge's Decision in the separate harassment case involving Defendant. However, that doctrine applies only to final decisions. Towne v. Asadowrian, 722 NYS 2d 187 (2002). Here the Administrative Judge's decision was not final since it was subject to review by the EEOC. There the EEOC held that Plaintiff "had no standing to contest the AJ's award." EEOC Decision dated April 2, 2007, page 5. The EEOC further held that the dispute between Plaintiff and Defendant was a "private contractual matter not within our purview. This is in keeping with the Supreme Court's decision in Venegas v. Mitchell, 110 S St 1679 (1990) permitting recovery beyond the statutory amount awarded. As a consequence the earlier Administrative Judge's decision as to the Defendant could not be res judicata to Plaintiff. Further, since Defendant

was fully aware of the earlier Decision by the EEOC, her actions are either (or both) in bad faith and frivolous.

**e. Payment (No. 45)**

In the present case, Defendant owes Plaintiff on his original Complaint (as of July 1, 2008) approximately $149,004.89 (excluding amounts in his Reply Counterclaim). This amount <u>includes</u> a payment made from the escrow account without condition of $123,138.24. Plaintiff has repeatedly rejected any attempts by Defendant to treat this as a full payment of the claims against Defendant. This is a tender of a partial payment which cannot act as a bar to Plaintiff. In fact, the opposite is true. Defendant's acquiescence by her partial payment acts as a bar to her later claiming that she does not owe the unpaid remainder. <u>Nelson et al v. Louisiana Hydroelectric</u>, 854 F2d 1538 (9th Cir 1989).

**f. Unreasonable Fees (No. 41)**

For reasons set forth in II A 3 (a) and (b) supra, Defendant failed to file a timely written objection to any bill as required by paragraph 9 of their Agreement and, accordingly, cannot untimely object to any bill on any ground and her defense in this regard must be rejected as futile.

**g. Late Fees (No. 41)**

The parties' agreement in paragraph 7 specifically provided for an interest charge for late payment. During the eight-year period of representation, Defendant did not pay fully what she owned to Plaintiff and what payments she made were late. Thus, she was obligated to pay late fees until full payment was made. Such payments are legal. <u>Bennett v. Martin Trigona</u>, 686 F Supp 6 (DDC 1988); <u>Carey v. Mui Hin Lau</u> 140 F Supp 2d 291 (SD NY 2001) and any challenge on this basis would be futile.

**h. Attorney Fees (No. 42 and 44)**

13

Defendant asserts that the paragraph 9 of the parties' Agreement is unenforceable because it provides that

> **"where full payment is not made, Mr. Hickey retains the right to seek any and all legal and equitable remedies available to him. If Mr. Hickey must enforce the agreement, Ms. Scott consents to pay all legal costs including attorney fees, if recovery is granted in whole or in part."**

Paragraph 9 goes on to advise Defendant to consult a bar association or another attorney prior to signing. Plaintiff is aware of communication between defendant and her sister, a lawyer. Both the Supreme Court and D.C. have upheld the right to fees for contract enforcement. Traveler Cas. & Sur. Co v. Pacific Ins. 127 S Ct 1199 (2007) and Oliver T. Carr Co. v. United Techs, 604 A 2d 881,883 (DC 1982). Seitzinger Inc. v. NBW, 490 F Supp 340 (DDC 1980). There is no requirement for mutuality. Booker v. Robert Haft International 315 F Supp 2d 94, enforced 413 F3d 77, 101 App DC 2001 (DC Cir 2005). Defendant in paragraph 44 contends that because Plaintiff who is a sole unincorporated practitioner represents himself, he is not entitled to attorney fees. There is no provision in D.C. law which prevents a client from entering into a contract which would provide for the client to pay legal fees in enforcement. This is particularly true where the client defendant was informed to contact others before signing and did, in fact, consult with her sister, a lawyer and, possibly, with others. Defendant should not be allowed to contradict the plain meaning of her agreement voluntarily entered into.

### III.  BAD FAITH

This litigation has been full of deceit by Defendant. She painted a picture of hardship to obtain a lower fee rate and to avoid making full payment on time. When confronted with her ability to pay, Defendant claimed she had no contract with Plaintiff. She also deliberately blocked Plaintiff from getting an increased statutory legal payment from DOE. When

14

Defendant learned that Plaintiff was intending to go to Court to obtain payment, she proceeded to unsuccessfully make a complaint about Plaintiff with the Bar Association. Through her efforts she has been able to avoid making full payment to Plaintiff for 11 years. She implied to the Court she had no counsel, Mr. Swinson, at the same time she informed the Magistrate Judge that Mr. Swinson was still representing her.

In the present Motion, she has expanded her defenses radically with the hope that discovery and other procedures will force Plaintiff to abandon his claim.  With her various Answers, she has delayed payment further.  The laundry list of new items contained in her Motion, clearly reflect her bad faith in asserting claims which are frivolous, futile and otherwise have no chance of success.  Merrill Lynch Bus. Financial Service, v. Pleaco Inc. 859 F Supp 818 (ED Pa 1994); Tosadas de Mexico v. Dukes, 757 F Supp 297 (SD NY 1991); James Madison LT v. Ludwig, 82 F3d 1085, 317 App DC 2186 (1996). Her claims are made recklessly and should be denied.  Burlington Ins. Co. v. Okie Pockie Inc. 398 F Supp 2d 147, amended 439 F Supp 2d 124 (DDC 2008).  The real purpose of her new amendment is to harass Plaintiff. Brown v. District of Unemployment Compensation Board, 411 F Supp 1001 (DDC 1975). The Motion should be dismissed.

## CONCLUSION

Plaintiff has established that by permitting this Second Amended Answer, he would be substantially prejudiced.  Plaintiff who successfully worked on this case for Defendant, has waited 11 years for payment which has caused a substantial hardship on him.  Defendant's actions have been undertaken in bad faith as a way of avoiding payment to Plaintiff.  Further a review of the Motion would show that it could not withstand a motion to dismiss and therefore must be denied and Defendant and her counsel sanctioned.

                                                 Respectfully submitted,

/S/_____

Robert J. Hickey, Bar No. 42341
Law Office of Robert J. Hickey
1050 17th Street NW, Suite 700
Washington, DC 20036
202.659.0536 (office)
202.659.0537 (fax)
Attorney for Plaintiff, Pro Se

### AFFIDAVIT OF ROBERT J. HICKEY

I declare that under penalty of perjury that the foregoing facts set forth in the Opposition are true and correct.

/S/_____

Robert J. Hickey

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of July 2008, a copy of the foregoing Plaintiff's Opposition to Defendant's Motion for Leave to File Her Second Amended Answer, Counterclaim and Affirmative Defenses was served via the ECF system and by fax to:

Regan Rush, Esq.
Melehy & Associates LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Fax: (301) 587-6308

/s/_____
Robert J. Hickey