# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT J. HICKEY | ) | |
| 5601 LAMBETH ROAD | ) | |
| BETHESDA, MARYLAND 20814 | ) | |
| 202-659-0536 | ) | |
| Plaintiff | ) | |
| | ) | Case: 1:07-cv-01866 (JDB) |
| v. | ) | |
| CHARLENE SCOTT | ) | |
| 324 SHEPHERD STREET NW | ) | |
| WASHINGTON, DC 20011 | ) | |
| 202-291-0518 | ) | |
| Defendant | ) | |

### PLAINTIFF'S REPLY TO DEFENDANT'S COUNTERCLAIMS CONTAINED IN DEFENDANT'S SECOND AMENDED ANSWER ACCEPTED FOR FILING ON JULY 28, 2008 AND PLAINTIFF'S COUNTERCLAIMS

Plaintiff, Robert J. Hickey, hereby replies to Defendant's Counterclaim contained in Defendant's Second Amended Answer, Counterclaims and Affirmative Defenses filed on July 28, 2008 in Part I and sets forth his own Counterclaims in Part II.

## PART I—REPLY TO DEFENDANT'S COUNTERCLAIMS

### DEFENDANT'S COUNTERCLAIM I

### PROFESSIONAL NEGLIGENCE--DUTY OF CARE

1. Paragraph 46 (and paragraphs 56 and 51) which incorporates paragraphs 1-45, is denied by Plaintiff as follows:

   a. Paragraph 7. Denies her second sentence since it is inconsistent with the Parties' Agreement, paragraph 7, and with her first sentence.

   b. Paragraph 8. Denies Defendant's second and third sentences since Defendant provides no basis for not following the terms of her Agreement with Plaintiff and is inconsistent with her first sentence.

c.  Paragraph 9.  Denies first sentence as being inconsistent with the second sentence and the terms of paragraph 9 of their Agreement.

d.  Paragraph 10 is denied as being inconsistent with Defendant's prior position.  Plaintiff avers that Defendant on June 11, 2008 sent a partial payment of $123,138.37 without any condition to Plaintiff but did not pay any or all of the interest that has been earned on the escrow account as of that date and will continue to be earned until provided to Plaintiff.  Plaintiff further avers that he did not accept partial payment as full payment of his claim.

e.  As to paragraph 11, Plaintiff denies and avers that Defendant has not set forth any invoice to which she had filed a written objection within the 30-day period set forth in paragraph 9 of her contract with Plaintiff.

f.  As to Defendant's denial of the second sentence in paragraph 18, Plaintiff denies as not responsive and avers that Defendant has not set forth any work allegedly performed by Defendant or others included in the Petition for Fees and none was included.  Defendant's averment in the third sentence is denied as not responsive.  Plaintiff further avers that Defendant did not object in writing to any invoice as to completeness or necessity within the 30 day period as required by paragraph 9 of their Agreement, that Defendant never informed EEOC or DOE of any disagreement with Plaintiff's Petition for Fees and that any objection at this time is untimely and has been waived.

g.  Plaintiff avers that Defendant's denial of the third sentence in paragraph 19 is inconsistent with action taken by Defendant and the EEOC her litigation against DOE and is denied.

h.  Plaintiff avers that the reference in paragraph 20 to "on or about June 20, 2007" in his paragraph would cover "June 27, 2007."

i.  Plaintiff avers that the contents of the three letters in paragraph 21, as well as replies thereto, speak for themselves and further avers that Plaintiff never agreed to accept partial payment of his claims against Defendant as full payment.

j.  As to paragraph 23, Plaintiff avers that Defendant, subsequent to the filing of his Verified Complaint, has conveyed $123,138.37 without any condition from the escrow account to Plaintiff but has not conveyed any and all interest earned on that account or to otherwise pay Plaintiff on his claim in its entirety.

k.  Plaintiff avers that Defendant's paragraphs 31, 32, 33, 39, 40 and 43 deny Plaintiff due process in that they fail to give Plaintiff fair notice of her Defenses.

l.  Plaintiff denies paragraph 29 and avers that his Verified Complaint is timely under 12 DDC 301(8) since it was filed within three years of Defendant's termination of him on March 20, 2006.

m.  Plaintiff denies paragraph 30 and avers that there was no delay, and if a delay existed, it was excusable and did not prejudice Defendant and was caused by Defendant's own action.

n.  Plaintiff denies paragraph 38 and avers that the Decision of the EEOC Administrative Judge was not final and, as such, could not constitute res judicata.

o.  Plaintiff denies paragraph 45 and avers that he had repeatedly objected to all attempts by Defendant to treat any partial payment as full payment of this claim.

