IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBERT J. HICKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-1866 (JDB) |
| v. | ) | |
| | ) | |
| CHARLENE SCOTT, | ) | |
| | ) | |
| Defendant. | ) | |

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION OF ROBERT HICKEY FOR FULL, OR IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Dated:      March 26, 2010

Respectfully Submitted,

Wilson, Elser, Moskowitz,
Edelman & Dicker LLP

 /s/ Robert J. Hickey
Robert J. Hickey (D.C. Bar No. 42341)
1050 17th St, NW
Suite 910
Washington, D.C. 20036
roberthickeylaw@yahoo.com

*Plaintiff, Pro Se*

/s/ Laura Steel, Esq.
Laura Steel, Esq. (D.C. Bar No. 23660)
Kevin Farrell, Esq. (D.C. Bar No. 492142)
700 11th Street, NW
Suite 400
Washington, D.C. 20001
Tel. (202) 626-7660
Fax (202) 628-3606
Laura.Steel@wilsonelser.com
Kevin.Farrell@wilsonelser.com

*Attorneys for Counter-defendant*
*Robert J. Hickey*

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     THE COURT SHOULD ENTER AN ORDER STRIKING SCOTT'S
        OPPOSITION BECAUSE IT FAILS TO COMPLY WITH THE RULES .................1

III.    SCOTT HAS FAILED TO OVERCOME MR. HICKEY'S ENTITLEMENT
        TO SUMMARY JUDGMENT AS TO HIS AFFIRMATIVE CLAIMS .....................2

        A.      Breach of Contract ...........................................................................2
                1.      Paragraphs 6 and 9 of the Agreement Are Not Against
                        Public Policy............................................................................2
                2.      Hickey Did Not Waive Late Interest Fees For The
                        Term Of The Agreement.........................................................6
                3.      *Pro Se* Attorney Enforcement of Contract Is Permitted ....................10
                4.      Fee Forfeiture Should Not Be Permitted .............................................11

        B.      Constructive Trust/ Conversion ..................................................................12
                1.      Constructive Trust...............................................................................12
                2.      Conversion ..........................................................................................13

        C.      Fraud .........................................................................................................14
                1.      Allegations Addressed in Scott's Prior Motion ...................................14
                2.      Allegations Not Addressed in Scott's Prior Motion ...........................15
                        a.      Scott's Opposition to Hickey's Appeal After
                                Promising To Support It................................................15
                        b.      Scott Falsely Claimed That She Was Not Present at
                                Six Meetings With Hickey In 1998 ..............................17
                        c.      Scott's Failure to Disclose To Hickey Receipt of
                                Money from DOE, and Her Failure To Place The
                                Money in Escrow and Instead Spending the Money
                                was Fraudulent ..........................................................18

        D.      Abuse of Process..........................................................................................20

IV.     SCOTT HAS FAILED TO OVERCOME MR. HICKEY'S ENTITLEMENT
        TO SUMMARY JUDGMENT AS TO MS. SCOTT'S COUNTERCLAIMS ..........21

        A.      Scott Has Not Cured The Insurmountable Legal Defects In Her
                Counterclaims for Professional Negligence and Breach of
                Fiduciary Duty ............................................................................................21
                1.      Scott now concedes by silence that any allegations
                        regarding Mr. Hickey's substantive handling of the

|  |  | underlying litigation, which have been withdrawn and fail as a matter of law | 22 |
| 2. |  | Scott fails to overcome the fatal legal flaws with respect to any allegations regarding Mr. Hickey's billing practices | 22 |
| 3. |  | Scott never overcomes the fundamental showing that her fee dispute claims are barred by the express terms of the Agreement | 24 |
| 4. |  | Scott has also failed to refute the absence of proximate causation with respect to the fee arrangement or Mr. Hickey's billing practices | 26 |
| 5. |  | Ms. Scott cannot create a claim for emotional damages under her professional malpractice and breach of fiduciary duty claims | 27 |
| 6. |  | Scott cannot invent damages for forfeiture or disgorgement, which are not recoverable on her counterclaims | 29 |
| 7. |  | Scott cannot create damages that could be awarded under a forfeiture theory | 31 |
| 8. |  | Scott does not overcome Mr. Hickey's entitlement to summary judgment since she now concedes that an attorney is not required to use the Laffey Matrix and she fails to show any proximately caused injury | 32 |
| 9. |  | Scott fails to defeat Mr. Hickey's showing that the judgmental immunity rule bars the counterclaims | 35 |

B. Scott's Opposition Does Not Cure The Fatal Legal Defects In The Counterclaim for Alleged Violations of the D.C. Consumer Protection Procedures Act ................................................................................ 35

V.   CONCLUSION ........................................................................................ 35

376157.5

# TABLE OF AUTHORITIES

## Cases

*Armenian Assembly of America v. Cafesjiam*
  597 F. Supp. 2d 128 (D.D.C. 2009) ........................................................13
*Aronoff v Lenkin*
  618 A.2d 669 (D.C. 1992) ...................................................................17
*Asuncion v. Columbia Hospital for Woman*
  514 A.2d 1187 (D.C. 1986) ..................................................................29
*Bale v. Dean Witter Reynolds*
  627 F. Supp. 650 (D. Min. 1956).............................................................15
*Belmar v. Garza*
  319 B.R. 748 Bankr. (D.D.C. 2000) ..........................................................32
*BP Am. Prod. Co. v. Burton*
  549 U.S. 84 (2006) ...........................................................................37
*Carey Canada v. California Union Ins. Co.*
  748 F. Supp. 8 (D.D.C. 1990) ...................................................................9
*Chatman v. Lawlor*
  831 A.2d 395 (D.C. 2003) .................................................................. 21
*Chedwick v. Nash*
  151 F.3d 1077 (D.C. Cir. 1998) .............................................................15
*Childs v. Purll*
  882 A.2d 227 (D.C. 2005) ...................................................................36
*Choharis v State Farm*
  961 A.2d 1050 (D.C. 2008) ..................................................................17
*Choharis v State Farm*
  961 A.2d 1080 (D.C. 2008) ..............................................................14, 17
*Coughlin v. Serine*
  154 Ill. App. 3d 510 (1st Dist. 1987).........................................................23
*Crescent Properties v. Inabinet*
  897 A.2d 782 (D.C. 2006) ...................................................................37
*Cure v IBM*
  517 F.2d 212 (5th Cir. 1975) ................................................................18
*Davis v. Davis*
  663 A.2d 499 (DC 2001) .......................................................................5
*De May v. Moore & Bruce*
  584 F. Supp. 2d 170 (D.D.C. 2008) ...........................................................6
*District of Columbia v. Smith*
  436 A.2d 1294 (D.C. 1981) ..................................................................29
*Elliot & Frantz v. Ingersoll-Rand*
  457 F.3d 312 (3rd Cir. 2006) ..................................................................8
*Ellis v. Sheikh*
  583 F. Supp. 2d 434 (S.D.N.Y. 2008) ..................................................... 16
*Feemster v. BSA Ltd. P'ship*
  471 F. Supp. 2d 87 (D.D.C. 2007)............................................................37

*Fleet Bus Credit Corp. v. National City Leasing*
   191 F.R.D. 568 (N.D. Ill 1999)...................................................................8
*Funding Systems Leasing Corp. v. Pugh*
   530 F.2d 91 (5th Cir. 1976) ....................................................................9
*Gomez v. Independence Mgmt. of Delaware, Inc.*
   967 A.2d 1276 (D.C. 2009) ...................................................................37
*Gray v Gray*
   412 A.2d 1208 (D.C. 1980) ...................................................................14
*Hahn v Sargent*
   523 F.2d 461 (1st Cir. 1975)..................................................................18
*Hais v Smith*
   547 A.2d 956 (D.C. 1988) .....................................................................17
*Hendry v. Pelland*
   73 F.3d 397 (D.C. Cir. Ct. 1996) ..........................................................32
*Herbin v. Hoeffel*
   806 A.2d 186 (D.C. 2002) .....................................................................28
*Homa v. Friendly Mobile Manor*
   612 A.2d 322 (Md. App. 1982)................................................................2
*In Re Douglas*
   859 A.2d 1069 (D.C. 2008) .....................................................................5
*In Re Schoemenan*
   772 A.2d 259 (D.C. 2001) .......................................................................5
*In Re Norvengence*
   384 BR 315 (BKRY NJ 2008) ..............................................................11
*Jacobsen v. MPA*
   520 F.2d 810 (1st Cir. 1975)....................................................................8
*Jacobsen v. Oliver*
   555 F. Supp. 2d 72 (D.D.C. 2008)................................................11, 24, 25
*Jankovic v. I.C.G.*
   494 F.3d 1080 (D.C. Cir. 2007)...............................................................7
*Johnson v. Georgia Express*
   488 F.2d 714 (5th Cir. 1974) .................................................................33
*Miller v. Drexel Burnham Lambert*
   791 F.2d 80 (11th Cir. 1986) ...................................................................7
*Miller v. Holzmann*
   563 F. Supp. 2d 54 (D.D.C. 2008) .........................................................12
*Monarch Const. Co v. Arts Corp.*
   981 A.2d 822 (Md. App. 2005)...............................................................10
*Monier v. Guaranty Trust*
   82 F.2d 252 (2nd Cir. 1936) ...................................................................15
*Morgan v. Psychiatric Inst. of Wash.*
   692 A.2d 417 (D.C. 1997) .....................................................................28
*National Acceptance Corp. v. Regal Products*
   155 F.R.D. 631 (E.D. Wis.) .....................................................................8
*Osin v. Johnson*
   243 F.2d 653, 100 App. D.C. 230 (D.C. Cir. 1957) ................................13

iv

*Parker v. Martin*
    905 A.2d 756 (D.C. 2006) ..................................................................37
*Pick Ford v. DEP*
    967 A.2d 414 (PA 2008)........................................................................5
*RA Weaver & Assoc. v Haas and Haynie Corp.*
    663 F.2d 168, 213 App .D.C. 404 (D.C. Cir 1980).....................................17
*Raynor v. Richardson*
    643 F. Supp. 238 (D.D.C. 1986) ..........................................................20
*Riss & Co. v AAR*
    190 F. Supp. 10 (D.D.C. 1960) ............................................................18
*Robbins v. Krock*
    896 N.E. 2d 633 (Mass. 2008) .............................................................11
*Royal Indem. Co. v U.S.*
    61 Sup. Ct. 995 (1947).........................................................................6
*RX.com v. Hartford Fire Ins.*
    426 F. Supp. 2d 546 (S.D. Tex. 2006) ..................................................10
*Searcy, Denny et al. v. Scheller*
    629 So.2d 947 (Fl. App. 1993) ............................................................12
*Shahyn v D.C.*
    392 A.2d 1008 (D.C. 1978) ..................................................................14
*Shapiro, Lifschitz & Scram, P.C. v. Hazard*
    24 F. Supp. 2d 66 (D.D.C. 1998) .........................................................23
*Sitcou v. D.C. Bar Assoc.*
    885 A.2d 289 (D.C. 2005) .....................................................................5
*Twin Towers Plaza Tenants Ass'n, Inc. v. Capitol Park Assocs., L.P.*
    894 A.2d 1113 (D.C. 2006) ..................................................................37
*US v. Robertson Terminal Warehouse*
    575 F. Supp. 2d 210 (D.D.C. 2008)........................................................9
*Williams v. Baker*
    572 A.2d 1062 (D.C. 1990) ..................................................................29
*Winer v. Jonal Corp.*
    545 F.2d 1094 (Mont. 1976) ................................................................11

