## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT J. HICKEY,

    Plaintiff,

    v.

CHARLENE SCOTT,

    Defendant.

Civil Action No.  07-1866 (JDB)

## MEMORANDUM OPINION

Robert Hickey represented Charlene Scott in a successful sexual harassment suit before the Equal Employment Opportunity Commission ("EEOC") against her former employer, the Department of Energy.  After Scott refused to pay her legal bills, Hickey sued her for breach of contract.  She counterclaimed.  He counterclaimed back.  The parties fought over almost everything.  Now before the Court are Hickey's motion for summary judgment, Scott's motion for partial summary judgment, Hickey's motion to strike, both parties' motions for sanctions, and Scott's motion to voluntarily dismiss one of her counterclaims.

## BACKGROUND

In November 1997, Hickey agreed to represent Scott in a Title VII action before the EEOC.  Compl. ¶ 4.  The parties signed a contract providing, among other things, that Scott would pay Hickey $225 per hour for legal services.  See Hickey's Mem. in Supp. of Mot. for Summ. J. ("Hickey's Mem.") [Docket Entry 63], Ex. 1 ("Contract"), ¶ 3.  With respect to Hickey's legal invoices, the contract provided that Hickey "will render [to Scott] a short summary statement of fees and disbursements for each month containing only the hours and fees spent on

these matters along with a summary of disbursements spent during that month along with a reconciliation amount." Id. ¶ 6. As for any disagreements concerning Hickey's representation of Scott, the contract stated that "[a]ny dispute by Ms. Scott regarding the amount of the monthly statement or procedure for handling the case must be made in writing within 30 days of rendering the statement or the existence of a litigation problem or be waived." Id. ¶ 9. Unpaid bills would accrue interest at eight percent. Id. ¶ 7.

In September 2005, an EEOC administrative judge ruled for Scott on her Title VII claim and awarded her over $200,000. See Hickey's Mem., Ex. 13 (EEOC Decision). On Scott's behalf, Hickey then filed a motion for attorney's fees and costs, seeking $186,295.86 -- the amount of his legal bill to Scott. See Scott's Mem. in Supp. of Mot. for Summ. J. ("Scott's Mem.") [Docket Entry 64], Ex. C (Fee Petition). The administrative judge, having identified "a significant portion of hours which appear to have been excessive or inadequately documented," reduced this figure by approximately 25%, and awarded Scott $139,338.27 in attorney's fees and costs. Hickey's Mem., Ex. 15 (EEOC Attorney's Fees Decision), 5.

During Hickey's representation of her, Scott paid Hickey a total of $16,200. Compl. ¶ 10. Soon after receiving the EEOC's attorney's fee award, Scott offered to pay Hickey $123,138.27 (the $139,338.27 fee award minus $16,200) as full consideration for his legal services. See Hickey's Mem., Ex. 40 (July 17, 2007 Letter from Scott to Hickey). Hickey refused, contending that, pursuant to their contract, Scott owed him $170,095.56 ($186,295.86 minus $16,200), plus interest. Hickey, proceeding pro se, then sued Scott for breach of contract and constructive trust.

Compl. ¶¶ 14, 26.[1]  Scott, also pro se, filed an answer and then an amended answer, and asserted

several counterclaims.  See Scott's Answer [Docket Entry 3]; Scott's Am. Answer [Docket Entry

7].[2]

Scott eventually retained counsel, and thereafter filed a second amended answer along

with counterclaims for professional negligence, breach of fiduciary duty, and violations of the

D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901 et seq.  See Scott's Second Am.

Answer and Counterclaims ("Scott's Second Am. Answer") [Docket Entry 34], ¶¶ 46-68.  Hickey

then answered and filed his own counterclaims against Scott, alleging fraud, abuse of process,

and conversion.  See Hickey's First Am. Answer and Counterclaims ("Hickey's Answer")

[Docket Entry 36], pp. 12-22.  Scott has now moved for summary judgment on Hickey's claims

and counterclaims; Hickey seeks summary judgment on his claims and counterclaims, as well as

on Scott's counterclaims.  Hickey has also moved to strike numerous exhibits attached to Scott's

summary judgment briefing.  Scott has moved to voluntarily dismiss one of her counterclaims,

and has moved for sanctions against Hickey.  Hickey has cross-moved for sanctions against

Scott.[3]

## STANDARD OF REVIEW

---

[1] During this litigation, Scott sent Hickey a check for $123,138.27.  See Hickey's Mem., Ex. 43.  In light of this, Hickey now contends that Scott owes him $46,957.29, plus interest.

[2] Hickey filed numerous motions to strike Scott's pro se filings, as well as a motion for judgment on the pleadings, all of which the Court denied.  See May 12, 2008 Order [Docket Entry 20].  Hickey later filed a motion for a preliminary injunction as well, which the Court denied.  See Dec. 7, 2009 Order [Docket Entry 61].

[3] Hickey has retained counsel to defend against Scott's counterclaims.  He is proceeding pro se in all other respects.

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. Thus, the non-moving party cannot rely on mere speculation or compilation of inferences to defeat a motion for summary judgment. See Hutchinson v. Cent. Intelligence Agency, 393 F.3d 226, 229 (D.C. Cir. 2005). Nor can the non-moving party rely on hearsay statements or conclusory statements with no evidentiary basis to establish a genuine issue of material fact. See Assoc. of Flight Attendants v. Dep't of Transp., 564 F.3d 462, 465 (D.C. Cir. 2009). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Moreover, a moving party may succeed on summary judgment by pointing to the absence of evidence proffered by the non-moving party. See Celotex, 477 U.S. at 322; see also Anderson, 477 U.S. at 252 (summary judgment appropriate if the non-movant fails

to offer "evidence on which the jury could reasonably find for the [non-movant]").

## DISCUSSION

The Court will first address the parties' motions for summary judgment, and will take in turn Hickey's claims, Scott's counterclaims, and Hickey's counterclaims. Finally, the Court will address the parties' motions for sanctions.[4]

## I.     Hickey's Claims

Hickey and Scott have each moved for summary judgment on Hickey's claims for breach of contract and constructive trust. The Court will deny both motions.

### A.     Breach of Contract

Scott does not dispute that, under the contract's express terms, she currently owes Hickey nearly $50,000 plus interest. But "clients may defend a claim by their lawyer for unpaid legal fees by proving that their attorney breached a fiduciary duty." Hendry v. Pelland, 73 F.3d 397, 403 (D.C. Cir. 1996) (citing Griva v. Davison, 637 A.2d 830, 847 (D.C. 1994)). As detailed below, numerous disputes of material fact exist as to whether Hickey breached his fiduciary duty to Scott. Therefore, the Court will deny Hickey's motion for summary judgment on this claim.