p. Plaintiff denies paragraph 34, 35, 36, 37 and avers Defendant did not timely object to any bill in writing as required by paragraph 9 of her Agreement with Plaintiff and her present objections to the extent they imply fraud is contrary to FRCP Rule (9).

q.  Plaintiff denies paragraph 41 and avers that the late interest charge was in accord with paragraph 7 of the Parties' Agreement.

r.  Plaintiff denies as to paragraphs 42 and 44 and avers that the Parties' Agreement, paragraph 9, specifically provided if Plaintiff was to enforce the Agreement for him to collect legal costs (including fees) owed by Defendant for the enforcement.

s.  To the extent the Defendant's allegations and defenses, used in her Second Amended Answer or elsewhere in her Second Amendment is inconsistent with the allegations in the Verified Complaint and with her prior Answers, they are denied.

t.  All factual assertions of Defendant contained in her Second Amendment are denied unless specifically admitted by Plaintiff.

2.  Admits the first sentence of paragraph 47 but denies the second sentence as being conclusionary since, inter alia, no standard of care is set forth.

3.  Denies the allegations in paragraph 48 and avers that allegations are not relevant to a breach of contract action.  Plaintiff further avers that his Petition for Fees was prepared in accord with 29 CFR 501 (e)(2) and additionally avers that Defendant made no timely objection to the Petition until this litigation even though she was fully aware of it since October 2005.

4.  Denies the allegation in paragraph 49 and avers that Defendant waived any alleged right to this alleged loss by not appealing the alleged loss to the EEOC.

5.  Denies the allegations in paragraph 50 and avers that that Defendant does not set forth the dates of any alleged meetings that she claims did not take place and furthers avers that Defendant made no timely written objections as required by paragraph 9 of the Parties' Agreement and therefore waived any late objections to these.

6.  Denies the allegations of the first three sentences of paragraph 51 and further avers that Defendant was fully aware, or should have been aware, of all Plaintiff's tasks and Motions and never timely objected to any of them. Defendant is without knowledge as to what document Defendant is specifically referring to in her fourth sentence and accordingly, it is denied.  However, if Defendant is referring to a document sent to her on October 27, 2003, it should be noted that Defendant never objected to the document and that she sent on the same day a 47-page document to Plaintiff. Plaintiff further avers that all communications with Defendant were necessary and consistent with his obligation to communicate with his client.  Plaintiff additionally avers that Defendant made no

timely written objection in support of this allegation as required by paragraphs 9 of their Agreement and, therefore, waived any late objection.

7.  Denies the allegations in paragraph 52 and further avers that all services were described in a manner consistent with paragraph 6 of the Parties' Agreement which Defendant never sought to change.

8.  Denies the allegation of paragraph 53 and avers not only that Defendant was fully aware of and acquiesced in the damages sought by Plaintiff on Defendant's behalf but she expressed gratitude for his work in October 2005 and at other times.  She also benefited from his work by being awarded approximately $250,000 by the EEOC.  Plaintiff further avers that Defendant did not appeal the damages awarded her by the EEOC and her failure to do so constitutes satisfaction and waiver and cannot be raised in a Counterclaim.

9.  The allegations in paragraphs 54 and 55 are conclusionary which requires no response from Plaintiff.  To the extent that a response is required, the factual allegations in these paragraphs are denied.

10.  With respect to Defendant's prayer for relief, Plaintiff denies that Defendant is entitled to any relief, including that set forth in her prayer.

## DEFENDANT'S COUNTERCLAIM II

## BREACH OF FIDUCIARY DUTY

11.  As to paragraph 56, Plaintiff restates and reincorporates his paragraphs 1-10 above.

12.  Plaintiff denies paragraph 57 as conclusionary; to the extent that a response is called for it is denied.

13.  Plaintiff denies paragraph 58 and avers that Defendant did not file any timely written objections to any of these allegations as required under paragraph 9 of their Agreement; and avers that a civil action cannot be brought for an alleged violation of Rule 1.5 and, furthermore, all such claims were rejected by the D.C. Bar Counsel.  Plaintiff denies that Defendant claim that she did not receive

competent legal service and avers such claim is inconsistent with being awarded approximately $250,000 by the EEOC and her own statement of October 8, 2005 thanking Plaintiff for taking her case as well as her requests to Plaintiff to continue in her case (although without any guarantee of payment).

14.  The allegations in paragraphs 59 and 60 are conclusions to which no response is required.  To the extent they require a response, the factual allegations are denied.

15.   With respect to Defendant's prayer for relief, Plaintiff denies that Defendant is entitled to any relief including that set forth in the prayer.

## DEFENDANT'S COUNTERCLAIM III

## D.C. CONSUMER PROTECTION ACT

16.  As to paragraph 61, Plaintiff restates and reincorporates his paragraphs 1-15 supra.

17.  Denies the allegations in paragraph 62, 63 and 64 and avers that the DCCPPA does not cover practicing attorneys and further avers that Defendant did not exhaust the procedures in 28 DCC 3903.