## Rules

Ethics Rule 1.4(b) ...................................................................................3
Ethics Rule 1.5(b) ...................................................................................5
Ethics Rule 1.8(g) ...................................................................................5
Fed. R.Civ. P. 9(b) ................................................................................15
Fed. R. Civ. P. 12(h) .............................................................................15
Local Civil Rules, D.D.C., Rule 7(h)...................................................1,2

376157.5

## Other Authorities

Ronald E. Mallen & Jeffrey M. Smith
  *Legal Malpractice*, §1:1 at 6 (4th ed. 2006) .................................................................23

## I.    **INTRODUCTION**

Robert J. Hickey, Esquire, (hereafter Hickey) Plaintiff *pro se* and Defendant on the Counterclaims though undersigned counsel, hereby files his Reply to the Opposition filed by Defendant Charlene Scott (hereafter Scott) to Plaintiff's Motion for Full or Partial Summary Judgment and asserts that his Motion should be granted for the following reasons.

## II.    **THE COURT SHOULD ENTER AN ORDER STRIKING SCOTT'S OPPOSITION BECAUSE IT FAILS TO COMPLY WITH THE RULES**

The Court should enter an Order striking the Statement of Material Facts submitted in support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment because Ms. Scott failed to comply with Local Civil Rule 7(h). The Rule provides:

> An opposition to [a Motion for Summary Judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the part of the record relied on to support the statement. ....
>
> In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

The Rules require that, as part of her Opposition, Ms. Scott submit a response to Mr. Hickey's Statement of Material Facts Not In Dispute. Any such submission must respond to each paragraph of Mr. Hickey's Statement with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied and furnishing precise citations to the portions of the record on which she relies. Rather than prepare the

1

required statement as to those facts which are converted, Scott filed a "Statement of Material Fact As To *Which There Is No Genuine Issue*" (Document 67-1)(emphasis added).

Many of these "statements" are not matters of "fact," but rather are more accurately described as legal standards, expert opinion, and improper legal conclusions, many of which are inadmissible and nearly all of which are disputed by Mr. Hickey. Nevertheless, because Ms. Scott did not properly comply with her obligations pursuant to Local Civil Rule 7(h), the Court should strike the Statement submitted by Ms. Scott with her Opposition and treat the facts alleged by Mr. Hickey as conceded.

## III.   SCOTT HAS FAILED TO OVERCOME MR. HICKEY'S ENTITLEMENT TO SUMMARY JUDGMENT AS TO HIS AFFIRMATIVE CLAIMS

### A.   Breach of Contract

#### 1.   Paragraphs 6 and 9 of the Agreement Are Not Against Public Policy

In her Answer to the Verified Complaint Scott challenged her contract with Hickey on various bases- starting with the allegation that she had no contract with him or that the contract had ended in April 1998. Her various theories continued to grow after the litigation began in October 2007. One theory that has popped up at different times was that the contract was not with Hickey but with the firm of Burch & Cronauer, even though the contract on its face stated that the only parties involved were Hickey and Scott and never mentioned Burch & Cronauer, individually or of its members. Further, Scott never made any payment to Burch & Cronauer. *Homa v. Friendly Mobile Manor*, 612 A.2d 322, 334 (Md. App. 1982).

By the time she filed her Second Amended Answer and Counterclaims in July 2008, Ms. Scott admitted that she had a contract with Hickey (even this is not certain

2

since in her Motion for Summary Judgment she referred to a contingency contract which "modified" the contract- although she never provided such a document, nor could she since it does not exist). While "admitting" the existence of a contract with Hickey, she asserted that all of the clauses were improper for various unspecified reasons. Even though she engaged in mandatory disclosure and discovery, she never indicated what the improprieties were that she was referring to until her Opposition, filed on February 19, 2010- thirteen years after entering into her Agreement with Hickey. Her current position is that Paragraph 6 and 9 of the Agreement, when read together, constitute a prohibited prospective waiver of any potential malpractice liability on the part of Hickey, which, for reasons stated below it does not. Given this lengthy passage of time her defense is barred by the statute of limitation or *laches*.

Moreover, there is no merit in her assertions. Paragraph 6 provided the format of the bill which was agreed to by Scott[1]. This is in keeping with Ethics Rule 1.4(b) since her actions constitute an express consent not to have this information included in her invoices. Additionally, Scott never sought to change the format of the invoices, although permitted to do so under the contract. She only complained after eight years had passed, when she was asked to begin paying Hickey what she owed to him after he was successful in her case. Scott does not contend that Paragraph 6 is unlawful, although throughout her pleadings she keeps stating that Scott was without the knowledge of what was happening in her case. *See, e.g.*, Scott Opp. p. 39. However, this deliberate falsehood

---

[1] The purpose of the limited fee description was to two-fold: first to conform the D.C. Ethics Opinion 290 and to not reveal privileged, strategic and confidential information and second, to prevent this information from falling into her opponent's hands so that they could use this information to prepare for a future hearings or trial. This was a particular concern since DOE refused to accept the EEOC's determination on independent contractor. If DOE's position was upheld there was a substantial risk that a new hearing or trial could be ordered and DOE could use the detailed invoices to plot a new strategy. It had nothing to do with preventing an authorized investigation. Scott cites no case indicating this concern not to be legitimate. Any thought to the contrary is mere second guessing.

on her and her attorney's part is easily exposed by an examination of the record (a disc of Mr. Hickey's document production, which includes his entire file related to this underlying litigation, will be provided to the Clerk of the Court).

As early as November 25, 1997, one day after she signed the Agreement, Scott was informed by Hickey that she should use the invoices she received to discuss with him what was happening in her case but she never did. Furthermore, Hickey kept in constant communications with her by sending her all documents received or sent to DOE or EEOC in the case and by correspondence discussing that status and issues in the case. In addition there was extensive communication between Scott and Hickey or his paralegal, Scott Opp., Exhibit W p. 4. The irony is that DOE in disputing Hickey's Fee Petition (Scott Opp., Exhibit V p. 11) and Scott herself in her Counterclaim ¶ 51 claimed he spent too much time communicating with her. Notably, Hickey went beyond providing monthly updates which has been held sufficient. *In Re Schoemenan*, 772 A.2d 259 (D.C. 2001). At summary judgment, Scott may not "rely solely on allegations or conclusory statements. Rather [she] must present specific facts that would enable a jury to find in her favor." *Cooper v. First Gov't Morg. & Investors Corp.*, 238 F. Supp. 2d 50, 53-54 (D.D.C. 2002)(citations omitted). Ms. Scott has failed to do so. There is no genuine dispute that Mr. Hickey adequately kept Scott informed of all developments in the underlying case.

According to Scott, Paragraph 6 of the Agreement becomes improper only when read in conjunction with Paragraph 9. That paragraph provided that Scott had 30 days to object to any invoice, fees or the manner of which Hickey was litigating her case. The purpose of this was to resolve disputes immediately so that, if not resolved, to the

4

satisfaction of both parties, either or both parties could withdraw without further economic consequences. Because Hickey is a sole practitioner, immediate resolution was extremely important to him. During the eight years of representation, Scott never once complained about an invoice, the Fee Petition or the manner in which Hickey represented her. Not a single item now raised in her Counterclaims was ever complained about by Scott for eight years.

It should also be noted that prior to signing, Scott discussed the contract with her sister, an experienced employment discrimination attorney, and was invited by Hickey to discuss it in Paragraph 9 of their Agreement with other attorneys and Bar Associations. After being given this opportunity, Scott signed the Agreement stating it was "fair enough." Hickey Statement of Material Facts at ¶ 10.

It is clear that Paragraph 9 is intended to resolve present disputes, not future disputes. There is no prospective limitation in Paragraph 9 and thus no violation under Ethics Rule 1.8(g). *In Re Douglas*, 859 A.2d 1069 (D.C. 2008). Paragraph 9 contains no mention of malpractice and no language which would bar Scott prospectively from filing an ethics complaint with a bar association. In fact, Scott did file an ethics complaint which formed the basis of her counterclaims which was dismissed by the Bar Counsel on July 31, 2007, Hickey Affidavit Exhibit 2. Ms. Scott made no attempt to appeal that decision to the D.C. Court of Appeals. As a consequence she should not be allowed to raise these claims in her Second Amended Answer and Counterclaims. *Davis v. Davis*, 663 A.2d 499, 504 (DC 2001); *Pick Ford v. DEP*, 967 A.2d 414 (PA 2008). The Court of Appeals has original and exclusive jurisdiction to review a Bar Association decision. *Sitcou v D.C. Bar Assoc.*, 885 A.2d 289 (DC 2005). Given that the Bar Association has

5

primary jurisdiction in these matters in recognition of the special expertise in regulating the conduct of lawyers, its dismissal of Scott claims should be accepted by the Court. In addition, Paragraph 9 provides an efficient method for resolving fee and litigation disputes and is in keeping with Ethical Rule 1.5, comment 15, which provides that if a procedure had been established to resolve fee disputes, a lawyer should consider using it.