_____

[4] Hickey, in his various memoranda as well as through a separate motion, seeks to strike a number of Scott's exhibits in this case. Where the disputed documents are relevant to the Court's analysis of the parties' motions for summary judgment, the Court will address the requests to strike throughout this Memorandum Opinion. As for the many other exhibits (or portions thereof) that Hickey seeks to strike, the Court has not considered them in its analysis, and Hickey's requests will be denied as moot. The Court notes, however, that even a cursory review of Hickey's arguments reveals that many of them are frivolous. Indeed, Hickey himself has submitted as exhibits some of the documents that he now seeks to strike. Compare Scott's Mem., Ex. D (EEOC Attorney's Fees Decision), with Hickey's Mem., Ex. 15 (same); compare Scott's Mem., Ex. F (Scott's Third Supplemental Responses to Hickey's First Set of Interrogatories), with Hickey's Mem., Ex. 44 (same); compare Scott's Mem., Ex. G (June 11, 2008 letter from Scott's counsel to Hickey), with Hickey's Mem., Ex. 43 (same).

The Court will also deny Scott's motion for summary judgment. Scott briefly contends that her contract with Hickey "was modified to a contingency contract whereby Hickey is only entitled to fees and costs that the Administrative Judge awarded" -- an amount that Scott has already paid him. Scott's Mem. at 4. She bases this assertion entirely on Hickey's statement in his fee petition to the EEOC that "[b]ecause of [Scott's] poor financial situation, the case was handled on a partial contingency fee basis with [Scott] paying only a small part of the cost." Scott's Mem., Ex. C (Oct. 5, 2005 Aff. of Robert Hickey), ¶ 5. But Hickey's unilateral and isolated statement to the EEOC -- without any evidence that Scott agreed to alter the contract -- does not establish that the parties modified their agreement. See Malone v. Saxony Coop. Apartments, Inc., 763 A.2d 725, 729 (D.C. 2000) (mutual assent is required "to make or modify a contract"). Hence, the Court will deny Scott's motion for summary judgment on Hickey's breach of contract claim.[5]

B.    Constructive Trust

Hickey has also moved for summary judgment on his claim for a constructive trust. Specifically, he seeks to have the remainder of the EEOC's attorney's fees award (plus interest) held in constructive trust for him. See Hickey's Mem. at 9. Such relief is premature. "[A] constructive trust is not an independent cause of action." Macharia v. United States, 238 F. Supp. 2d 13, 31 (D.D.C. 2002). Rather, it "is a remedy that a court devises after litigation." United States v. BCCI Holdings (Lux.), S.A., 46 F.3d 1185, 1190 (D.C. Cir. 1995). Because it is

---

[5] Because the Court cannot yet determine whether Scott is liable to Hickey under the contract, it will not resolve any questions concerning the appropriate relief for any breach. Indeed, except as discussed below, all questions concerning the appropriate remedies for the unlawful conduct alleged by both parties -- including those relating to fee forfeiture -- are premature.

not yet clear whether Scott owes Hickey any money, the Court cannot now determine whether the imposition of a constructive trust is appropriate.[6]

## II.     Scott's Counterclaims

Hickey has moved for summary judgment on Scott's counterclaims for professional negligence and breach of fiduciary duty.  The Court takes them in turn.[7]

### A.     Malpractice

"To establish a prima facie case of attorney malpractice under D.C. law, the plaintiff must establish the applicable standard of care, that the attorney violated the standard, and that the violation caused a legally cognizable injury."  Kaempe v. Myers, 367 F.3d 958, 966 (D.C. Cir. 2004) (citing O'Neil v. Bergan, 452 A.2d 337, 341 (D.C. 1982)).  "Expert testimony must be presented to establish the standard [of] care 'unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge.'"  Chase v.

---

[6] Scott also seeks summary judgment on this claim, arguing that it is moot because Scott has already paid Hickey the total amount of the EEOC's fee award.  See Scott's Mem. at 5. Because Hickey also seeks interest on the attorney's fee award, this potential remedy is not moot.

[7] Scott initially brought an additional counterclaim accusing Hickey of violating the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901 et seq.  Scott has moved to voluntarily dismiss this counterclaim with prejudice.  See Scott's Mot. to Voluntarily Dismiss [Docket Entry 78]; see also Fed. R. Civ. P. 41(a)(2) (following a motion for summary judgment, and except as the parties agree, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper").  Hickey, fearing that dismissal will undermine his counterclaims and his motion for sanctions, seeks to ensure that he will not be prejudiced by the voluntary dismissal.  See Hickey's Opp'n to Mot. to Voluntarily Dismiss [Docket Entry 81], at 5-8; Johnson v. Wynne, 239 F.R.D. 283, 285-86 (D.D.C. 2006) ("A court applying Rule 41(a)(2) therefore must consider whether the plaintiff seeks the motion for voluntary dismissal in good faith, and whether the dismissal would cause the defendant 'legal prejudice' . . . .").  The Court will grant Scott's motion.  The Court finds the motion to be made in good faith, and because the Court will consider Scott's prior prosecution of this counterclaim in addressing Hickey's motions for summary judgment and for sanctions, there will be no prejudice to Hickey in dismissing it.

<u>Gilbert</u>, 499 A.2d 1203, 1211 (D.C. 1985) (quoting <u>O'Neil</u>, 452 A.2d at 341).

Scott contends that Hickey committed malpractice -- she calls it professional negligence -- in five ways. According to Scott, Hickey (1) failed to request an appropriate attorney's fee award from the EEOC; (2) charged Scott for services he never provided; (3) billed Scott for unnecessary work; (4) did not include in his monthly bills any description of his services rendered; and (5) failed to obtain for Scott all the damages to which she was entitled in the EEOC proceeding. Scott's Second Am. Answer ¶¶ 48, 50-53. Hickey seeks summary judgment on all five claims. Although the Court will address these allegations individually, it will first resolve three of Hickey's arguments that are common to each of Scott's malpractice claims.

First, Hickey contends that Scott cannot sue him for malpractice because she has waived her right to do so under the parties' contract. <u>See</u> Hickey's Mem. at 30-31. This contract states that "[a]ny dispute by Ms. Scott regarding the amount of the monthly statement or procedure for handling the case must be made in writing within 30 days of rendering the statement or the existence of a litigation problem or be waived." Contract ¶ 9. Scott does not dispute that she failed to contest Hickey's billing statements or his handling of her case "within 30 days of rendering the statement or the existence of a litigation problem." Instead, Scott argues that paragraph nine of the agreement is unenforceable, at least to the extent that it precludes her from bringing a malpractice action. <u>See</u> Scott's Opp'n to Hickey's Mot. for Summ. J. ("Scott's Opp'n") [Docket Entry 67], at 4.[8]

---

[8] Hickey asks the Court to strike Scott's opposition to his motion for summary judgment and/or the Statement of Material Facts Scott submitted in support of that opposition. Specifically, Hickey contends that Scott's response to the Statement of Material Facts Not in Dispute that Hickey attached to his motion for summary judgment fails to comply with Local

(continued...)