18.  Denies the allegations in paragraphs 65 (a)-(b).

a.  As to paragraph 65(a), Plaintiff denies and avers that Defendant at all times was fully aware in 1997 and thereafter that her relationship was with Plaintiff alone and that no member or employee of the firm of Burch & Cronauer participated or was involved in her litigation against DOE.

b.  As to paragraph 65(b), Plaintiff denies and avers that Defendant in November 1997 was not aware of Burch & Cronauer or its reputation.  Plaintiff avers further that Defendant was not aware of Mr. Cronauer's relationship to the movie mentioned in her paragraph until several weeks after her Agreement with Plaintiff was signed when she was told about it by Plaintiff.  Plaintiff further avers that neither Mr. Cronauer nor the firm of Burch & Cronauer practiced in the area of labor law.

19. Plaintiff denies paragraphs 65(c), (d) and (e) and avers that Defendant waived any objection by not filing a timely written objection under paragraph 9 of the Parties' Agreement.

20. Plaintiff denies the allegations in paragraph 66 and avers that Defendant made no timely written objections under paragraph 6 and/or under paragraph 9 of the Parties' Agreement and thereby waived any late objection.  Plaintiff avers further that as Defendant alleges fraud, she had not set forth the particulars as required by FRCP Rule 9(b).

21.  The allegations in paragraphs 67-68 are conclusions to which no response is required.  To the extent they require a response, the factual allegations are denied

22.   With respect to Defendant's prayer for relief, Plaintiff denies that Defendant is entitled to any relief including that set forth in her prayer.

### DEFENSES

Plaintiff restates and reincorporates his Defenses and Affirmative Defenses set forth in Plaintiff's Reply to Defendant's Counterclaim filed on May 22, 2008 including the Second through Thirteenth Defenses and the First through Eighth Affirmative Defenses except that the following Defenses are amended.

a. Plaintiff's Sixth Defense is amended to the extent that Defendant may no longer be claiming that she had a contract with Burch & Cronauer but that only that Plaintiff had allegedly misrepresented a relationship with Burch & Cronauer since Defendant has not complied with FRCP Rule 9(b) by failing to include the particulars of any alleged misrepresentation.  Plaintiff further avers that his contract with Defendant clearly states on its face that it is with Plaintiff alone.

b.  The reference to "malpractice" in the Thirteenth Defense is amended to include Defendant's present allegations in her new Counterclaim regarding negligence and breach of the duty of care in her Count I and breach of fiduciary duty in her Count II.

c.  The reference of "contract" in the Fourteenth Affirmative Defense is amended to include any claim that a contract with Plaintiff did not exist between November 17, 1997 through March 29, 2005 but also any claim by Defendant that any or all provisions of said contract entered into on November 17, 1997 is invalid, illegal or inoperative for any reason.

## FOURTEENTH DEFENSE

Defendant to the extent that she is claiming in paragraphs 52 and 65 (a) or elsewhere that Plaintiff's invoices to her did not contain a description of services or tasks, such claims are is barred by paragraph 6 of her Agreement with Plaintiff which states specifically what was to be provided in an invoice and Defendant is not claiming what she was provided was not in accord with paragraph 6.

## FIFTEENTH DEFENSE

Defendant, to the extent she is alleging in paragraph 50 that services were not performed or that meetings did not occur; in paragraph 51 that Plaintiff spent time on unnecessary tasks and motions; in paragraph 58 that Plaintiff charged for services not provided, charged unreasonable fees, used wasteful procedures or failed to provide competent legal services; in paragraph 65 (a) and (d) that Plaintiff charged for services not provided and that Plaintiff provided unneeded services, and in her Affirmative Defense paragraphs 34, 35, 36, 37 and elsewhere, such allegations are is barred by paragraph 9 of the Parties' Agreement from asserting such claims  inasmuch as she never filed timely written objections to the services provided and billed to her and has thereby waived any later objections.

## SIXTEENTH DEFENSE

Defendant is not permitted to allege ethics violations as set forth in her paragraphs 36, 37 and 58 in a civil complaint and to the extent it might be permitted, such allegations are barred by the denial of Defendant's ethics Complaint by the D.C. Bar Counsel.

## SEVENTEENTH DEFENSE

Defendant has failed to show any special circumstances under which she should not be bound by the contract she entered into with Plaintiff in November 1997.

## EIGHTEENTH DEFENSE

Defendant was fully aware of, and acquiesced in, Plaintiff's defense against DOE's assertions that Defendant as an independent contractor, had no rights under 42 USC 2000 (e) et seq and any rights she might had, would be under other sections of 42 USC including Section 1983.