### 2. Hickey Did Not Waive Late Interest Fees For The Term Of The Agreement

Interest on Scott's unpaid fees is allowed as a matter of law. *Royal Indem. Co. v U.S.*, 61 Sup. Ct. 995 (1947). In the present case, Scott does not dispute that Paragraph 7 of the Agreement calls for the payment of interest at 8% per year (or .0002191 per day) if Scott did not pay the invoice sent to Scott by the 15th day after the invoice until full payment was made. Scott also does not dispute that she never paid any late interest even though she consistently did not make payment to Hickey on time. She also does not dispute that Paragraph 7 was never changed during the course of Hickey's representation of her; that she never filed a written objection over its use; and that she made no complaint about the interest charged in her ethics charge filed with the D.C. Bar Counsel on February 6, 2007.

In her Opposition Scott claims for the first time that Hickey was not entitled to interest because she was never charged and because he waived this provision of the Agreement. Scott Opp. p. 42-45. She also claims that she did not know how Hickey calculated interest, Scott Opp. p. 43. An initial issue raised by Scott (Opp. p. 43-44) is that his claim is barred by the District of Columbia's three year statute of limitation found in D.C. Code § 12-301(7). Under Scott's theory, the time for performance runs from the date performance was completed and billed, which she asserts is April 30, 2005 and

"thus; for the interest to be timely, Hickey would have had to charge Scott interest on or before April 30, 2008." There are, at least two problems with this. First, Hickey was not terminated by Scott until March 20, 2006. *De May v Moore & Bruce*, 584 F. Supp. 2d 170 (D.D.C. 2008). Even though he did not charge her for work after April 2005, he did render services to her after that date within the meaning of the *Cunningham* case cited by her. Further, even accepting the April 30, 2005 date, Hickey filed his complaint seeking interest on October 17, 2007 within the three year statutory period. Finally, because Scott refused to acknowledge her contract and pay Hickey, she would be equitably estoppel from raising the statute of limitation. *Jankovic v. I.C.G.*, 494 F.3d 1080 (D.C. Cir. 2007).

Scott's allegation that she was not charged interest ignores her financial situation during this time period. Scott had informed Hickey prior to his representation that she could pay his fees. However, after her contract with DOE was cancelled immediately after representation began, Scott complained that she could not get a suitable job and stated that her sisters would not help with financing the litigation. Because of this, Hickey voluntarily waived the interest charge for specific invoices (but did not amend the Agreement) until she got new employment in August 1998, at which time the waivers ceased. Scott Opp. p. 44. Despite this, Scott continued to make little or no payment on her outstanding invoices despite Hickey's repeated requests. Since she was not paying the fees, it would not have been worthwhile for Hickey to include the interest calculations which she also would not pay. A litigant is not required to engage in futile acts to avoid a claim of waiver. *Miller v. Drexel Burnham Lambert*, 791 F.2d 80 (11th Cir. 1986). She was fully aware of the interest charges in the contract since the parties at different times discussed the possibility of changing the contract but, in fact, did not make any changes.

7

During the period of representation Scott never asked that the interest clause be deleted or changed in any manner.  Because Hickey never changed or deleted Paragraph 7 of the Agreement[2], her obligation to pay this continues until she pays the interest in full.

Scott's present claim is that Hickey waived interest under their contract is equally without merit.  Under FRCP Rule 8(c), as affirmative defenses must be specifically pleaded or be waived. Among the affirmative defenses listed is that of "waiver." To meet the requirement, mere listing is insufficient. A party must give fair notice of the defense, *Fleet Bus Credit Corp. v. National City Leasing*, 191 FRD 568 (ND Ill 1999). The defense must contain a short and plain statement with the supporting facts; *National Acceptance Corp. v. Regal Products*, 155 F.R.D. 631 (E.D. Wis.). If it is not pled in the responsive answer or motion, it is waived. *Elliot & Frantz v. Ingersoll-Rand,* 457 F.3d 312 (3rd Cir. 2006); *Jacobsen v. MPA*, 520 F.2d 810 (1st Cir. 1975). Scott did not mention this in her Initial Answer and thereby waived it at that time. Nor did she raise this affirmative defense in her First Amended Answer. While her Second Amended Answer and Counterclaim included waivers among the various defenses, it provided no details of the waivers. There was nothing in her Answers to put Hickey on notice that she intended to raise waiver in regard to the late interest charge in their contract. She certainly has not demonstrated the elements of a waiver. *U.S. v. Robertson Terminal Warehouse,* 575 F.

---

[2] Contrary to the assertion by Scott on page 45 of her Opposition, the first mention of interest was *not* August 2007 but in the contract signed by Scott in October 1997. Further, Scott's assertion on page 43 that his invoices "did not refer to interest" is contradicted by her statement on page 49 that Hickey specifically waived interest from January 8, 1998 thru July 39, 1998 and that the interest waived ceased after August 11, 1998. Scott never questioned Hickey about the interest charges after that date, even though she was being advised by her sister, a lawyer specializing in employment law and even though she was in constant contact with Hickey's office. During the eight years of Hickey's representation Scott never sought to change her contract with Hickey to eliminate or amend this provision. Scott can point out no declaration by Hickey indicating he was abandoning his claim to interest. In fact the opposite is true. Both in 1998 and in 1999, Hickey informed Scott that he wanted to keep the contract as is. Absent waiver being properly raised in her Answer and absent any unequivocal waiver by Hickey, Scott's defense must be treated as waived and no obstacle to the granting of his motion.

Supp. 2d 210 (D.D.C. 2008). Hickey did not expressly or implicitly consent to her raising this issue (nor has Scott claimed this). By waiting until her present Opposition, Scott did not raise this defense in a timely manner. *Carey Canada v. California Union Ins. Co.,* 748 F. Supp. 8, 14 (D.D.C. 1990).

Scott has, moreover, presented no documents, testimony or affidavit showing a manifestation of Hickey's actions reflecting an unequivocal intent to relinquish or abandon his claim for late interest. Nor has Scott shown any detrimental reliance or prejudice resulting from any action by Hickey. She can not wait to raise this defense for the first time in a memorandum opposing a Motion for Summary Judgment. *Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 96 (5th Cir. 1976). Scott's defense can no longer be in controversy. Therefore, Hickey's motion as to interest must be granted.

On page 45 of her Opposition, Scott claims that what she presently owes is unclear and Hickey does not explain how he calculated this. She also claims that he included several months in which he voluntarily waived interest. However, the calculation of interest was based on Paragraph 7 of the Agreement which set a daily charge of .000291 on the outstanding balance due. This amount of money varied depending on whether she made payment on existing invoices or received new invoices on which she did not fully pay. This is set out fully in Hickey's Exhibit 43A. This shows $88,152.19 due as of December 1, 2009 with a daily charge of $10.28 for every day thereafter until paid. Also, it shows that the calculations began with the July 29, 1998 bill and does not include any month where interest was specifically waived. Scott was specifically asked for her computation of interest during discovery which she refused to provide. Moreover, Scott could easily calculate the interest by multiplying the amount

due under the invoices by the interest charged in the Agreement. It is not necessary for an expert to perform arithmetical calculations to determine interest. *RX.com v Hartford Fire Ins.*, 426 F. Supp. 2d 546 (S.D. Tex 2006). Because Scott made little or no payments, the amount owed kept increasing and will continue to increase until paid. Scott has not shown the calculation to be in error or provided an alternative calculation. Absent any specific facts to the contrary, Hickey's calculations should be accepted as correct and should be awarded in Summary Judgment.

3.     *Pro Se* **Attorney Enforcement of Contract Is Permitted**

Paragraph 9 of the Agreement provides that "if Mr. Hickey must enforce the Agreement in court, Ms. Scott agreed to pay *all* legal costs, including attorney fees, if recovery is granted in whole or in part." There is no limitation in this clause or in any of the other clauses in the Agreement over who the attorney for Hickey must be in any proceeding under this clause, nor is there any prohibition on Mr. Hickey acting as his own attorney in such a proceeding. Despite the absence of such limitations, Scott claims that Hickey can not represent himself in any contract dispute litigation. On page 46 of her Opposition Scott refers to several statutory fee-shifting cases which limit attorneys from representing themselves in proceedings under those statutes. However, different rules apply in contractual fee shifting cases. *Monarch Const. Co v. Arts Corp.*, 981 A.2d 822, 831 (Md. App. 2005). In those situations, courts give full effect to all the clauses expressed in the Agreement. *Winer v. Jonal Corp.*, 545 F.2d 1094 (Mont. 1976). In *Robbins v. Krock*, 896 N.E. 2d 633, 635-636 (Mass. 2008), an attorney represented himself in a collection action. The court rejected the idea that no payment was due because the attorney was *pro se*. The court stated that the billing rule was to allow

10

attorney fees since the *pro se* attorney would be entitled to same costs if she was represented by another attorney. The court cited several cases reaching the same conclusion. *Robbins*, 896 N.E. 2d at 636. In fact, Scott would pay less because of the favorable rate used by Hickey which even her expert agreed was substantially below market rate.[3]

### 4.     Fee Forfeiture Should Not Be Permitted

On page 42 of her Opposition, Scott claimed that Hickey forfeited his right to collect fees by breaching his fiduciary duties. Not every alleged violation of an ethics requires a forfeiture. *Jacobsen v. Oliver*, 555 F. Supp. 2d 72, 87-98 (D.D.C. 2008). She claims that this is because Hickey failed to communicate with her and because his alleged extensive and unreasonable billing. Scott does not include any discussion of this in this section of her Opposition but merely refers to another section on the breach of fiduciary duty, page 25-29 of her Opposition relating to her Counterclaims. Scott cannot untimely raise the issue of forfeiture where it was not raised in her Rule 26(a)(1) disclosure or in her subsequent discovery responses. It also can be used to collaterally attack the D.C. Bar Counsel's opinion which she did not appeal. It further cannot be used when she did not file any objections under Paragraph 9 of their Agreement. In addition to the above, Scott cannot complain as to the fee description where she specifically agreed to the invoice format in Paragraph 6 of their Agreement and never over eight years sought to change it. Additionally, what she actually knew can be seen from a review of the entire Hickey file. *See, e.g.,* Scott's Opp., Exhibit W, p. 4, a letter dated May 1, 2007 to the D.C. Bar

---

[3] Hickey does not dispute that the actual amount of fees can only be determined at the conclusion of the litigation as he has previously pointed out and that he will be entitled to such fees only if recovery is granted in whole or in part. The court has authority to render a decision on liability even though the amount of damages is to be decided *In Re Norvengence, Ins.*, 384 BR 315 (BKRY NJ 2008)

Counsel in which Scott admitted that she "talked to and worked with [Hickey's Paralegal] a lot." Scott's expert has determined that person to be a paralegal. Moreover, even if it were otherwise possible to apply a fee forfeiture, it would not be applicable here where, Scott has not suffered any loss but, in fact, was able to receive $209,501 and attorney fees from the DOE as a result of Hickey's actions. Normally, the law does not favor double recovery. *Miller v. Holzmann*, 563 F. Supp. 2d 54 (D.D.C. 2008); *Searcy, Denny et al. v. Scheller*, 629 So.2d 947, 952 (Fl. App. 1993).