The Court agrees. "It is accepted law that 'a promise or other term of an agreement is unenforceable on grounds of public policy if . . . the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.'" See Jacobsen v. Oliver, 555 F. Supp. 2d 72, 79 (D.D.C. 2008) (quoting Restatement (Second) of Contracts § 178 (1981)). Contractual provisions that violate the attorney's rules of professional conduct undoubtedly fall into this category. See id. ("It certainly is true that the former clause could not be enforced in light of D.C. Rule of Professional Conduct 1.2(a), while the latter could not be enforced in light of D.C. Rule of Professional Conduct 1.16(a)(3)."). The D.C. Rules of Professional Conduct provide that a lawyer shall not "[m]ake an agreement prospectively limiting the lawyer's liability to a client for malpractice." D.C. Rules of Professional Conduct 1.8(g)(1); see In re Douglass, 859 A.2d 1069, 1083 (D.C. 2004) ("Rule 1.8(g)(1) flatly prohibits a lawyer from attempting to limit his malpractice liability to a client for services to be rendered in the future."). Thus, paragraph nine's waiver provision cannot be enforced to preclude Scott's malpractice claims.[9]

Hickey's second argument common to each of Scott's malpractice claims is that the Court

---

[8](...continued)
Civil Rule 7(h). See Hickey's Reply in Supp. of Mot. for Summ. J. ("Hickey's Reply") [Docket Entry 70], at 1-2; Hickey's Mot. to Strike [Docket Entry 71], at 1-2. Even assuming that Hickey is correct, "[a] motion to strike is considered an exceptional remedy and is generally disfavored," and the Court will deny the request. United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency, 456 F. Supp. 2d 46, 53 (D.D.C. 2006) (internal quotation marks omitted).

[9] Hickey maintains that "[a] plain reading of the Agreement reveals that it does not prohibit or waive future malpractice claims." Hickey's Reply at 24-25; see also id. at 5. This statement is disingenuous. Hickey himself contends that paragraph nine precludes Scott's malpractice claims: "Because Ms. Scott has waived any right to contest Mr. Hickey's invoices, her claim of professional negligence . . . is fatally flawed . . . ." See Hickey's Mem. at 32.

should strike the expert report of employment attorney Kristin Alden, which Scott relies on to support each of her malpractice allegations.  See Scott's Mot., Ex. E ("Alden Report").  Over less than a page of discussion, Hickey offers at least six reasons why the Court should strike Alden's report.  See Hickey's Opp'n to Scott's Mot. for Summ. J. ("Hickey's Opp'n") [Docket Entry 65], at 3.  The Court will deny Hickey's request.  Some of Hickey's arguments -- that the expert report "has nothing to do with [Scott's] counterclaims but only with Hickey's claims," "does not reflect facts set forth in [Hickey's pleadings]," and "is not sworn to," id. -- are meritless on their face.  And his remaining arguments -- that Alden's report "contains opinions not based on personal knowledge," "contains conclusions, inferences, speculations and assumptions which are not permitted," and violates an agreement between the parties that Alden would opine only on certain topics, id. -- are made without a single citation to Alden's report.  "Judges are not like pigs, hunting for truffles buried in briefs," United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991), and this Court will not scour Alden's twenty-three page report to determine if Hickey's arguments have merit.  See Arizona v. Shalala, 121 F. Supp. 2d 40, 46 n.4 (D.D.C. 2000) (refusing to consider an "'asserted but unanalyzed'" motion to strike (quoting Secs. & Exchange Comm'n v. Banner Fund Int'l, 211 F.3d 602, 613-14 (D.C. Cir. 2000))); see also United States ex rel. K & R Ltd. P'ship, 456 F. Supp. 2d at 53 ("A motion to strike is considered an exceptional remedy and is generally disfavored, and the proponent of such a motion must shoulder a formidable burden." (citations and internal quotation marks omitted)).[10]

---

[10] Hickey also seeks to strike an affidavit submitted by Alden.  See Hickey's Mot. to Strike at 2-3; Scott's Opp'n, Ex. B (Feb. 19, 2010 Alden Aff.).  Most of Hickey's myriad challenges to Alden's affidavit mirror those he makes to Alden's report, and the Court will reject them for the same reasons.  The Court finds Hickey's remaining objections -- for example, that
(continued...)

Hickey's final argument common to Scott's malpractice claims is that "in a fee dispute between an attorney and a client, when the issue concerns the reasonableness of the fee with no complaint about the lawyer's competence, the claim should not be characterized as legal malpractice." Hickey's Mem. at 27 n.4 (citing, among other sources, Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice, § 1:1 at 6 (4th ed. 2006)); see also Hickey's Reply at 22. This case does not, however, involve only the reasonableness of Hickey's fees. Rather, it concerns whether Hickey's legal representation fell short of the standard of care he owed to Scott under the circumstances of her case. Such claims are properly addressed in a malpractice action. The Court will therefore turn to Scott's individual theories of malpractice.

1.    *Hickey's attorney's fees petition to the EEOC*

Scott contends that Hickey committed malpractice when, in submitting his petition for attorney's fees to the EEOC administrative law judge, he "failed to request the hourly rate for attorneys' fees to be set in accordance with the Laffey Matrix -- the prevailing standard for fees in EEOC cases." Scott's Second Am. Answer at ¶ 48.[11] Hickey's fee petition sought fees at his contractual rate of $225 per hour, see Scott's Mem., Ex. C (Oct. 5, 2005 Aff. of Robert Hickey) at

---

[10](...continued)
the affidavit reveals that Alden's conclusions are based on hearsay, see Hickey's Mot. to Strike at 2-3 -- to be meritless.

[11] The Laffey Matrix is a matrix of hourly rates for attorneys prepared by the U.S. Attorney's Office for the District of Columbia. It "provides prevailing market rates based on an attorney's years of experience," Jackson v. Dist. of Columbia, 696 F. Supp. 2d 97, 104 (D.D.C. 2010), and is "used widely in the District of Columbia to determine the prevailing wages in the community," Lopez v. Dist. of Columbia, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (internal quotation marks omitted); see also Jackson, 696 F. Supp. 2d at 99 n.1 ("The Laffey Matrix has been described as a fee schedule of presumptively reasonable rates." (internal quotation marks omitted)).

¶ 7, which is substantially less than his hourly rate under the Laffey Matrix, see Feb. 19, 2010

Alden Aff., ¶ 49; Alden Report at 17.  According to Alden, "it is the standard for lawyers who

practice federal employment discrimination law to use Laffey Matrix rates in fee petitions

regardless of the amount actually charged to the client."  Feb. 19, 2010 Alden Aff. at ¶ 47.  And,

she states, "Laffey Matrix rates are routinely awarded to attorneys by Administrative Judges in

EEOC cases irrespective of the actual contract rate that exists between the lawyer and the client."

Id. at ¶ 47; see also Scott's Opp'n, Ex. D (Nov. 19, 2009 Alden Aff.), ¶¶ 18-19 (identifying

situations where Alden received Laffey Matrix rates in EEOC cases).  Therefore, Alden offers

that "[h]ad Mr. Hickey submitted for Laffey Matrix rates in the Petition for Attorneys' fees, Ms.