## NINETEENTH DEFENSE

Firms such as Plaintiff employing legal assistants who perform traditional work of a paralegal are entitled to compensation for the work performed and related expenses. They are also entitled to compensation for secretarial overtime and expenses.

## TWENTIETH DEFENSE

Defendant, by making a partial payment to Plaintiff, waived all objections that the remainder of payment claimed by him was not owed to him.

## TWENTY-FIRST DEFENSE

Despite claims by Defendant that Plaintiff did not advocate for all damages claimed by her, Defendant was (1) aware of and acquiesced in the damages sought by Plaintiff on her behalf; (2) expressed gratitude to Plaintiff on October 8, 2005 for work done on her behalf; 3) was awarded approximately $250,000 (excluding fees awarded) and (4) did not appeal the damages awarded to her by the EEOC.

## NINTH AFFIRMATIVE DEFENSE

Defendant has failed to state a claim under the D.C. Consumer Protection Act, 28 DCC 3901 et seq: since that law does not apply to practicing attorneys and, even if it did, Defendant did not exhaust the procedures set forth in 28 DCC 3903.

## TENTH AFFIRMATIVE DEFENSE

Defendant is estopped from making claims or defenses based on the description of service since (1) Defendant agreed in paragraph 6 of her Agreement with Plaintiff to the fee description set forth therein; (2) Defendant never sought to change paragraph 6; (3) Defendant was fully aware of the services being provided by Plaintiff by communications by Plaintiff and his office; and (4) Defendant agreed that the elimination of details in the invoices was necessary to protect against revealing to DOE confidential and privileged communications and Defendant 's strategy in her litigation with it.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant is estopped from any claim regarding the services performed by Plaintiff for Defendant since (1) Defendant was fully aware and had agreed to all services provided; (2) Defendant was invited by Plaintiff to fully discuss his services; (3) Defendant never objected to any service provided, or not provided, under the mechanism stated in paragraph 9 of their Agreement and (4) any claim as to competency of such services is refuted by Defendant's gratitude for such services expressed in her various communications to Plaintiff or to his office including her letter of October 8, 2005 and by her being awarded by the EEOC approximately $250,000 for Plaintiff's work on her behalf.

## TWELFTH AFFIRMATIVE DEFENSE

Defendant has failed to mitigate her damages under all counts by failing to appeal the Administrative Judge's Decision even though her right of appeal was brought to Defendant's attention including on November 7, 2005 and other dates.

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendant is barred by the three year statute of limitations in 12 DCC 301 (8) by not filing timely written objections to any invoice in 1998 or at least by May 6, 2005 when Plaintiff last charged Defendant for legal services.

## FOURTEENTH AFFIRMATIVE DEFENSE

Defendant is barred by laches by not timely objecting in writing to invoices to alleged mishandling of services performed by Plaintiff for approximately 8 years which has caused substantial prejudice to Plaintiff's ability to rebut these allegations.

## FIFTEENTH AFFIRMATIVE DEFENSE

Defendant is barred by the doctrine of unclean hands by not timely notifying EEOC of her allegations about Plaintiff's fees while the matter was pending before it.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendant is barred from alleging any fraudulent conduct by Plaintiff for his services since she failed to comply with FRCP Rule 9(b) by not setting forth the particulars of any such allegations.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Defendant is barred by laches by not timely making known her objections to the contents of Plaintiff's Petition for Fees which delay severely prejudiced Plaintiff in light of prior eight-year history of litigation.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Defendant is barred by her bad faith in refusing to pay Plaintiff for his legal services for ten years claiming (1) she had no contract with him which she admitted later that she had; and (2) that she did not have the financial resources to pay even though she did not pay Plaintiff when her financial situation improved.

## NINETEENTH AFFIRMATIVE DEFENSE

Defendant has waived all challenges to the description of the services in invoices and to the contents of services provided or not provided covered by invoices by reason of paragraphs 6 and 9 respectively of the Parties' Agreement.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendant, by making a partial payment to Plaintiff, waived all objections that the remainder of the payment claimed by him was not owed to him.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Defendant, who was fully aware or should have been aware of the paralegal services performed by Plaintiff's assistant, is estopped from making any objections to such services for which she was charged only for her overtime work and related expenses even though Plaintiff was entitled for reimbursement for all hours worked, not just overtime as a paralegal. The same is true for overtime work of a secretary.

## PART II--PLAINTIFF'S COUNTERCLAIMS

### FIRST COUNTERCLAIM FOR FRAUD

1. On November 5, 1997, Defendant contacted Plaintiff about his representing her in a dispute with the United States Department of Energy (DOE).