**B.    Constructive Trust/Conversion**

  **1.    Constructive Trust**

   There is no dispute that Hickey was successful in the underlying sexual harassment case by winning $139,338.27 in legal fees from DOE on or about June 11, 2007 (as well $209,501 for Scott). At that time Scott had only paid Hickey $16,200. At the time Hickey filed his Verified Complaint on October 17, 2007, Scott had refused to pay over any of this money to Hickey even though she owed Hickey $170,095.86 plus late interest charges under her contract with him. A year later on June 11, 2008, Scott paid to Hickey $123,138.32 from the sum she received. She retained $16,200 and paid no interest or penalty on the amount she had kept for a year.

   In her Opposition, pages 50-52, Scott raises two contentions that she had raised previously in her Motion for Summary Judgment: 1) the District of Columbia does not recognize constructive trust as an independent cause of action, and 2) the matter is now moot. Hickey responded to this in his Opposition to her Motion on February 18, 2010, pages 17-19, and incorporates his prior arguments herein. As to the first, Hickey had pointed out in his Opposition on page 18 that, in fact, courts in the District of Columbia

will find a constructive trust appropriate when a defendant, as here, refused to concede the validity of the parties' contract. *Armenian Assembly of America v Cafesjiam*, 597 F. Supp. 2d 128, 134 (D.D.C. 2009). Scott does not mention this case and its holdings should be held applicable to the identical situation here.

There are also several problems with her claims of mootness since Scott does not dispute that she did not pay Hickey any interest on the money or any other penalty for improperly withholding the money for one year. Here, Hickey has met all of the requirements for a constructive trust at the time his suit was filed: 1) Scott withheld money, $123,138.27, which she conceded she had no right to do and was still withholding interest earned on that money, 2) the specific property held by Scott in escrow was traceable to her wrongful act and, 3) she would be unjustly enriched by keeping such interest. *Osin v Johnson*, 243 F.2d 653 (D.C. Cir. 1957) cited by Scott in her Motion at p. 51. Thus, summary judgment on this issue should be granted to Hickey.

### 2.   Conversion

As indicated above, Scott refused to turn over the $139,338.27 either at the time she received it or after Hickey filed his Verified Complaint in October, 2007. Under the EEOC Decision, Scott was entitled to reimbursements for fees she had incurred, Hickey Exhibit 16. Scott concedes that she paid Hickey only $16,200, Scott Opp. p. 49. Thus, only $16,200 of the $139,338.27 had been incurred by Scott and only this should have gone to her initially. The remaining $123,138.37 was wrongly obtained and retained by Scott, and should have gone to Hickey or held in a constructive trust since Scott had no property interest in this money. It is the wrongful retention of this money which supports a constructive trust being imposed. *Shahyn v D.C.,* 392 A.2d 1008, 1012 (D.C. 1978);

13

*Gray v Gray*, 412 A.2d 1208, 1216 (D.C. 1980); *Choharis v. State Farm*, 961 A.2d 1080 (D.C. 2008) (all cited in Scott Opp. at p. 48-49).

Even after Scott forwarded the $123,138.37 to Hickey (without interest), a year later on June 11, 2008, this did not end the problem since at the time she forwarded this, Hickey had already commenced suit in October 2007 seeking the full $170,095.86 with late interest owed to Hickey under their contract which had not then been decided by the EEOC. *See* Hickey Opp. p. 17. In his Verified Complaint, Hickey, in computing the $170,095.86 sum, had already given Scott credit for $16,200 she paid. By withholding the $16,200 from the DOE award, Scott was seeking a double counting of this sum which is improper. Thus, the $16,200 from the award, along with interest earned in escrow and penalty, should have been held in constructive trust until the issue of payment of her outstanding fees and late interest under their contract was decided. Accordingly, her defense of mootness is without merit and must be rejected.

## C.    Fraud

### 1.    Allegations Addressed in Scott's Prior Motion

On page 52 of her Motion Scott stated she "will not repeat all of the same arguments presented in her Motion for Summary Judgment."[4] These are addressed by Hickey in his Opposition to her Motion, p. 9-14. Scott's principal argument against fraud

---

[4] Instead of replying to Hickey's motion in her Opposition (as well as not replying to Hickey's Opposition to her Motion for Summary Judgment), Scott instead on March 15, 2010 submitted to Plaintiffs attorneys her proposed motion for sanction. This 47 page document duplicates her argument relating to Hickey's counterclaim for Fraud and Abuse of Process. The major differences relates to fraud, specifically that Hickey has not met the reliance element for fraud. Of the nine sections on fraud she discusses reliance in six sections. Of these, there was no explanation for her position in one section and she misstates the facts in another section. Of the five remaining, reliance is supported by the Restatement (Second) Torts, Section 544 and *Chedwick v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998). As to one section Hickey has a right to rely upon her statement of her financial condition (ability to pay him) without an investigation. *See, e. g. Monier v. Guaranty Trust*, 82 F.2d 252 (2nd Cir. 1936) (and related cases).

14

was that Hickey's claim violated by Fed. R. Civ. P. 9(b). However, as pointed out by Hickey in his Opposition (at page 9) Scott has already waived her right to allege this defense under Rule 12(h) by failing to raise this defense in her first responsive pleading. Furthermore, some of her defenses are outright frivolous, such as her assertion that Hickey did not allege any misrepresentation even though they were clearly stated in his Verified Complaint and cited by Scott herself. Hickey Opp. p. 10. Her arguments also ignore Paragraph 9 of their Agreement since she now is making arguments that were waived by not being timely objected to. Hickey Opp. p. 13-14. Each of her other arguments is clearly addressed by Hickey and do not detract from the material facts and law supporting Hickey's Motion for Summary Judgment on this issue.[5]

## 2.   Allegations Not Addressed in Scott's Prior Motion[6]

### a.   Scott's Opposition to Hickey's Appeal After Promising To Support It

Scott terminated[7] Hickey on March 20, 2005. After the termination, Scott's new attorney, Leon Swinson, contacted Hickey on May 15, 2006. During that conversation Mr. Swinson agreed that Hickey could continue pursuing an appeal for higher fees then that awarded by the EEOC Administrative Judge, Hickey Affidavit ¶¶ 37-40. On October 5, 2006 Hickey received word from Scott that Hickey "may file your argument brief as in

---

[5] Footnote 10 on page 52 of the Scott Opp. is based on Scott's misunderstanding since FRCP Rule 56.1 no longer exists. DSOF 88-93 cover both fraud and abuse with no explanation as to which is being referred to in each paragraph and no explanation of how this relates to Hickey's Motion. The same problem occurs in footnote 13 on page 56, discussed hereafter.

[6] Scott challenges the allegations as not being timely because there were not in the original Verified Reply and therefore did not meet the requirements by FRCP Rule 9(b). However, where there are numerous instance of alleged fraud taking place over a lengthy period of time, such as in this case, court have found that it's not necessary to recite the facts of each instance, *Bale v. Dean Witter Renolds*, 627 F. Supp. 650 (D Min 1956); *Ellis v. Sheikh*, 583 F. Supp. 2d 434 (DNY 2008); Folsom v. Continental Ill. 633 F. Supp. 178 (N.D. Ill. 1986).

[7] Scott later claimed in a letter dated August 27, 2007 that Hickey had terminated their contract but apparently now agrees that she terminated it.

15

interested party." Hickey Exhibit 32. Despite this and without informing Hickey, Scott did not appeal by allowing the time for appeal to pass. Hickey Exhibit 38. She then objected to Hickey's filing his own separate appeal even though Paragraph 8 of their Agreement recognized that Scott and Hickey could seek attorney fees in excess of that awarded under Paragraph 5 of their Agreement. Because Hickey was no longer representing Scott, the EEOC held that he lacked standing to challenge the reduction of fees by the EEOC Administrative Law Judge.

In her Opposition, pages 53-54, Scott falsely claims that it was Hickey who made the statement about the "interested party" and that, in any event, Hickey suffered no damages. Her first proposition is clearly disputed by Scott's own letter.[8] Hickey Exhibit 31. Despite this direct contradiction, Scott continues to argue that "Hickey informed Scott that he could file as an interest party"; but she presents nothing to support this contention. Lack of evidentiary support for her assertion furnishes a basis for granting Hickey's Motion for Summary Judgment.

Moreover, an implied condition of all contracts is that both parties must act in good faith and deal fairly with each other. *Aronoff v Lenkin*, 618 A.2d 669 (D.C. 1992); *Hais v Smith*, 547 A.2d 956 (D.C. 1988); *Choharis v State Farm*, 961 A.2d 1080 (D.C. 2008)(cited by Scott in her Opposition at p. 48-49). Here the Administrative Judge ordered that the parties confer on any fee dispute in her September 30, 2005 Decision. Hickey Exhibit 13. Despite this, the Administrative Judge refused to act on DOE's failure to confer despite a detailed letter sent by Hickey to DOE on June 7, 2006 outlining the errors of its position. Hickey Exhibit 19. Had Scott supported Hickey's appeal, he would not only be in a good position to reverse the reduction but also to obtain the money he

---

[8] Scott admits the existence of this letter on both pages 53-54 of her Opposition.

had sought in his June 7, 2006 letter. Her lack of cooperation substantially hindered Hickey's efforts in this regard, *RA Weaver & Assoc. v Haas and Haynie Corp.,* 663 F.2d 168 (D.C. Cir 1980). In these circumstances, Scott's failure to deal fairly with Hickey, breached their contract. *Choharis v State Farm*, 961 A.2d 1050 (D.C. 2008). Because Scott falsely stated she would support Hickey's claim on appeal and changed her position, she effectively prolonged the period for Hickey to recover payment for his services.