Scott would have more likely than not been awarded an additional $84,311.25 in attorneys' fees."

Feb. 19, 2010 Alden Aff. at ¶ 49; see also Scott's Opp'n, Ex. Q (calculation table deriving this

figure).

Hickey disputes that he had any duty to petition for fees using the Laffey Matrix.  He

observes that the regulations governing attorney's fee awards in discrimination cases do not

mention the Laffey Matrix.  See Hickey's Mem. at 28 (citing 29 C.F.R. § 1614.501).  He notes

that the Laffey Matrix is not the only way to ascertain a proper fee award.  See id. (citing Novak

v. Capital Mgmt. & Dev. Corp., 496 F. Supp. 2d 156, 159 (D.D.C. 2007) ("[T]here is no standard

rate for attorneys in the District of Columbia.").  And he insists that his Agreement with Scott

"appropriately governs the fees to be charged and sought in a fee petition."  Hickey's Mem. at 29.

Hickey may be correct that he acted properly in seeking only his contractual rate in his fee

petition to the EEOC.  But Alden disputes this, and asserts that the standard of care required him

to seek fees under the Laffey Matrix regardless of his contractual rate.  See Feb. 19, 2010 Alden

Aff. at ¶ 47.  This disagreement precludes summary judgment.

Hickey also argues that this malpractice claim cannot succeed because Scott suffered no damages from his failure to use Laffey Matrix rates in his attorney's fee petition.  According to Hickey, had he "petitioned for reimbursement under the Laffey Matrix, it is he as the attorney[] who would have benefited thereby, not Ms. Scott, because any greater fee award would have ultimately been disbursed to him."  Hickey's Mem. at 30.  Not so.  Any increased attorney's fees award would have been granted to Scott, not Hickey.  See 42 U.S.C. § 2000e-5(k) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." (emphasis added)); see also Hickey's Opp'n at 9 ("Hickey does not dispute that money received by Scott as a result of the EEOC award goes initially to Scott to the extent she incurred legal fees." (emphasis removed)).  Even if Scott would have used any additional fees to pay the remainder of Hickey's bill, she still suffered injury from Hickey's failure to request a higher hourly rate in his fee petition.[12]

### 2. *Charging Scott for services he never provided*

Scott also accuses Hickey of "submitt[ing] billings and [seeking] to recover for services that he did not actually provide [her]."  See Scott's Second Am. Answer ¶ 50.  Specifically, Scott contends that Hickey "billed her for numerous in-person office meetings on occasions in which she did not, in fact, meet with [Hickey]."  Scott's Second Am. Answer ¶ 50.  In support, Alden observes that "[t]here were many billing entries for which I could not locate any corresponding documents in Mr. Hickey's files that correspond to the billing entries."  Feb. 19, 2010 Alden Aff.

---

[12] Hickey further contends that "it would be impossible to predict how, if at all, the administrative law judge's award of attorneys' fees would have been different had a higher billing rate been used."  Hickey's Reply at 34.  That question is for the jury.

at ¶ 59.  Additionally, she states that "[t]here were three in-office meetings with Ms. Scott for which Mr. Hickey billed . . . , however, there was no corresponding document that the meeting occurred."  Id. at ¶ 60.  Hickey's only argument for summary judgment on this claim is that Scott has waived her malpractice claim.  See Hickey's Mem. at 31-32.  For the reasons explained above, this argument fails.

### 3.    *Billing Scott for unnecessary work*

Scott next asserts that Hickey "spent an inordinate amount of time completing unnecessary tasks and motions during his representation of [her]."  Scott's Second Am. Answer ¶ 51.  "There can be little doubt that if plaintiff overbilled defendant[] or charged [her] for unnecessary services, this would constitute professional malpractice and a breach of plaintiff's fiduciary duty to defendant[]."  Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr. Ltd. P'ship, 24 F. Supp. 2d 66, 76 (D.D.C. 1998) (citing D.C. Rule of Professional Responsibility 1.5 cmt. 5 ("A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures.")).  Here, Alden extensively details her belief that, while representing Scott, Hickey engaged in inefficient and duplicative communications, submitted numerous unnecessary motions and unmeritorious arguments to the EEOC, and performed a substantial amount of work unnecessary to Scott's case.  See Feb. 19, 2010 Alden Aff. at ¶¶ 14-41; Alden Report at 4-16.  And in the EEOC administrative judge's decision awarding Scott attorney's fees, the judge wrote that Hickey "expended unnecessary time . . . preparing a number of unwarranted, repetitive, and unsuccessful motions with the presiding EEOC administrative judge(s)."  Hickey's Mem., Ex. 15 (EEOC Attorney's Fees Decision) at 5.

Hickey protests that his actions are protected by the judgmental immunity rule, which

"provides that an informed professional judgment made with reasonable care and skill cannot be the basis of a legal malpractice claim." Biomet Inc. v. Finnegan Henderson LLP, 967 A.2d 662, 666 (D.C. 2009). He contends that "the case-related tasks" he performed, "which are part and parcel of his litigation tactics and strategy (including research, motions, and correspondence), are matters of professional judgment for which he is entitled to immunity and summary judgment." Hickey's Mem. at 33.

The judgmental immunity rule does not support summary judgment here. The rule protects strategic decisions, but it "'is conditioned upon the attorney acting in good faith and upon an informed judgment after undertaking reasonable research of the relevant legal principals and facts of the given case.'" Biomet, 967 A.2d at 666 (quoting Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker, 981 P.2d 236, 240 (Idaho 1999)). Thus, attorneys are "still bound to exercise a reasonable degree of skill and care in all of [their] professional undertakings." Id. (quoting Woodruff v. Tomlin, 616 F.2d 924, 930 (6th Cir. 1984)). Here, Alden offers her opinion that Hickey failed in a variety of ways to meet the standard of care for an employment attorney. The Court, therefore, cannot conclude as a matter of law that Hickey's actions were all products of "informed professional judgment made with reasonable care and skill."[13]

4.    *Failing to describe the work performed*

Scott also argues that Hickey "breached his duty of care when he failed to provide any description of his services rendered in his monthly bills to [Scott] and merely included the

---

[13] Hickey also contends that this malpractice claim must fail because "Scott cannot demonstrate any loss was proximately caused by Mr. Hickey completing these tasks because she has not paid for the (disputed) services rendered." Hickey's Mem. at 34. This argument is frivolous. Hickey seeks payment for all the work he performed; any unnecessary charges, then, have damaged Scott by increasing the amount of Hickey's claims against her.

amount of time spent multiplied by his hourly rate."  Scott's Second Am. Answer ¶ 52.  It is clear

that Hickey's monthly invoices included only the hours worked on Scott's case each day, the

monthly tally of fees and disbursements, and the total balance due.  See, e.g., Scott's Mem., Ex. B

(Feb. 9, 1998 invoice);[14] Hickey's Mem., Ex. 11-A (April 23, 2004 invoice).  The invoices

offered no description of the work performed, or of who performed it.  According to Alden,

Hickey "did not exercise honest professional judgment" by sending Scott such bills, and he thus

"breached his duty of care as Ms. Scott's attorney."  Feb. 19, 2010 Alden Aff. ¶ 52.