2. On subsequent dates, Plaintiff and Defendant had several conversations discussing her legal problem and the cost of pursuing an equal employment claim against DOE. Because of her asserted financial difficulties, Plaintiff agreed to reduce his normal rate to $225 per hour. He only charged for his own time and expenses. He did not charge for time spent (except overtime) for his assistant/paralegal's work. Defendant was informed that she would have to sign a retainer agreement with him which was discussed.

3. On or about November 19, 1997, Plaintiff sent two copies of the retainer agreement with Plaintiff to be signed and returned with her check. There is nothing in the transmittal letter indicating that is was to be part of the Agreement and it is not referred to in the Agreement.

4. The Agreement states it is between Plaintiff and Defendant. No other party is mentioned. Paragraph 5 states that Defendant is to pay Plaintiff "all legal fees and disbursements relating to pursuing this matter." Paragraph 8 states that if "attorney fees are awarded by the Court or in settlement in an amount less than that billed by Mr. Hickey, Ms. Scott will pay Mr. Hickey the difference."

5. The Agreement in paragraph 6 provided that the Defendant would be "given a short summary of fees and disbursements for each month containing only the hours and fees spent on these matters along with a summary of disbursements." Defendant could seek a change in the format which had to be agreed to in writing before work was performed and an expense was incurred. If Defendant had a dispute over the bill, she had, under paragraph 9, to make a written objection within 30 days of rendering the statement or it was waived.

6. Defendant was told the purpose of the format was to prevent confidential, privileged and strategic information being contained in the bill and becoming accessible to DOE. Defendant agreed that the details should be kept out of the invoice and agreed to the language in paragraph 6. Another purpose of the paragraph along with paragraph 9 was to encourage the parties to resolve disputes promptly before added services were performed or expenses incurred.

7. Defendant was informed that, if she had any questions before signing the Agreement, she should contact him or any other attorney or bar association. This admonition was incorporated into paragraph 9 of the Agreement. Defendant had informed Plaintiff that she had a sister who practiced employment law and another sister who was engaged in some aspect of labor relations. On or about November 24, 1997, Defendant informed Plaintiff that she had read the Agreement and it seems "fair enough." The Agreement including the format and procedures for objections to paragraphs 6 and 9 which remained the same until March 2006 when Defendant changed attorneys and terminated their contract.

8. At no time did Defendant state that she believed she was contracting with Burch & Cronauer. She knew nothing about that firm. Defendant was told that the Plaintiff was not a member or employee of that firm and that his relationship with the firm was one of expense sharing but otherwise his practice was independent of theirs.

9. At the end of April 1998, Plaintiff relocated his offices. Defendant was aware of this change both in April and May 1998. Defendant did not request that there be a change in the Agreement as a result of the move either at that time or thereafter prior to the termination of their relationship by Defendant on March 20, 2006. Defendant communicated with the Plaintiff or his assistant/paralegal at his new offices by letter, fax and phone. Defendant during the period November 29, 2005 to July 11, 2008 insisted that she had no contract with Plaintiff but after that date has conceded she had a contract.

10. Soon after Defendant contacted Plaintiff in 1997, her contract with DOE ended and Defendant had difficulty either getting new employment or employment which paid at the same level as she received from DOE.

11. Defendant, starting in 1998, kept informing Plaintiff that she was having financial difficulties and requesting that she be allowed to pay reduced amounts until her financial situation improved. Plaintiff stated that contract would remain in effect but he would be willing to accept smaller payments until her financial situation improved. However, while Defendant's financial situation improved over time, she never increased the amount of her payments to Plaintiff. Instead, she kept

coming up with various reasons why greater payments by her were not possible although after repeated calls would make payment for a few hundred dollars to cover expenses.

12.  Defendant informed Plaintiff on March 7, 2000 that her sisters could not contribute to the legal costs of the litigation and she did not respond to Plaintiff's inquiry whether her sister could otherwise assist her in the litigation.

13.  During the period from November 1997 to May 5, 2005, Plaintiff continued to send invoices to Defendant all of which started "pursuant to our Agreement."  At no time did Defendant question what "Agreement" was being referred to or its provisions.

14. During this time Defendant continued to refer to Plaintiff as her attorney, signing various documents with this designation even though she later claimed he was not her attorney.

15.  Defendant was billed for no work after April 30, 2005 including work done on the Petition for Fees in October 2005.

16.  By October 1, 2005, Defendant had incurred $186,295.86 in legal fees of which she had paid only $16,200 for almost an eight -year period.

17.  On September 30, 2005, the EEOC Administrative Judge issued a Decision in Defendant's favor which ultimately resulted in her receiving approximately $250,000 in addition to legal fees which were awarded separately.