**b.  Scott Falsely Claimed That She Was Not Present at Six Meetings With Hickey In 1998.**

Scott was given invoices by Hickey in 1998 specifying time and dates worked during each month. Scott never questioned the time and dates and did not file any timely objection to them under Paragraph 9 of the Agreement. In addition, Scott was given on October 6, 2005, a copy of Hickey's Petition for Fees which listed his work during the course of his representation of Scott. This was prepared in a manner to protect Scott's privileged and confidential matter in light of a possible appeal by DOE. Scott again asked no question or submitted any objection to any meeting on these dates in 1998. Under the Agreement, by not timely objecting, Scott waived any right to later object to the fees charged for the time Hickey spent on these meetings.

In July 2008, Scott filed her Second Amended Answer and Counterclaim. As part of her First Counterclaim, paragraph 50 Scott stated Hickey claimed to perform certain services when, in fact, she claimed falsely, that this had not occurred. Scott did not provide any information about this in her Counterclaim. She also did not provide the information in her mandatory disclosure under Rule 26 (a)(1) or in her initial response to discovery. However, in a subsequent discovery response she identified six dates in 1998

17

in which she alleged that Hickey had stated he had met with her but which she claimed, he had not. In response Hickey provided four internal memos prepared at the time of the meetings detailing the contents of their meetings and also indicated events on the two other days in which normally Scott would have been expected to participate. Scott did not respond directly to this but stated that she would have been at work except for one day, May 7, 1998, for which she had no records. However, *the times* given for her work would have not precluded her meeting with Hickey at other times during these days. She did not discuss or contradict the contents of Hickey's memos or the events on the other two days.

Scott's position now is that she "believed she was not present at the meetings." Scott Opp. p. 54-55. Given Hickey's detailed memos and his time records contained in his Fee Petition, Scott is required to demonstrate by reasonable evidence that a real controversy exists. *Cure v IBM*, 517 F.2d 212 (5th Cir. 1975). The evidence manifesting a dispute must be substantial. *Hahn v Sargent*, 523 F.2d 461 (1st Cir. 1975); *Riss & Co. v AAR*, 190 F. Supp. 10 (D.D.C. 1960). Given the overwhelming proof that the meetings had occurred and that she never filed a timely objection, thereby waiving her present objections, the Court should hold that no material fact in regard to these meetings taking place is in dispute and rule for Hickey on this issue.

c.    **Scott's Failure to Disclose To Hickey Receipt of Money from DOE, and Her Failure To Place The Money in Escrow and Instead Spending the Money was Fraudulent.**

Paragraph 8 of the Agreement requires that "if a monetary recovery is obtained by Ms. Scott and there are outstanding amounts (fees, disbursement and interest) due, then Ms. Scott consents to a lien being placed on the recovery to cover the amount due to Mr. Hickey." Because Hickey was no longer representing Scott after March 20, 2006, he had

18

to depend on Scott to inform him of the receipt of any money related to the fee award and to place it in an escrow account. This did not depend totally on a voluntary act of Scott because the District of Columbia law discussed above imposes on the parties an obligation to act in good faith and to deal fairly with one another.

Despite this obligation, Scott did not inform Hickey at the time of receipt that she had received a total of $209,501 in July and September 2007. At a conference with the Magistrate during 2008, she acknowledged to him that she had received money but professed ignorance of the amount. It was not until 2009 that Hickey learned from her Third Supplemental Response to Plaintiff's Interrogatories the amount was $209,501.37. At the same time he learned from her Response 10 in her Third Supplemental Response that Scott had not placed the money in escrow but instead had spent or distributed a substantial portion of the money and was continuing to do so. Hickey Exhibit 44, First Hickey Affidavit ¶43.

In her Opposition, page 55, Scott does not dispute that she did not call Hickey immediately, thus, committing misrepresentation by concealment. Scott does not deny that she has spent, and is still spending this money which is a violation of her duty to act on good faith and Paragraph 8 of their Agreement. Hickey relied upon her obligation and has suffered damages for her failure to live up to that obligation. Clearly, Hickey believed that by Paragraph 8 he had protection against Scott's failure to pay, and he continued his representation based on the existence of Paragraph 8. Had Scott stated she would not honor the lien, Hickey would not have continued to represent her for eight years while only getting meager payments from her. Scott has not indicated that she has sufficient funds to cover the loss of the lien or its decline in value, thus, exposing Hickey to a

19

substantial lost and thereby damaging him. Without any explanation or supporting documents from Scott, no material dispute exist that Hickey has not suffered by her concealment and any subsequent loss in value, and so Summary Judgment should be granted to Hickey based on these facts. The sum of all the allegations in Hickey's Motion established that Scott's conduct was so outrageous it warrants the award of punitive damages and attorney fees to Hickey. *Raynor v. Richardson*, 643 F. Supp. 238 (D.D.C. 1986).

**D.     Abuse of Process**

Scott states on page 56 of her Opposition "Scott will not re-address Hickey's instances of abuse of process because Scott had previously fully briefed this matter [In her Memorandum of Defendant's Motion for Summary Judgment, Section IV]." Her defenses in this regard are fully addressed by Hickey in his Opposition to Defendant's Motion for Summary Judgment page 14-19. Her technical objections have no merit, and he has clearly shown that her actions were for an improper objective or compulsion. Hickey Opp. p. 14-17. She continues her abuse in her current Opposition. Even though she has been repeatedly informed that DCCPPA is not applicable to practicing attorneys, she continues to argue this, misstating the D.C. Court of Appeals Decision in *Banks* in the process. Hickey Opp. p. 18-19. She even ignores her own discussion of the D.C. Code § 11-2501 in her Opposition at page 41. Her continuing to pursue this unfounded claim is a clear example of Scott's abusive actions warranting the grant of Hickey's Motion including punitive damages and attorney fees for her outrageous conduct. *Chatman v Lawlor*, 831 A.2d 395 (D.C. 2003).

**IV.    SCOTT HAS FAILED TO OVERCOME MR. HICKEY'S ENTITLEMENT TO SUMMARY JUDGMENT AS TO MS. SCOTT'S COUNTERCLAIMS.**

**A.    Scott Has Not Cured The Insurmountable Legal Defects In Her Counterclaims for Professional Negligence and Breach of Fiduciary Duty.**

In his moving papers, Mr. Hickey has conclusively demonstrated why each of Ms. Scott's theories fails to state a cause of action for professional negligence and breach of fiduciary duty, as a matter of law.[9] In that regard, the claims are incurably defective because: 1) Ms. Scott concedes she is not seeking damages related to Mr. Hickey's substantive handling of the underlying matter, the result obtained, or the amount of damages awarded to her by the ALJ; 2) Scott did not timely dispute Mr. Hickey's invoices or object to any of the legal services provided on her behalf, as required under the Agreement; 3) Scott did not sustain any damages proximately caused by the fee arrangement or Mr. Hickey's billing practices; 4) any allegation that Mr. Hickey should have billed at a higher rate than that established in the Agreement is not actionable because there is no duty on the part of an attorney to charge or petition for fees using the Laffey Matrix and because Ms. Scott cannot show that she suffered any damages as a result of Mr. Hickey's use of the lower billing rate; and 5) Mr. Hickey is entitled to judgmental immunity for matters of professional judgment certain matters (*i.e.,* research and work completed by Mr. Hickey, including the time necessary to adequately complete those tasks).

Ms. Scott's Opposition, which is long in verbiage but short in substance, fails to overcome Mr. Hickey's entitlement to summary judgment. When stripped of its references to irrelevant matters, the Opposition only underscores how deficient the

---

[9] Because Ms. Scott's professional negligence and breach of fiduciary duty claims are predicated upon the same conduct, Mr. Hickey addresses these counts together.

21

counterclaims really are. In the absence of any genuine issue of material facts, the entry

of summary judgment in favor of Mr. Hickey on Scott's Counterclaims for Professional

Negligence and Breach of Fiduciary Duty is warranted.

1.   **Scott now concedes by silence that any allegations regarding Mr. Hickey's substantive handling of the underlying litigation, which have been withdrawn and fail as a matter of law.**

As shown, Scott has withdrawn any claim regarding Mr. Hickey's substantive

handling of the underlying EEOC case. Indeed, Ms. Scott concedes the point by silence,

Opp., *passim*, warranting summary judgment on this aspect of the Counterclaim for

Professional Negligence and Breach of Fiduciary Duty.

2.   **Scott fails to overcome the fatal legal flaws with respect to any allegations regarding Mr. Hickey's billing practices.**

With respect to any counterclaims related to counsel's billing practices in the

underlying EEOC litigation, Mr. Hickey demonstrates that all of Scott's arguments in this

regard are more properly considered in the context of affirmative defenses to Mr.

Hickey's claims for failure to pay her legal fees and expenses. Mot. at 27, fn. 4 ("in a fee

dispute between an attorney and a client, when the issue concerns the reasonableness of

the fee with no complaint about the lawyer's competence, the claim should not be

characterized as legal malpractice..." *citing* Ronald E. Mallen & Jeffrey M. Smith, *Legal

Malpractice*, §1:1 at 6 (4th ed. 2006) (collecting cases)).

In an unsuccessful effort to avoid summary judgment, Scott erroneously relies on

*dicta* from this Court's decision in *Shapiro, Lifschitz & Scram, P.C. v. Hazard*, 24 F.

Supp. 2d 66, 76-77 (D.D.C. 1998), which is neither controlling nor apposite here. In

*Shapiro*, Judge Harris denied an initial motion to dismiss but was not ultimately called on

to definitively decide if a professional malpractice claim could be based upon a lawyer's

overbilling or charging for unnecessary services). Mr. Hickey respectfully asserts that this *dicta* from *Shapiro* should not control here and should be rejected in view of the legal authority to the contrary, Mot. at 27, and the procedural posture in which it was decided, namely, a motion to dismiss. *Shapiro* is easily distinguishable from the instant case, where it is undisputed, now that discovery is concluded, that Ms. Scott cannot prove that she paid any of the fees for services challenged under this cause of action.

Likewise, Scott's reliance on the Illinois case of *Coughlin v. Serine*, 154 Ill. App. 3d 510, 514 (1st Dist. 1987) is misplaced. Scott Opp. at 5. Unlike the present case, *Coughlin* involved a legal malpractice case whereby the client sought the *return* of monies previously paid to the attorney where plaintiff alleged he was damaged by having paid more to his attorney than should have been necessary. This is not the case here, where, in contrast, the dispute arises from the client's withholding of payment and refusal to pay for fees and expenses incurred.