Hickey responds that his bills fully complied with his contractual obligations to Scott.

See Contract ¶ 6 ("Mr. Hickey will render a short summary statement of fees and disbursements

for each month containing only the hours and fees spent on these matters along with a summary

of disbursements spent during that month along with a reconciliation amount . . . .").  There is no

question that they did.  But as explained above, contractual provisions are unenforceable to the

extent they violate the rules of professional conduct.  See Jacobsen, 555 F. Supp. 2d at 79.  And

the D.C. Rules of Professional Conduct provide that "[a] lawyer shall explain a matter to the

extent reasonably necessary to permit the client to make informed decisions regarding

representation."  D.C. Rule of Professional Conduct 1.4(b); see also Feb. 19, 2010 Alden Aff. ¶

51 ("It is my opinion that in the District of Columbia, it is standard billing practice for lawyers to

provide clients with periodic descriptions of work performed on the client's behalf.").

Accordingly, if Hickey's bills violated the rules of professional conduct -- and there is a genuine

---

[14] Hickey asks the Court to strike this exhibit because it does not include the invoice's
accompanying cover letter.  See Hickey's Opp'n at 2.  But Hickey does not suggest that the
omitted cover letter contains any description of the legal work he performed, and therefore the
Court will deny the request.

dispute of material fact concerning whether they did -- then the fact that they complied with the parties' agreement does not preclude Scott's malpractice claim.[15]

Hickey defends his billing format, explaining that he used it "to prevent the disclosure of confidential, privileged, and strategic information (which might be contained in the individual entries) if, and when, his billing statements were produced to both the EEOC and DOE in connection with a future fee petition."  Hickey's Mem. at 34-35.  Indeed, he maintains that "[t]o do otherwise would be an ethical violation on Mr. Hickey's part."  Id. at 4.

This is absurd.  Portions of Hickey's billing statements that revealed litigation strategy or client confidences would remain privileged even in a subsequent fee petition.  See Berliner Corcoran & Rowe LLP v. Orian, 662 F. Supp. 2d 130, 134 (D.D.C. 2009) ("[T]he weight of authority holds that communications relating solely to the payment of attorneys' fees are not covered by the attorney-client privilege unless they reveal confidences about the nature of legal services rendered.").  And speculative concerns about how the attorney-client privilege might affect a future fee petition do not excuse Hickey from his other ethical obligations.

Finally, Hickey contends that "this aspect of Ms. Scott's negligence claim fails because she cannot demonstrate that she suffered any loss that was proximately caused by Mr. Hickey's description of services rendered."  Hickey's Mem. at 35.  A reasonable jury could conclude,

_____

[15] Hickey insists that, even though his bills lacked any description of the work he was performing, "Ms. Scott was fully aware of what work was being done in her case by the constant communication and correspondence between the parties."  Hickey's Mem. at 4; see also Hickey's Reply at 4 ("Hickey kept in constant communications with [Scott] by sending her all documents received or sent to DOE or EEOC in the case . . . .").  This may be true -- the Court need not address whether such communications fulfilled Hickey's ethical duty to keep Scott reasonably informed about her case -- but it does not affect the Court's conclusion that paragraph six of Hickey's contract is unenforceable to the extent that it permits Hickey to violate the professional rules.

however, that if Scott had seen descriptions of the work Hickey was performing -- work that Alden repeatedly describes as "wasteful," see Feb. 19, 2010 Alden Aff. -- she would have objected to the amount of Hickey's bills. Accordingly, summary judgment is inappropriate.

5. *Failing to advocate for full damages*

Scott's final allegation of malpractice is that Hickey "failed to advocate for [Scott] to receive all the damages for which she was entitled to [sic] in her EEOC case." Scott's Second Am. Answer ¶ 53. Scott has clarified that "she is no longer pursuing a Professional Negligence claim based on" this allegation. Hickey's Mem., Ex. 44 (Scott's Third Supplemental Interrogatory Responses), 16. Accordingly, the Court will grant Hickey's motion for summary judgment on this theory.

B. Breach of Fiduciary Duty

"The requirements for stating a breach of fiduciary duty claim are similar" to those for malpractice: Scott must show that Hickey "had a fiduciary duty to [her] and violated that duty." Shapiro, Lifschitz & Schram, 24 F. Supp. 2d at 74.[16] Here, Scott contends that Hickey breached his fiduciary duty to her by "charging her for services that he did not actually provide, failing to provide competent legal services[,] and violating Rule 1.5 of the District of Columbia Rules of Professional Conduct." Scott's Second Am. Answer ¶ 58.

Hickey initially argues that summary judgment is appropriate "[b]ecause Ms. Scott's breach of fiduciary duty claim suffers from the same fatal infirmities as her professional

---

[16] Hickey does not dispute that, as her attorney, he owed Scott a fiduciary duty. Nor could he. See Shapiro, Lifschitz & Schram, 24 F. Supp. 2d at 74 n.10 ("Attorneys unquestionably stand in a fiduciary relationship to their clients for matters related to their legal representation of their clients.")

negligence claim."  Hickey's Mem. at 38; see id. ("Whether framed as professional negligence or breach of fiduciary duty, Ms. Scott's challenges to the billings are barred by the language of the Agreement . . . ."); id. at 40 ("[C]ritically absent is any showing that Ms. Scott suffered a loss that was proximately caused by an alleged violation of the Rules of Professional Conduct."); Macktal v. Garde, 111 F. Supp. 2d 18, 22 (D.D.C. 2000) (under D.C. law, "if the underlying malpractice claims fail[], tort and contract claims arising from the same transaction must also fail").  For the reasons detailed above, this argument is unpersuasive.

Hickey next asserts that Scott cannot succeed on any "fee-related arguments" as she previously raised them in a complaint about Hickey to the District of Columbia Bar Counsel, which dismissed her allegations.  See Hickey's Mem. at 39; Hickey's Mem., Ex. 2 (Bar Counsel Decision); see also Hickey's Reply at 5.  Hickey is incorrect.  The D.C. Bar Counsel must "find clear and convincing evidence of a violation of the Rules [of Professional Conduct] in order to sustain a disciplinary proceeding against an attorney."  Bar Counsel Decision at 1.  But in this Court, Scott need only establish her malpractice and breach of fiduciary duty claims by a preponderance of the evidence.  The D.C. Bar Counsel's opinion, therefore, has no preclusive effect here.  Cf. $345.00 in United States Currency v. Dist. of Columbia, 544 A.2d 680, 682 n.6 (D.C. 1988) ("[G]iven the difference in the burdens of proof in a criminal and civil proceeding, collateral estoppel does not bar" a civil action after an acquittal in a criminal trial.").