18.  On November 29, 2005, Plaintiff contacted Defendant by phone about her payment of the outstanding bills.  Defendant responded that she would not pay.  Defendant took the position that she had no contract with Plaintiff and that she would not pay for future work on the basis of the parties November 1997 Agreement.  Further Defendant requested that Plaintiff continue to work without her paying her past bills or assuring him any payment for future work.  Although Defendant had stated that she was grateful for work that he had done for her, she now set forth a list of complaints which she had not raised during prior eight-year period.   Plaintiff denied the new assertions  on December 2, 2005.

19.  From December 1, 2005 to March 29, 2006, there was an exchange of correspondence between Plaintiff and Defendant in which Defendant repeated she would not pay the outstanding amount due, that she did not recognize the existing contract, that she wanted Plaintiff to continue working on her case but would not agree to apply the existing contract to such work or otherwise guarantee payment for such future work and that the most Plaintiff could expect would be what was awarded by the EEOC despite paragraph 8 of their Agreement.

20.  During the first two months of 2006, Plaintiff attempted to work out a resolution of payment for past and future work.

21. On March 29, 2006, Plaintiff received a fax from Defendant dated March 20, 2006 in which Defendant gave notice of terminating Plaintiff and substituting Leon Swinson as her attorney.

22. Plaintiff incorporates paragraphs 9-26 of his Verified Complaint.

23. The representations of Defendant were intended to deceive Plaintiff, to be false and/or to be made with reckless disregard of the truth in that.

    A. Defendant knew she was entering into a contract with Plaintiff alone.

    B. Defendant knew that her contract with Plaintiff continued beyond April 1998 to March 2006.

    C. Defendant deliberately withheld full payment on invoices even though she was financially able to make payments.

    D. Defendant sought to have Plaintiff perform additional and future services with no intent to compensate him for such services.

    E. Defendant refused to pay $170,095.86 to Plaintiff for services performed by him prior to April 30, 2005 and interest.

    F. Defendant falsely claimed that Plaintiff had terminated her contract even though she knew that she had terminated it on March 20, 2006.

    G. Defendant withheld from $139,338.27 from fees awarded to her by DOE to which at least $123, 138.27 she admitted she had no legitimate claim.

    H. Defendant falsely sought compensation from Plaintiff under the D.C. Consumer Protection Act even though she was aware, or should have been aware, that that Act was not applicable to practicing attorneys, such as Plaintiff.

    I. Defendant falsely claimed that she was not provided competent legal service even though she had not objected to his services prior to November 29, 2005, that she expressed gratitude in October 2005 for the services provided, that she sought Plaintiff continue to perform legal services for her after December 1, 2005 and that she was awarded approximately $250,000 for the legal services performed by Plaintiff.

24. Defendant further engaged in misrepresentation by concealing material information from or revealing only a part therefore to Plaintiff for the purpose of inducing a false understanding on Plaintiff's part, including:

    A. Any bona fide doubt that her contract was with Plaintiff only.

    B. Any bona fide doubt that her contract with Plaintiff continued beyond April 1998 to March 20, 2006.

    C. Any bona fide timely written objection to any invoice form 1997-2006.

    D.  Her financial ability to pay for legal services which had been rendered

    E.  Information material to Plaintiff's continuing a contractual relationship with Defendant.

25.  All of the aforegoing representations and concealments were material to (1) Plaintiff entering into a contract with Defendant in November 1997 and (2) continuing a contractual relationship with Defendant until March 20, 2006.

26.  Defendant knew that her representations and concealments would be important to Plaintiff in choosing whether to enter into and continue a contractual arrangement with Defendant.

27.  The Defendant's false representations and concealments were intended to and, in fact, did induce Plaintiff to perform legal services for her.  They also permitted Defendant to retain monies that were properly Plaintiff's.

28.  Plaintiff was unaware of the falsity of Defendant's representations and her concealments.

29.  Plaintiff reasonably relied upon Defendant's representations and concealments to his detriment by not receiving full payment for his legal services, interest and legal fees for enforcing their Agreement.

30.  The loss to Plaintiff was the direct, material and proximate result of Defendant's failure to pay with interest the amount owed Plaintiff under her contract and give to Plaintiff money owed to him upon Plaintiff's request.

31.  Defendant's outrageous refusal to pay Plaintiff in accord with their Agreement and her retention of EEOC-awarded money for work done by Plaintiff held in escrow was done unjustifiably, willfully and maliciously.

32.  Defendant has fraudulently benefited from her misrepresentations and concealments.

33.  As a result of Defendant's fraud, Plaintiff also lost the opportunity to perform legal services for others for which he could have been fully compensated.

**34.  PRAYER FOR RELIEF**

    A.  In addition to compensation sought in Count I and II of the Verified Complaint, Defendant should be required to pay Plaintiff:

        (1) Damages of $250,000 or whatever was paid to her by DOE, whichever is greater, as a result to Plaintiff's efforts on her behalf, at the then legal rate,

        (2) Court costs, including legal fees and post judgment interest,

        (3) Compensatory and/or consequential damages arising from her fraud.