Addressing Scott's identical complaints, the Office of Bar Counsel for the District of Columbia Bar specifically found that the matters "essentially present a fee dispute that is not resolved by this office." *See* Hickey Exhibit 2. In light of this finding, Scott cannot be heard to transform this fee dispute into a malpractice action by inventing ethical rule violations for which Mr. Hickey has already been exonerated. *See* Scott Opp. at pp. 20 – 26. Summary judgment is warranted in the absence of any evidence of such a violation or breach of duty. *See Jacobson v. Oliver*, 555 F. Supp. 2d 72 (D.D.C. 2008).

Simply put, Scott's mere dissatisfaction with Mr. Hickey's invoices and billings does not give rise to a professional negligence or breach of fiduciary duty claim, a

376157.5

showing never refuted by the Scott Opposition. Accordingly, summary judgment for Mr.

Hickey on these aspects of the Counterclaims is warranted.

> **3.      Scott never overcomes the fundamental showing that her fee dispute claims are barred by the express terms of the Agreement.**

As shown, Scott has waived any right to challenge the adequacy of the billing

entries because, during nearly eight years of litigation, she never once complained about

any aspect of the legal invoices (either in terms of substance or format). Her present, but

untimely challenges to the format or contents of the legal invoices is now barred by

paragraph 9 of the Agreement, which mandates that any challenge or dispute be raised

within 30 days of billing, which was never done.

In her Opposition, Scott concedes (by silence) that the fee dispute is untimely

under the Agreement. Rather, in a desperate effort to avoid summary judgment, she now,

for the first time, erroneously contends the Agreement is somehow unenforceable. Scott

Opp. at p. 2-4.   In so doing, she completely misreads paragraphs 6 and 9 of the

Agreement, which do not constitute a prohibited prospective waiver of future malpractice

claims, as Scott now contends. Scott is simply wrong when she asserts that the

Agreement somehow violates District of Columbia Bar Rule 1.8[10] and her newly minted

argument is factually and legally unsupportable.[11]

Leaving aside that Scott's present claim is properly considered a fee dispute, not a

professional negligence claim, the Agreement clearly does not violate the ethical

prohibition of D.C. Bar Rule 1.8(g)(1). A plain reading of the Agreement reveals that it

---

[10] D.C. Bar Rule 1.8(g)(1) provides that "[a] lawyer shall not (1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice."

[11] This new argument is also incompatible with Ms. Scott's unsupportable claim in her Motion for Summary Judgment that based on a statement in the Petition for Fees, the Agreement "was modified to a contingency contract whereby Mr. Hickey is only entitled to fees and costs that the Administrative Judge awarded." Scott Memorandum in Support of Summary Judgment (Document 64-1) at p. 4. Mr. Hickey's Opposition (Document 65) completely refutes this contention. *See* Hickey Opp. p. 5-6.

376157.5

does not prohibit or waive future malpractice claims (let lone for fee disputes). Rather, the Agreement simply sets forth reasonable time parameters for the client to register any objections to the invoices, which in turn, enables a fair and early resolution of any dispute.[12] In that regard, the Agreement is designed to foster an early and efficient resolution of any billing issues, and does not prospectively limit, restrict or waive any future malpractice. There is nothing in the Agreement that could remotely run afoul of D.C. Bar Rule 1.8(g)(3) and Scott cannot be allowed to avoid her contractual obligations by inventing ethical impediments that simply do not exist.

Scott's misconstruction of the Agreement is also belied by the findings of the Office of Bar Counsel, which rejected her criticisms about Mr. Hickey's billings and the Agreement (as well as many other contradictory and baseless claims that have been discredited and are not pursued in this action). *See* Exhibits 23-25 to Scott Opposition. Based on its review of the record, Bar Counsel did not find anything inappropriate about the Agreement (and went so far as to conclude that Mr. Hickey took reasonable efforts to respond to Ms. Scott's requests and kept her informed about the status of the case).[13] *See* Hickey Exhibit 2 (at Hickey 7879).

At the end of the day, much as Scott may wish it otherwise, she is contractually bound by the Agreement's terms, but has nevertheless failed to comply with the dispute

---

[12] Because the Agreement does not mention malpractice at all, this matter is clearly distinguishable from *Jacobson v. Oliver*, 555 F. Supp. 2d 72 (D.D.C. 2008) cited by Scott in page 4 of her Opposition. In *Jacobson*, plaintiff's agreement with counsel included a right to settle clause and a right to terminate clause that were allegedly specifically prohibited by the Bar Rules. In contrast, here the alleged violation of the Bar Rules is a function of an elaborate and unsupportable construction by Ms. Scott. Notably, the *Jacobson* Court found that even if plaintiffs' allegations were believed, the violation of ethic rules would not permit a reasonable trier of fact to find the attorneys breached the standard of care.

[13] Such a finding also undermines any claim by Scott that she did not have sufficient knowledge or information to contest the fees. To the contrary, the findings by Bar Counsel and this record demonstrate that she was consistently and thoroughly informed about the activities taken on her behalf and that she was intimately involved with the prosecution of the EEOC claim.

provisions. Furthermore, she previously approved the Application for Fees that was submitted to the Department of Energy based on the invoices she now unsuccessfully tries to contest. As such, by virtue of her non-compliance with the Agreement and her inaction over the last several years, there is no legitimate dispute that she has contractually and equitably waived any right to object to fees now at this late date, well after the time for doing so has long ago expired.

Because the Agreement is enforceable, Scott's counterclaims (arising out of any complaints regarding Mr. Hickey's invoices) are unquestionably barred as untimely. For these reasons, the professional negligence and breach of fiduciary duty counterclaims against Mr. Hickey fail as a matter of law, warranting the entry of summary judgment.

### 4. Scott has also failed to refute the absence of proximate causation with respect to the fee arrangement or Mr. Hickey's billing practices.

As shown, summary judgment should be entered on the counterclaims because proximate cause is lacking. Hickey Mot. at 29-30, 39. Even if construed as malpractice claim, Mr. Hickey is not liable as a matter of law because his client has suffered no damages as a result of the fee arrangement or billing practices. *Id.*

In an unavailing effort to avoid the fatal legal defects in her counterclaim, Scott embarks upon a lengthy regurgitation of those tasks (in the underlying EEOC action) that she and her expert consider to have been unwarranted, (Scott Opp. at p. 5- 14), which simply misses the point.

Scott never satisfactorily addresses, let alone refutes, Mr. Hickey's fundamental showing that his billing practices did not impact the ultimate outcome of the underlying case and would not have resulted in a greater monetary award to Ms. Scott in the EEOC matter. Scott has never averred and cannot establish that she would have "fared better" in

26

the underlying EEOC case, *but for* Mr. Hickey's billing practices,[14] which is fatal to

proximate cause. *See Chase,* 499 A.2d at 1211; *Niosi,* 69 A.2d at 60; *Jacobsen,* 451 F.

Supp. 2d at 187. Because Scott, as the former client, cannot show that, had different billing

practices been utilized, she somehow would be in a better position than she is now,

summary judgment is warranted.

> **5.    Ms. Scott cannot create a claim for emotional damages under her professional malpractice and breach of fiduciary duty claims.**

Obviously recognizing the futility of her claims, Scott now tries to create

"damages" where none exist.[15] In that regard, she first seeks emotional distress damages

(which she unconvincingly believes were somehow "caused" by Mr. Hickey's billing

practices). However, as a general rule, emotional distress damages are not recoverable for

legal malpractice:

> With some jurisdictional exceptions, the rule is that damages for emotional injuries [in a legal malpractice case] are not recoverable if they are a consequence of other damages caused by the attorney's negligence or a fiduciary breach that was not an intentional tort. Damages for emotional anguish also have been rejected where the client's theory was for breach of contract.

---

[14] Scott never avers that the EEOC would have issued a greater attorneys' fees award if Mr. Hickey had employed different billing practices. *See* Complaint, *passim.* Nor does Scott ever bother to address that such a claim would be completely speculative since it would be impossible to predict how, if at all, the administrative law judge's award of attorneys' fees would have been different.

[15] Scott's Second Amended Answer and Counterclaim contains no claim for specific damages other than her claim under her Laffey Matrix argument discussed on pages 35-38 hereafter. The remainder of her Second Amended Answer and Counterclaim mentioned no other specific claim for damages. Furthermore, Scott did not provide this information under the mandatory Rule 26(a)(1) disclosure or in the subsequent discovery by the parties. Scott's failure to furnish information on damages is a clear violation of Rule 37(c). Moreover, even if she could be awarded some damages (which she has not), she would have to demonstrate that she did everything to mitigate these damages the opposite has occurred. For example she blocked Hickey from appealing the improper reduction in his fees contrary to the Judge's September 30, 2005 ruling; she failed to file her own Petition for Fees even after the EEOC offered her the opportunity to do so in its decision, Hickey Exhibit 16. She also refused to state in her discovery response what actions she took to get additional money from the EEOC and DOE and which such requests were denied. She also failed to place the $209,501 she received from DOE in an interest bearing escrow account. Absent any mitigating effort on her part, no damages can be awarded.

376157.5

*Legal Malpractice,* Mallen & Smith (2008), 21:11 at p. 35-36.[16]

District of Columbia law is clear that a plaintiff may not recover damages for

mental anguish *without a direct physical injury caused by the alleged negligence. See*

*Morgan v. Psychiatric Inst. of Wash.,* 692 A.2d 417, 421 (D.C. 1997)("In the case of a

claim of negligence the only avenue left open for recovery [of emotional distress claim]

under current law is a showing of direct physical injury resulting from the alleged

negligence."); *District of Columbia v. Smith,* 436 A.2d 1294, 1296 (D.C. 1981) ("It is

generally accepted in this jurisdiction that there can be no recovery for negligently caused

emotional distress, mental disturbance, or any consequence thereof, where there has been

no accompanying physical injury." (internal citations omitted)); *Asuncion v. Columbia*

*Hospital for Woman,* 514 A.2d 1187, 1197 (D.C. 1986)("Although it is true that, in this

jurisdiction, the physical injury need not be substantial to sustain a tort claim for

negligent infliction of emotional distress, there nonetheless must be at least some

physical injury).[17]

---

[16] The issue of whether a client can recover for alleged emotional damages for professional malpractice has not been decided under District of Columbia law. *See Herbin v. Hoeffel,* 806 A.2d 186, 198 (D.C. 2002)("Because we decide that the complaint states a claim for intentional infliction of emotional distress, we do not at this juncture decide whether a cause of action for malpractice lies where those are the only damages asserted.")(*citing* Ronald E. Mallon & Jeffrey M. Smith, Legal Malpractice, § 20.11, at 144 (5th ed. 2000)).