Hickey also challenges Scott's allegation that he violated D.C. Rule of Professional Conduct 1.5, which governs the reasonableness of attorney's fees.  As Hickey points out, a violation of the rules of professional conduct "does not per se[] 'constitute a breach of the attorney's common law fiduciary duty to the client.'"  TV Capital Corp. v. Paxson Commc'ns.

Corp., 894 A.2d 461, 469 (D.C. 2006) (quoting Griva, 637 A.2d at 846-47).  Nonetheless, under

D.C. law "a violation of the Code of Professional Responsibility or of the Rules of Professional

Conduct <u>can</u> constitute a breach of the attorney's common law fiduciary duty to the client."

Griva, 637 A.2d at 846-47 (emphasis added); <u>see also</u> Hendry v. Pelland, 73 F.3d 397, 401 (D.C.

Cir. 1996) ("[W]e agree with the Hendrys that their evidence that Pelland violated one of the

rules of the District of Columbia Code of Professional Responsibility was sufficient to support

their claim that he violated his common law fiduciary duty.").  Because a jury could find on this

record that Hickey violated the rules of professional conduct -- and under the law such a finding

would be sufficient to establish a breach of fiduciary duty -- summary judgment is inappropriate

on this claim.

### III.     Hickey's Counterclaims

Both Scott and Hickey have moved for summary judgment on each of Hickey's three

counterclaims.  For the reasons explained below, the Court will grant Scott's motion -- and will

deny Hickey's -- for all three.

#### A.     <u>Fraud</u>

To establish a claim for fraud, a plaintiff must show 1) that the defendant knowingly

made a false representation of or willfully omitted a material fact; 2) that the plaintiff intended to

deceive the defendant; 3) that the plaintiff acted in reasonable reliance on that misrepresentation

or willful omission; and 4) that the plaintiff suffered damages as a result of his reliance.  <u>See</u>

Estate of Nethken v. Peerless Ins. Co., 978 A.2d 603, 607 (D.C. 2009); <u>Schiff v. AARP</u>, 697

A.2d 1193, 1198 (D.C. 1997).  A plaintiff must prove fraud by clear and convincing evidence.

<u>See</u> Estate of Nethken, 978 A.2d at 607.

Here, Hickey accuses Scott of engaging in well over a dozen instances of fraud during and after his representation of her. These allegations -- which involve both misrepresentations and omissions -- stem in large part from statements Scott supposedly made (or failed to make) to Hickey, and from the existence of Scott's counterclaims in this litigation. Indeed, Hickey's counterclaim for fraud -- as well as his counterclaim for abuse of process -- is based almost entirely on his belief that "[e]very aspect of the litigation [before the EEOC] and the present litigation with Hickey reflect [Scott's] objective not to pay, or delaying payment [sic], to Hickey." Hickey's Opp'n at 15. Hickey's conviction is unsupported by the record, and the Court will grant Scott's motion for summary judgment as to this claim.

Many of Scott's alleged "misrepresentations" are not in fact misrepresentations of fact. "A misrepresentation is an assertion that is not in accord with the facts." Sarete, Inc. v. 1344 U St. Ltd. P'ship, 871 A.2d 480, 493 (D.C. 2005); see also Restatement (Second) of Torts, § 525(b) (1977) (it "denote[s] not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth"). But allegations such as "Ms. Scott falsely refused to pay $170,095.86 to [Hickey] for services performed by him . . . despite her having signed a contract to do so," see Hickey's Mem. at 10, do not involve "assertions of fact" at all. See also, e.g., Hickey's Mem., Jan. 21, 2010 Aff. of Robert Hickey ("Hickey Aff.") ¶ 44(D); id. ¶ 44(N); id. ¶ 44(I) ("Ms. Scott improperly sought to have Mr. Hickey perform additional future work without any guarantee of compensation as a condition to resolving her fee dispute . . . ."); id. ¶ 44(E) ("Ms. Scott deliberately withheld full or greater payments on invoices when her salary increased even though she had promised to make larger payments when that occurred."). Nor do some of Scott's alleged "omissions" concern facts either. See Hickey Aff. ¶ 45(A) (Scott

withheld "[a]ny bona fide doubt . . . that her contract was not with Mr. Hickey only"); <u>id.</u> ¶ 45(B) (Scott withheld "[a]ny bona fide doubt . . . that her contract with Mr. Hickey did not continue beyond April 1998 to March 20, 2006."); <u>see also</u> Hickey's Answer [Docket Entry 23], ¶ 24(C) (Scott withheld "[a]ny bona fide objection to any invoice").  These allegations thus cannot supply a cause of action for fraud.

Some of Hickey's other allegations fail because there is no evidence that he reasonably relied on Scott's alleged misrepresentations.  Hickey writes, for example, that "Ms. Scott falsely claimed that Mr. Hickey had terminated his contract with her in the Fall of 2005 . . . even though she knew that she had terminated her contract on March 20, 2006."  Hickey Aff. ¶ 44(F); <u>see also, e.g.,</u> <u>id.</u> ¶ 44(A) ("Ms. Scott knew she had entered into a contract with Mr. Hickey only, although she later claimed on November 29, 2005 that she had no contract with him."); <u>id.</u> ¶ 44(B).  But Hickey does not indicate how he relied on these alleged misrepresentations -- indeed, there is no evidence that he ever believed them to be true.  <u>See</u> <u>Va. Academy of Clinical Psychologists v. Group Hospitalization and Med. Servs., Inc.,</u> 878 A.2d 1226, 1238 (D.C. 2005) ("'[T]he maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies upon the truth of the matter misrepresented . . . .'" (quoting Restatement (Second) of Torts § 546)).

Hickey also could not have reasonably relied on alleged misrepresentations by Scott in her counterclaims.  Hickey contends that Scott committed fraud by "falsely claim[ing] in her Counterclaim . . . that she was not provided competent legal service by Mr. Hickey."  Hickey Aff. ¶ 44(G); <u>see also</u> <u>id.</u> ¶ 44(H) ("Ms. Scott falsely seeks compensation from Mr. Hickey under the D.C. Consumer Protection Procedures Act . . . ."); <u>id.</u> ¶ 44(K); <u>id.</u> ¶ 44(L) (alleging that Scott

"falsely claimed" that Hickey should have sought attorney's fees under the Laffey matrix). But even assuming that Scott's counterclaims are based on misrepresentations, there is no evidence that Hickey ever relied on the truth of these misrepresentations. See Va. Academy of Clinical Psychologists, 878 A.2d at 1238. Quite the opposite, in fact: throughout this litigation Hickey has consistently denied Scott's counterclaims.