        (4) Any other and further relief that the Court deems just and proper.

B.  Defendant should be enjoined from commencing or continuing any legal actions or Complaint or Counterclaims in any forum against Plaintiff for filing his Verified Complaint and his Counterclaims and seeking the compensation to which he is owed.

## SECOND COUNTERCLAIM

## PLAINTIFF'S COUNTERCLAIM FOR ABUSE OF PROCESS

1.  Throughout these proceedings, Defendant has perverted and abused process by taking the following actions:

A. Defendant's activities are made in bad faith in an attempt to not compensate Plaintiff for legal services rendered to her and to harass him.

(1) Defendant asserted in her original Counterclaim that she did not enter into a contract with Plaintiff in November, 1997 but with the law firm, Burch & Cronauer, even though the Agreement specifically stated it was between "Robert J. Hickey…and Ms. Charlene Scott."  Defendant now concedes she, in fact, had a contract with Plaintiff.

(2) Defendant asserted in her original Counterclaim that any agreement with Plaintiff ended in April 1996 even though Defendant never informed Plaintiff of this belief and repeatedly referred to Plaintiff as her attorney.  Defendant had now abandoned this claim.

(3) Defendant had claimed that Plaintiff terminated their relationship at an unspecified time even though Defendant specifically informed Plaintiff of his termination by letter received on March 29, 2006 but  dated March 20, 2006.

(4) Defendant, despite having never filed any timely written objection to any invoice as required by paragraph 9 of the Parties' Agreement during the period between November 19, 1997 and September 30, 2005 sent to her by Plaintiff, now seeks to assert her waived objections in her Second Amended Answer.

(5) Defendant, despite never requesting a change in the format of the invoices sent to her as set forth in paragraph 5 of the Parties' Agreement during the period between November 19, 1997 and September 30, 2005, or any time period for filing written objections to such invoices, as required by paragraph 6 of the Parties agreement, now seeks to object in her Second Amended Answer to the format of the invoices during this period even although she had waived such objections.

(6) Prior to November 2005, the only reason given by Defendant for failure to fully pay on the invoices received was her alleged financial inability to do so but after that date and during this litigation she contended she had no contract with Plaintiff which she now admits having.

(7) From December 2005 to July 11, 2008, Defendant asserted to Plaintiff that she did not have a legal contract with Plaintiff and/or that she was not obligated to pay for his legal services beyond which might be awarded by the EEOC in her discrimination case as the basis for not paying Plaintiff his full compensation earned under the Parties' Agreement.

(8) Prior to November 2005, Defendant never asserted that Plaintiff was required to perform legal services in the future without a contract or any guaranty of payment but after that date and during this litigation has alleged otherwise even though contrary to the Parties' Agreement.

(9) Even though Plaintiff was successful in obtaining for Defendant an award by the EEOC of approximately $250,000 over and above the legal fees awarded against DOE, and even though Defendant never filed a timely written objection to his legal services and repeatedly thanked him for legal work done on her behalf and asked him to continue to provide service (with no guarantee of pay), Defendant claims now in

paragraph 58 of her Second Amended Answer that Plaintiff failed to provide her competent legal services.

(10) Although Defendant 's employment compensation increased over the 8 years after 1997 that Plaintiff represented Defendant so that she was able to pay for the legal services being provided to her, Defendant never paid Plaintiff commensurate with her increased income despite her contract with Plaintiff and her promise to do so when she was financially able to do so.

(11) Defendant prevented Plaintiff from appealing the reduction in his fees to the EEOC by the Administrative Judge and from seeking an increase in payments to him, by not cooperating with the Plaintiff in an Appeal on this issue even though she had stated she would do so.  Despite her failure to support Plaintiff's request for added compensation, Defendant in her Second Amendment claims that Plaintiff should have requested $84,000 more from the EEOC.

(12) The subject matter of Defendant's Counterclaim is the same as her ethics Complaint which the D.C. Bar Counsel rejected.

(13) Defendant's claim of various alleged litigation misconduct by Plaintiff from 1997 to 2006 is inconsistent with her requests that Plaintiff continue to represent her in 2005-2006 and her thanking him for his past representation of her.

(14) Defendant withheld $139,338.27 in legal fees paid by DOE as awarded by EEOC even though she is claimed that is she owed only $16,200 of that amount and though she later paid $123,138.27 after one year had passed but paid no interest earned on the monies held in her escrow account.