[17] In *Williams v. Baker,* 572 A.2d 1062, 1067 (D.C. 1990) (*en banc*), the D.C. Court of Appeals finally abandoned its longstanding rule that negligently inflicted mental distress was compensable only where it resulted from a direct physical impact. The Court did maintain, however, a requirement that there be evidence that plaintiff *was in physical danger* and held that "'if the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress . . . ." *Id.* Of course, Scott has not and cannot allege to have been in any physical danger or "zone of danger," nor can she show that her emotional injuries were the result of a direct physical injury, so as to preclude any recovery for emotional distress in this case.

28

In the absence of a direct physical injury or that she w/as somehow in the "zone of danger," Scott cannot recover emotional distress as a matter of law, even if such distress had been adequately established,[18] which she has never done.

### 6.   Scott cannot invent damages for forfeiture or disgorgement, which are not recoverable on her counterclaims.

Notwithstanding her arguments to the contrary, Scott has incurred no damages resulting from Mr. Hickey's billing practices. This is particularly so because Scott has not paid for any of the services she now tries to challenge. More importantly, however, Scott has already conceded (in writing) that her prior payments made to Mr. Hickey were owed to him under the Agreement, and she is now *estopped* from seeking a return of any of those sums (she has already tendered) under some forfeiture or disgorgement theory.[19]

As the history of the underlying litigation makes clear, Scott has only partially reimbursed her former attorney for those fees and expenses incurred and which were properly compensable under the Agreement.[20] Ultimately, in tendering only partial

---

[18] In any event, it is patently insufficient to merely allege that Scott "suffered a host of physical manifestations of emotional distress including bouts of depression, loss of sleep, fatigue and difficulty concentrating." Opp. at p. 14, *citing* Scott Affidavit. Scott has neither alleged nor proffered record evidence that emotional distress was diagnosable and medically significant, thus it is not "serious and verifiable." *Williams v. Baker*, 572 A.2d 1062, 1068 (D.C. 1990). Nor is such distress "foreseeable," as required under *Asuncion v. Columbia Hospital for Woman*, 514 A.2d 1187, 1189 (D.C. 1986). Scott's Affidavit does not remotely come close to approaching these rigorous threshold evidentiary requirements, particularly in the absence of evidence of treatment, explanation of the commencement of symptoms and a differentiation between any distress that may have been caused by the underlying discrimination.

[19] It should be noted that Scott has never heretofore made such a claim for forfeiture or disgorgement, which is conspicuously absent from both her discovery responses and initial Rule 26 disclosures. *See* Exhibit 44, Response to Interrogatory No. 23). For these reasons alone, Scott is not now entitled to recoup any of the funds already paid to Mr. Hickey by way of a forfeiture or disgorgement of the fees she paid.

[20] After nearly eight years of litigation and the excellent legal results obtained, *see* Hickey Memorandum at p. 23, prior to his discharge as counsel, Mr. Hickey submitted a fee petition requesting approximately $186,000 in legal fees. Up to that point, Ms. Scott had paid only $16,200 of the outstanding fees. *Id.* On or about June 20, 2007, the DOE made payment of almost $140,000 to Scott for those attorney's fees, an award that Scott did not appeal. Despite Mr. Hickey's repeated requests to be fully compensated, Scott refused to convey the full $139,338.27 to him to reduce the amounts owed under the Agreement. *Id.* at 24. It was not until almost a year *after* he filed a lawsuit against his former client that Ms. Scott forwarded any of these proceeds to Mr. Hickey.

29

payment to Mr. Hickey, counsel for Ms. Scott released and discharged all claims related

to Ms. Scott's rights to the $123,138 being tendered:

> Ms. Scott is making this payment to you without requiring
> any waiver of your right to pursue your claims against her,
> and it is given to you without requesting any prejudice to
> your right to pursue your existing claims.
>
> However, now that Ms. Scott has tendered this payment,
> your counts for constructive trust and conversion lack legal
> basis and are subject to claims of frivolity under Rule 11.
> As such Ms. Scott requests that you promptly dismiss those
> counts so that we may proceed with the litigation on the
> true matters in contention.

June 11, 2008 letter, Exhibit 43 to Hickey Motion.

Moreover, in filings before this Court, Scott has admitted that Hickey has been

paid "all that he owed" under the Agreement, as reflected in her own Motion for

Summary Judgment, under the header of "HICKEY'S BREACH OF CONTRACT

CLAIM AS TO ECONOMIC LOSS HAS BECOME MOOT BECAUSE HE HAS BEEN

PAID ALL HE IS OWED UNDER THE CONTRACT." (underline emphasis added).

In her summary judgment filing, Scott goes on to state that Mr. Hickey is "entitled

to fees and costs that the Administrative Judge awarded," and requests that:

> [T]his Court make a factual finding that the hourly
> arrangement contemplated in the Agreement was modified
> and thus Hickey is entitled to no more than what was
> awarded by the Administrative Judge.

See Scott Initial Memorandum (document 64) p. 3-4 (emphasis added).

Such a position (which acknowledges an obligation to pay those sums) is entirely

consistent with Ms. Scott's affirmative defense, wherein it is alleged:

> 45.   [Mr. Hickey's] claims are barred, in whole or in
>        part, by the doctrine of payment because the

30

> Defendant has tendered payment for services
> rendered under the Agreement.

Scott cannot now completely reverse course and retract her prior assertions so to now claim that she is entitled to recoup those sums previously tendered to Mr. Hickey. Without any legal authority[21] and having conceded that the payments made to Mr. Hickey were owed to him under the Agreement, Scott must be *estopped* from seeking a return of those fees by way of a forfeiture or disgorgement of fees.

7.     **Scott cannot create damages that could be awarded under a forfeiture theory.**

Notwithstanding that Scott is now *estopped* from seeking forfeiture of previously paid fees, critically absent is any proof of recoverable sums under a forfeiture theory. This is so despite an expert review of Mr. Hickey's invoices, which, even if admissible, has failed to generate a total amount of the billings which Scott now challenges. *See* Exhibits B, C and D to Scott Opposition and Scott Opposition, *passim* (the expert affidavits are subject to Mr. Hickey's Motion to Strike). At the end of the day, Scott simply has not proffered any evidence that the value of the (contested) legal services is greater than the value of the unpaid legal fees (Mr. Hickey now seeks under the Agreement and which she has refused to pay).

Even if Scott could overcome these insurmountable obstacles, which she cannot, there is no District of Columbia case law to support her theory that she should be excused from proving damages that were proximately caused by Mr. Hickey's billing practices.[22]

---

[21] It is entirely unclear whether an equitable remedy (such as forfeiture or disgorgement) is available under a legal cause of action for malpractice.

[22] In her Opposition, Scott erroneously relies on *Belmar v. Garza*, 319 B.R. 748 Bankr. D.D.C., Oct. 10, 2000), a case that does not assist her position. In *Belmar*, the Court dismissed a legal malpractice claim because plaintiffs failed to show that they suffered any damages that were proximately caused by a breach. At the same time the Court found a genuine issues of fact remained under breach of fiduciary duty claim because it was determined that disgorgement could be warranted without proof that the breach caused

This Court should reject Scott's suggestion that a breach of fiduciary duty claim could lie against an attorney without proof of an actual fiduciary breach (of loyalty or confidentiality) or of monetary damages.  To do otherwise would open the floodgates of litigation to disgruntled clients, to the detriment of legal practitioners and would unfairly overcompensate the former clients where no independent ethical breaches have been established, such as a breach of loyalty or confidentiality. This is particularly so where, as in this case, the former client has already acknowledged that the attorney was entitled to the fees awarded by the Administrative Law Judge. For these reasons, Scott is not entitled to disgorgement in this case under a breach of fiduciary duty theory.

8.     **Scott does not overcome Mr. Hickey's entitlement to summary judgment since she now concedes that an attorney is not required to use the Laffey Matrix  and she fails to show any proximately caused injury.**

Notwithstanding Scott's opposition papers, she never refutes Mr. Hickey's entitlement to summary judgment since she now concedes by silence that an attorney is not required to use the Laffey Matrix. Opp. at 17-19.  There is simply nothing to support her claim of malpractice based upon the use (in the fee petition) of the billing rate established by the Agreement, rather than a higher hourly rate allowable under the Laffey Matrix.

Try as she may, Scott cannot be allowed to ignore the well-established case law authority establishing that an attorney has no duty to petition for recovery of fees (or

---

them actual injuries. The *Belmar* Court relied on *Hendry v. Pelland*, 73 F.3d 397, 401-02 (D.C. Cir. 1996), in which the federal appellate court held that it is not necessary for a client to prove that his attorney's breach of fiduciary duty of loyalty proximately caused monetary injury in order to recover the legal fees paid for the representation. The *Hendry* Court noted that there was no District of Columbia cases on point for that issue, but found that cases in other jurisdictions and the different treatment of compensatory damages and forfeiture of fees supported its limited finding. Here, for the reasons shown, there is no "independent" breach of fiduciary duty nor any actionable conduct under such a theory regarding Mr. Hickey's billing practices. Unlike *Hendry,* there is no breach of the duty of loyalty at issue here.

376157.5

otherwise charge) using the Laffey Matrix. *See* Hickey Memorandum at p. 28 -29. She also cannot legitimately dispute the correctness of the rationale, as set forth by the Fifth Circuit, that in no event should the lawyer be awarded a fee greater than that which the client is contractually bound to pay. *Id.* citing *Johnson v. Georgia Express*, 488 F.2d 714 (5th Cir. 1974).