Hickey further alleges that "[a]fter Ms. Scott terminated Mr. Hickey, she had falsely informed him that he was free to seek additional compensation from the EEOC as part of her appeal [of the EEOC's attorney's fee award]. However, she did not appeal and instead opposed Mr. Hickey's appealing on his own." Hickey Aff. ¶ 44(M); see also id. ¶ 44(J). This allegation is based on a letter Scott wrote to Hickey in which she stated that she planned to represent herself in any appeal she took from the EEOC's attorney's fees award. See Hickey's Mem., Ex. 32 (Oct. 5, 2006 letter from Scott to Hickey) ("I am taking a few days and will decide by mid October, 2006, if I'll appeal the Decision. . . . At this time, I am inclined to represent myself."). In this letter, Scott also told Hickey that, even if she appealed without counsel, "[y]ou may file your arguments/briefs as an interested party." Id. Scott ultimately did not appeal, and when Hickey petitioned the EEOC to intervene, the agency concluded that he "ha[d] no standing to contest the [Administrative Law Judge's] award of attorney's fees apart from [Scott's] right to appeal the matter to the Commission, which [she] chose not to do in this case." Hickey's Mem., Ex. 16 (EEOC appeal decision), at 5.

As a fraud claim, this allegation, too, fails because Hickey could not have reasonably relied on Scott's statement that he, as an interested party, could file his own independent brief with the EEOC appeals panel. Indeed, it takes chutzpah for Hickey, a lawyer, to argue that he

reasonably relied on the legal opinions of Scott, a social worker, to his detriment.

Finally, Hickey contends that Scott fraudulently failed to tell him that she received, and began spending, her Title VII damages award.  See Hickey Aff. ¶ 44(O).  He also accuses Scott of fraudulently concealing "[h]er financial inability to pay for the legal services which had been rendered by Mr. Hickey."  Id. ¶ 45(C).  Hickey cannot sustain his claims for fraud based on these alleged omissions, however.  Even assuming that Scott failed to disclose this information, there is no evidence in the record -- and certainly not the requisite "clear and convincing evidence" -- that she did so in a nefarious attempt to deceive Hickey.  See Estate of Nethken, 978 A.2d at 607 (plaintiff must establish "intent to deceive" by "clear and convincing evidence").  Hickey's speculation to the contrary is insufficient to establish fraud.  See Bennett v. Kiggins, 377 A.2d 57, 60 (D.C. 1977) (affirming grant of summary judgment where "fraud could only be discerned, if at all, by means of impermissible speculation").[17]

In sum, Hickey's allegations of fraud each fail to satisfy at least one of the elements of that tort -- and many fail to satisfy more.  Accordingly, the Court will deny Hickey's motion for summary judgment, and will grant Scott's motion for summary judgment, as to this counterclaim for fraud.[18]

---

[17] Although his submissions are less than clear, it appears that Hickey also accuses Scott of fraud in that she "clearly never intended to fully pay Mr. Hickey from the time of commencement of their relationship."  Hickey's Mem. at 13; see also id. at 10 (Hickey "believes that Ms. Scott from the start of their relationship never intended to fully compensate him"); Hickey's Opp'n to Scott's Mot. for Sanctions [Docket Entry 76], at 8 ("[I]f[,] as Hickey believes, Scott prior to the inception of the contract had the intention to never pay Hickey what was due him, she committed fraud.").  Once again, this allegation stands on little more than Hickey's speculation, which cannot sustain his charge of fraud.

[18] Hickey also charges Scott with committing fraud upon the Court.  Specifically, he
(continued...)

B.    Abuse of Process

Abuse of process "lies where the legal system 'has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" Bown v. Hamilton, 601 A.2d 1074, 1079 (D.C. 1992) (quoting Morowitz v. Marvel, 423 A.2d 196, 198 (D.C. 1980)).  "There are two essential elements to an abuse of process claim: '(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.'" Houlahan v. World Wide Ass'n of Specialty Programs & Schs, 677 F. Supp. 2d 195, 199 (D.D.C. 2010) (quoting Hall v. Hollywood Credit Clothing Co., 147 A.2d 866, 868 (D.C. 1959)) (emphasis removed).  "Thus, in addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." Morowitz, 423 A.2d at 198; see, e.g., Restatement (Second) of Torts § 682, Illustration 2 ("A obtains a judgment against B for a debt owed by him.  After the debt has to his knowledge been paid, A takes out execution on the judgment.  A is subject to liability to B for abuse of process.").

Hickey alleges that a number of factual contentions and legal allegations Scott made in her various pleadings in this case were made "for bad faith, or for harassment purpose [sic]," or "recklessly," and thus constitute abuse of process.  Hickey's Mem. at 17.  Specifically, Hickey contends that some of the statements and claims in these pleadings "lack any merit."  See, e.g.,

---

[18](...continued)
contends that even though Scott was represented by counsel, she submitted her initial pleadings in this case pro se "in order that she could improperly get the technical advantages given to a Pro Se defendant."  Hickey Aff. ¶ 56; see also Hickey's Mem. at 13.  The Court has reviewed Hickey's allegations and finds them baseless.

Hickey's Mem. at 16 ("[Scott] initially claimed that Mr. Hickey had terminated the Agreement in Fall 2005, despite a letter from her dated Mar. 20, 2006 specifically terminating him."). Others, he says, "are frivolous." See, e.g., id. at 17 ("[Scott] claimed that Mr. Hickey should have sought an additional $84,000 from DOE based on her interpretation of the Laffey Matrix even though their Agreement did not require the use of the Laffey Matrix."). And still others, Hickey writes, "have no basis in law." See, e.g., id. ("Her claim under [the D.C. Consumer Protection Procedures Act] is not applicable to Mr. Hickey as a practicing attorney."); Hickey's Answer at pp. 17-20.

The Court need not linger on this counterclaim, which is frivolous. Hickey insists that "[Scott's] actions in this case, particularly her early counterclaims[,] must be viewed as blackmailing Mr. Hickey into dropping his litigation." Hickey's Mem. at 18. On this record, no reasonable jury could so find. Even assuming that Scott took various legal positions in this litigation to evade paying Hickey -- and many of the positions Hickey challenges were taken by Scott while defending herself pro se and abandoned once she obtained counsel -- an ulterior motive by itself is insufficient to sustain a claim for abuse of process. See Scott v. Dist. of Columbia, 101 F.3d 748, 755 (D.C. Cir. 1996) ("As the Restatement of Torts makes clear, the fact that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process."); Morowitz, 423 A.2d at 198. And despite Hickey's speculation, there is no evidence that, through this litigation, Scott has "achieve[d] . . . some end not contemplated in the regular prosecution of the charge," or has engaged in a "perversion of the judicial process." Morowitz, 423 A.2d at 198. Hence, summary judgment is appropriate for Scott on this counterclaim.

C.    Conversion

In his final counterclaim, Hickey contends that Scott committed conversion by failing to turn over immediately the EEOC's attorney's fee award, and by failing to pay the interest accrued on this amount.  See Hickey's Answer at p.21; see also Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080, 1089 n.13 (D.C. 2008) ("The essence of a conversion is a wrongful taking or a wrongful retention of property after a rightful possession." (internal quotation marks omitted)).  But any entitlement Hickey had to these fees derived from the parties' agreement, not from the fee award itself.  And "'[f]ailure by a contracting party to pay the contract price or debt . . . is not conversion but merely breach of contract.'"  Id. (quoting Brand Iron, Inc. v. Koehring Co., 595 F. Supp. 1037, 1040 (D. Md. 1984)); see also Brand Iron, 595 F. Supp. at 1040 ("If there is no Maryland case that has specifically stated this distinction, it is probably because it is so generally understood it is not frequently litigated.").  Accordingly, Hickey's counterclaim for conversion fails.