(15) Contrary to the Court belief expressed in its Order of May 12, 2008, Plaintiff was not speculating that Defendant was not entitled to pro se status because she had continued to be represented by Mr. Leon Swinson (until retaining her present

counsel), since Defendant specifically informed the Magistrate of this fact at the mediation session held on February 11, 2008 and Defendant has never denied the role of Mr. Swinson providing legal services to her after Plaintiff's Verified Complaint was filed.

(16) Defendant filed a Counterclaim in her Second Amended Answer for violation of the D.C. Consumer Protective Procedures Act 28 DCC 3901 et seq. even though Defendant was aware, or should have been aware, that DCCPPA was not applicable to practicing attorneys and that she had not exhausted the procedures under that Act.

(17) Defendant sought Plaintiff in paragraphs 48 and 49 of her Second Amended Answer to bill DOE for an additional $84,000 not billed to Defendant which was improper.

(18) Defendant by filing a Second Amended Answer which radically changed the theory of her Counterclaim, and added new Counterclaims and new Affirmative Defenses, was engaged in a bad faith attempt to further delay paying to Plaintiff compensation owed to him and to harass him.

B.  Defendant's Counterclaims lack merit and are frivolous as set forth in Plaintiff's denials, Defenses and Affirmative Defenses to these Counterclaims.

2.  The above actions by Defendant in paragraph 1 were taken with the ulterior motives of obtaining the improper purpose for which process is not designed, specifically the harassment of Plaintiff and the delay in the litigation in order to force Plaintiff to abandon the litigation for monies owed to him.

3.  The actions set forth in paragraph 1 were willful, intentional, malicious and not anticipated or contemplated in the regular proceedings in this case.

**PRAYER FOR RELIEF**:

As a result of the foregoing actions by Defendant:

A. Plaintiff has suffered damages beyond those normally associated with litigation from an

20

institution of a civil proceeding.

B. Defendant is liable for all compensatory and the consequential damages that reasonably result from her abuse of process.

C. Plaintiff is entitled to damages of $250,000 beyond what may be awarded under Count I and II of the Verified Complaint and his Reply First Counterclaim.

D. Plaintiff is entitled to costs, including attorney fees and post judgment interest.

E. Plaintiff is entitled to such other and further relief as the Court may deem just.

## THIRD COUNTERCLAIM

## PLAINTIFF'S COUNTERCLAIM FOR CONVERSION

1. Plaintiff hereby incorporates Count II of his Verified Complaint.

2. Plaintiff hereby incorporates paragraph 20 to Count II in Defendant's first Amended Answer to the extent Defendant admits she received $139,338.27 for legal fees and that portion of paragraph 21 in which Defendant admits Plaintiff is "entitled to $139,338.27 minus $16,200 or $123,138.27."

3. On July 20, 2007, Plaintiff informed Defendant that he was willing to accept the $123,138.27 and resolve later the disposition of the remainder being held by Defendant and claimed by Plaintiff. Plaintiff has repeatedly informed Defendant that he would not accept this partial payment as full payment of his claim.

4. Defendant has on June 11, 2008 turned over to Plaintiff the $123,138.27 without any condition and which she had asserted no legitimate claim to this money during the prior year.

5. Defendant has refused to pay the interest of approximately $1804 earned on the escrow account as of August 1, 2008.

6. Such actions by Defendant in withholding from Plaintiff $123,138,27 for one year and all interest earned on the escrow account constitutes conversion and was taken by her  intentionally, willfully unjustifiably and maliciously.

7. Plaintiff has suffered damages by the loss of the money.

**PRAYER FOR RELIEF**

A. Plaintiff is entitled to all interest earned on the escrow account from the time of the award.

B.  Plaintiff is entitled to punitive damages in the amount of $20,000 beyond what may be awarded under Counts I and II of the Verified Complaint and his Reply First Counterclaim.

C.  Plaintiff is entitled to costs, including legal fees and post judgment interest.

D.  Plaintiff is entitled to such other and further relief as the Court may deem just.


Respectfully submitted,


/S/_____
Robert J. Hickey, Bar No. 42341
Law Office of Robert J. Hickey
1050 17th Street NW, Suite 700
Washington, DC 20036
301.656.2364 (home)
202.659.0536 (office)
202.659.0537 (fax)
Attorney for Plaintiff, Pro Se


**VERIFICATION OF ROBERT J. HICKEY**

I declare that under the penalty of perjury that the foregoing facts set forth in the plaintiff Reply are true and correct.


/s/_____

Robert J. Hickey

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2008, a copy of the foregoing Plaintiff's Reply to Defendant's Counterclaims Contained In Defendant's Second Amended Answer Accepted For Filing On July 28, 2008 and Plaintiff's Counterclaims was served via the ECF system and by fax to:

Regan Rush, Esq.
Melehy & Associates LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Fax: (301) 587-6308

/s/_____
Robert J. Hickey