In an unavailing effort to create an obligation to use the Laffey Matrix where none exists, Scott improperly relies on her expert's opinion, Scott Opp. at p. 18 (citing her Statement of Material Facts at ¶56, which in turn refers to Alden Affidavit ¶47), which does not salvage this aspect of her counterclaim. In that regard, even if the Court were to consider the affidavit (an Exhibit which Plaintiff believes should be struck, see Plaintiff's Motion to Strike) her expert's affidavit is equally devoid of any legal authority that mandates the use of the Laffey Matrix in the fee petition, at a rate in excess of that set forth in the terms of the attorney's retention.

It is simply not enough for Scott's legal expert to observe that she herself has petitioned for recovery of fees in excess of those allowed in her retainer agreement or that plaintiffs' side employment attorneys in the Washington D.C. area do so. *See* Exhibit B at ¶48. Even if an attorney's personal practices were admissible under Federal Rule of Evidence 703, which is not the case, the expert cannot create a legal duty where none exists and which could contravene well-established case law.

Nor can Scott's expert cure the legal defects in the malpractice claim by inventing some injuries that she believes were "proximately caused" by Mr. Hickey's decision not to use the Laffey Matrix in his fee petition. In a confusing and illogical narrative, the opposition simply regurgitates the unfounded view that Mr. Hickey should have billed at

the higher Laffey Matrix rate, and goes on to label the difference between the fee that
could have been awarded using a Laffey Rate and that actually awarded based on the
contractually agreed-upon rate as the "Laffey Differential." Opp. at p. 18. Using a
simplistic mathematical calculation, Scott then argues that she has suffered "damages"
because Mr. Hickey did not obtain a "Laffey Differential."

Any such argument is simply a "red herring," and ignores the speculativeness of
any claim that the EEOC would have issued a greater attorneys' fees award if Mr. Hickey
had employed different billing practices, which is nowhere plead in the pleadings. *See*
Complaint, *passim*. In any event, it would be impossible to predict how, if at all, the
administrative law judge's award of attorneys' fees would have been different had a higher
billing rate been used (even if the use of the higher rate were somehow required, which is
simply not the case).[23]

At the end of the day, there is no basis for any claim that Mr. Hickey should have
used a higher Laffey rate in his fee petition, let alone that, had he done so, the ALJ would
have returned a greater attorneys' fee award as a result. Even had such a higher award
been returned, which is wholly speculative, history teaches that Scott would have
invariably and unilaterally refused to pay Mr. Hickey any such additional sums, further
demonstrating the absence of any proximately caused injury to her. For these reasons, the
professional negligence and breach of fiduciary duty claims (based on the decision not to
use the Laffey Matrix) fail as a matter of law.

---

[23] Scott's position is also undermined by her refusal to tender to Mr. Hickey the full amount of the
ALJ's award in the first instance, which generated this law suit. At one point in her opposition, Scott
illogically and self-servingly avers that, had Mr. Hickey petitioned and been awarded the "Laffey
Differential," he could have been "made whole" even though the ALJ cut his fees by 25%. *Id.* at 18. This
assumes that Scott would have been willing to let him keep the additional sums in the "Laffey
Differential," (notwithstanding her contrary position in this litigation). Later in her opposition, Scott
completely reverses course and contends that "[n]othing in the Agreement permitted [Mr.] Hickey to keep
the Laffey Differential." *Id.* at 19.

9.     **Scott fails to defeat Mr. Hickey's showing that the judgmental immunity rule bars the counterclaims.**

As demonstrated, Mr. Hickey is entitled to judgmental immunity for any claims arising out of legal research and work completed, including the time necessary to adequately complete those tasks, which are matters of professional judgment. Hickey Mot. at p. 32-33.

Indeed, throughout this litigation, Scott has consistently conceded that she is not pursuing a claim related to Mr. Hickey's substantive handling of the underlying EEOC matter and the damages awarded. Clearly satisfied with the excellent monetary result in the underlying case, Scott cannot now be allowed to "second guess" nearly all of the strategic decisions made by Mr. Hickey under the guise of challenging his billing practices or challenging his invoices. Nor can she be heard, years after the fact, to self-servingly label as "wasteful," Scott Opp. at 6- 14, those tasks and activities which contributed to the obtaining of such a favorable result in her favor. Because these matters relate to Mr. Hickey's legal strategy in pursuing Ms. Scott's claims in the exercise of his professional judgment, he is entitled to judgmental immunity.

**B.     Scott's Opposition Does Not Cure The Fatal Legal Defects In The Counterclaim for Alleged Violations of the D.C. Consumer Protection Procedures Act.**

As demonstrated, the District of Columbia Consumer Protection Procedures Act (the "CPPA") is not applicable to the professional services of lawyers and therefore any claim brought hereunder fails as a matter of law. Mot. at 40-43.

In her Opposition, Scott self-servingly and incorrectly misinterprets the Act to expand the reach of the private right of action well beyond its intended purpose. Scott Opp. at 29-39. In an unconvincing and legally inaccurate *non sequitur*, Scott first

correctly concedes the limited enforcement jurisdiction of the D.C. Department of Consumer and Regulatory Affairs ("DCRA"), which has no authority to pursue claims related to provision of legal services. However, Scott then goes on, with a mere stroke of the pen, to create a private right of action (against lawyers based on legal services) that does not exist. Not only does such a construction make no sense, but it flies in the face of D.C. law flatly rejecting such an erroneously interpretation of the CPPA. To the contrary, the courts have found coterminous the limitations placed on DCRA with those restricting private rights of action under the Act.

In *Childs v. Purll*, 882 A.2d 227, 237 (D.C. 2005), the D.C. Court of Appeals refused to recognize an expansion of the scope of private actions beyond that set forth in the CPPA. *Childs v. Purll*, 882 A.2d at 237 (noting that section 28-3905(k)(1) of the CPPA was amended in October 2000 "so that the subsection no longer explicitly links the scope of private civil actions to the jurisdiction of the [DCRA]"). *See also Twin Towers Plaza Tenants Ass'n, Inc. v. Capitol Park Assocs., L.P.*, 894 A.2d 1113, 1120 (D.C. 2006) (citing *Childs*); *Parker v. Martin*, 905 A.2d 756, 763 (D.C. 2006)(citing *Childs*); *Gomez v. Independence Mgmt. of Delaware*, Inc., 967 A.2d 1276 (D.C. 2009)(finding nothing in the plain language of the statute or its legislative history related to the statutory amendment (which added the private right of action to the CPPA) that indicates that the legislature intended to expand the CPPA so that the express limitations on DCRA activities would not apply to private right of actions).

Following *Childs* and the other cases in this area, the U.S. District Court in *Feemster v. BSA Ltd. P'ship*, 471 F. Supp. 2d 87 (D.D.C. 2007),[24] was asked to consider

---

[24] Affirmed in part and reversed in part by, remanded by 548 F.3d 1063, 383 U.S. App. D.C. 376, 2008 U.S. App. LEXIS 23910 (2008).

whether a private right of action under the CPPA (brought by plaintiffs-tenants regarding a landlord's refusal to accept rent vouchers) could exceed the enforcement authority of DCRA under the Act.

Analyzing the wording of the then-applicable statute and applying well established principles of statutory construction,[25] the *Feemster* Court found that:

> The plain language of the current version of the CPPA clearly provides that "[t]he department may not . . . apply the provisions of section 28-3905 . . . to landlord tenant relations." This language leads the Court to the conclusion that it cannot adhere to the plaintiffs' interpretation of the statute.

471 F. Supp. 2d at 105.

In granting summary judgment in favor of the landlord, the Court concluded that, where the CPPA limits the enforcement jurisdiction of the DCRA, the scope of a private cause of action created by § 28-3905 (k)(1) is similarly limited. 471 F. Supp. 2d at 105 (because DCRA lacked jurisdiction to over landlord-tenant relations, plaintiffs' private CPPA claim failed as a matter of law).

Applying these principles to the instant case, it is clear that because the CPPA limits the jurisdiction of DCRA (that lacks the authority over lawyers), the scope of the private cause of action created by § 28-3905 (k)(1) is similarly limited. Because the Act expressly prohibits DCRA from pursuing claims under the CPPA against attorneys, there is no such private right of action.

---

[25] "Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 166 L. Ed. 2d 494, 127 S. Ct. 638, 643 (2006); *see also Crescent Properties v. Inabinet*, 897 A.2d 782, 786 (D.C. 2006) ("[I]n examining the statutory language, it is axiomatic that the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.") (citations omitted).

37

For these reasons, this Court should resounding reject Scott's effort to create a private right of action against her former lawyer, which simply does not exist under the CPPA. Because the Act does not apply to the legal services at issue in this case, summary judgment is warranted in Mr. Hickey's favor as to the counterclaim brought under the D.C. Consumer Protection Procedures Act.

## V.   **CONCLUSION**

Robert J. Hickey respectfully requests that the Court enter judgment against Ms. Scott and in his favor as to all his Claims and Reply Counterclaims and enter Summary Judgment in his favor as to all of Ms. Scott's Counterclaims. In the alternative, Mr. Hickey requests that the Court issue partial summary judgment on those Claims and Counterclaims as it deems appropriate.  In addition, Plaintiff Mr. Hickey seeks on his own behalf for himself sanctions under Rule 11, the inherent power of the Court and 28 U.S.C. § 1927 against Ms. Scott and her attorneys for filings having no basis in law or fact.

Respectfully submitted,

LAW OFFICES OF ROBERT J. HICKEY

*/s/ Robert J. Hickey, Esq.*
Robert J. Hickey, Esquire (D.C. Bar No. 42341)
1050 17th St, NW
Suite 910
Tel. (202) 659-0536
Fax (202) 659-0537
Washington, D.C. 20036
***Plaintiff Pro Se***

AND

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

38

376157.5

/s/ *Laura Steel, Esq.*
Laura Steel, Esquire (D.C. Bar No.23660)
Kevin Farrell, Esquire (D.C. Bar No. 492142)
700 11th Street, NW
Suite 400
Washington, D.C. 20001
Tel. (202) 626-7660
Fax (202) 628-3606
Laura.Steel@wilsonelser.com
Kevin.Farrell@wilsonelser.com
***Attorneys for Counter-defendant Robert J. Hickey***

376157.5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Reply Memorandum of Law in Support of Motion for Summary Judgment was filed with the Court on the 26th day of March, 2010, and that service was made via ECF to:

Regan Lindsay Rush, Esq.
Melehy & Associates, LLC
8403 Colesville Road
Suite 610
Silver Spring, MD 20910


*Kevin P. Farrell*
Kevin P. Farrell, Esq.

40