## IV.    **The Parties' Motions for Sanctions**

Arguing that Hickey's counterclaims for fraud and abuse of process are "patently frivolous," Scott seeks sanctions against him pursuant to Federal Rule of Civil Procedure 11.  Scott's Mot. for Sanctions [Docket Entry 73], at 1.  "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) (internal quotation marks omitted).  The rule's text provides, in relevant part, that

[b]y presenting to the court a pleading, written motion, or other paper . . . an

attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

. . .

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b).

Rule 11 permits courts to award sanctions for violations of Rule 11(b).  See Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.").  "The test [for sanctions] under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim.  The Court must also take into consideration that Rule 11 sanctions are a harsh punishment, and what effect, if any, the alleged violations may have had on judicial proceedings.'"  Scruggs, 258 F.R.D. at 180-81 (quoting Sharp v. Rosa Mexicano, D.C., LLC, 496 F. Supp. 2d 93, 100 (D.D.C. 2007)).

The Court agrees with Scott that sanctions are appropriate here.  Hickey's counterclaims for fraud and abuse of process are frivolous.  Any reasonable attorney would have recognized, after the completion of discovery, that the record lacks any evidence of fraud or abuse of process.  And any reasonably attorney would have realized, after even a cursory inquiry, that those claims are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  See Fed. R. Civ. P. 11(b)(2).  Yet not only has Hickey vigorously defended his meritless counterclaims, but he has even sought summary

judgment on them.[19]

Hickey's persistent prosecution of these frivolous counterclaims is consistent with his overall approach to this litigation.  See Atkins v. Fischer, 232 F.R.D. 116, 129 (D.D.C. 2005) ("It has long been held that in considering the implementation of sanctions against a party or a counsel to a litigation, a district court may consider all the circumstances surrounding the alleged violation.").  For one, Hickey's submissions do not reflect the due care that this Court expects from an experienced member of the bar: his filings are filled with often-inaccurate citations to irrelevant caselaw, and include innumerable and blatant typographical and grammatical errors that even a cursory proofread should catch.  More importantly, this is not the first time the Court has criticized Hickey's behavior.  Early in this action, the Court chastised Hickey for "bickering over technical pleading requirements" and for "over-litigation."  May 12, 2008 Order at 2, 3 n.1.  The Court later reiterated its frustration with "Hickey's frequent filings and general litigation strategy."  August 19, 2009 Order [Docket Entry 59], at 1.  Yet Hickey's memoranda reveal that he has consistently failed to heed the Court's warnings; his counterclaims for fraud and abuse of process are merely the most egregious examples.  Accordingly, the Court will grant Scott's motion for sanctions pursuant to Federal Rule of Civil Procedure 11.[20]

---

[19] Scott does not seek sanctions with respect to Hickey's counterclaim for conversion.

[20] Hickey's opposition to Scott's motion for sanctions largely tracks the arguments he makes in his summary judgment briefing, and the Court will not reiterate its discussion of those points here.  Hickey also contends that Scott's motion should be denied because of several technical deficiencies -- for example, that it is duplicitive of her earlier briefing, that it does not adequately describe the conduct that allegedly violates Rule 11, that it does not provide a specific accounting of the attorney's fees and costs sought, and that Scott failed to meet and confer before filing it.  See Hickey's Opp'n to Scott's Mot. for Sanctions at 2-5.  None of these objections is persuasive.  Nor does the Court agree, as Hickey urges, that it "should treat Scott's failure to file a
(continued...)

There remains the question of what sanctions are appropriate in this case. Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Id. Courts possess "virtually untrammeled" discretion in fixing the amount of sanctions to be imposed for Rule 11 violations, provided that the sanctions are "appropriate to the facts of the case." Hilton Hotels Corp. v. Banov, 899 F.2d 40, 46 (D.C. Cir. 1990) (internal quotation marks omitted).

In view of the duration, pattern, and scope of Hickey's sanctionable conduct, the Court concludes that monetary sanctions are necessary to deter further violations of Rule 11. Hickey's counterclaims for fraud and abuse of process required significant expenditures of time, both by the Court and by Scott's counsel. Given the amount of work created by these two plainly meritless counterclaims, the Court concludes that the appropriate sanction is to require Hickey to pay for Scott's reasonable attorney's fees incurred -- following the completion of discovery -- in defending against those counterclaims. Hickey must also pay for Scott's reasonable attorney's fees incurred in seeking these sanctions.[21]

---

[20](...continued)
Reply [in support of her motion for summary judgment] as a withdrawal of" that motion, and as being inconsistent with her motion for sanctions. Id. at 2.

[21] Rule 11(c)(5)(a) prohibits courts from imposing monetary sanctions against "a represented party" for violations of Rule 11(b)(2). Hickey is proceeding pro se on his counterclaims for fraud and abuse of process, and thus is not "a represented party" for purposes of this sanctions award. The Court's discussion of Hickey's sanctionable conduct, and of

(continued...)

Along with his opposition to Scott's motion for sanctions, Hickey has also moved for sanctions pursuant to Rule 11 and 28 U.S.C. § 1927.  Hickey contends that many, if not most, of the legal positions taken by Scott and her counsel throughout this litigation are sanctionable.  See Hickey's Opp'n to Scott's Mot. for Sanctions at 11-21.  Hickey's motion is baseless.  The Court has thoroughly reviewed Scott's numerous submissions to the Court -- including her now-withdrawn counterclaim under the D.C. Consumer Protection Procedures Act.  Based on that review, the Court concludes that none of Scott's filings were "presented for any improper purpose"; that "the claims, defenses, and other legal contentions" therein "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and that "the factual contentions" they include "have evidentiary support."  See Fed. R. Civ. P. 11(b)(1)-(3).  The Court further concludes that neither Scott nor her attorneys have "multiplie[d] the proceedings in [this] case unreasonably and vexatiously."  See 28 U.S.C. § 1927.  Accordingly, the Court will deny Hickey's motion for sanctions.

## CONCLUSION

For the reasons described above, the Court will grant in part and deny in part both Hickey's motion for summary judgment and Scott's motion for partial summary judgment.  The Court will also deny Hickey's motion to strike, will grant Scott's motion to voluntarily dismiss, will grant Scott's motion for sanctions, and will deny Hickey's motion for sanctions.  A separate Order accompanies this Memorandum Opinion.

---

[21](...continued)
Hickey's other behavior during this litigation, does not apply to Hickey's defenses against Scott's counterclaims, for which Hickey is represented by counsel.

_____
/s/
JOHN D. BATES
United States District Judge

Dated: September 16, 2010