UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT J. HICKEY,<br><br>Plaintiff,<br><br>v.<br><br>CHARLENE SCOTT,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. 07-1866 (JDB)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE TESTIMONY
## AND EVIDENCE REGARDING THE LAFFEY MATRIX

**I.   INTRODUCTION**

The Laffey Matrix is a schedule of hourly rates for attorneys prepared by the U.S. Attorney's Office for the District of Columbia. It provides prevailing market rates based on an attorney's year of experience, and is used in the District of Columbia to determine the prevailing wages in the community. *See* September 16, 2010 Memorandum Opinion at n. 11 (citations and quotations omitted).

In her Counterclaims for legal malpractice and breach of fiduciary duty, Charlene Scott ("Scott") alleges that in his fee petition Mr. Hickey failed to request that the hourly fees be set in accordance to the "Laffey Matrix - the prevailing standard for fees in EEOC cases" but "[r]ather submitted his contract billing rate when the Laffey Rates are considerably higher." *See* Counterclaim at ¶¶ 48, 50, 51 and 52.[1]

---

[1] As previously briefed, Mr. Hickey respectfully maintains his position that this aspect of the professional negligence claim fails for the independent reason that, in a fee dispute between an attorney and a client, when the issue concerns the reasonableness of the fee with no complaint about the lawyer's competence, the claim should not be characterized as legal malpractice. Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice*, §1:1 at 6 (4th ed. 2006)

Scott avers that Mr. Hickey should have submitted a fee petition that billed at hourly rates of up to $405 per hour under the Laffey Matrix, rather than at the rate of $225 per hour charged under the Retainer Agreement. *See* Counterclaim at ¶48. However, Scott's legal expert, Kristen Alden, recently testified that there is no duty or obligation on the part of an attorney to charge or petition for fees using Laffey rates.

Because the decision to seek, or not seek, recovery using Laffey rates is "discretionary," it cannot constitute a breach of the standard of care, let alone give rise to a claim for damages. Moreover, Scott cannot prove that the failure to use Laffey rates resulted in any injury or damage to her. Finally, as a discretionary decision on the part of counsel, any determination regarding whether to submit a fee petition using Laffey rates is protected under the doctrine of professional judgment immunity under District of Columbia law.

Therefore, Scott must be precluded from making claims for, or introducing evidence regarding, the Laffey rates. Evidence related to the Laffey Matrix is wholly irrelevant, confusing and misleading, and should not be presented to the jury. Any testimony regarding the Laffey rates is properly excluded at trial and Scott must be precluded from presenting this aspect of her claims to the jury.

## II.  ARGUMENT

### A.  Scott's Expert Admits That There Is No Requirement That An Attorney Use The Laffey Matrix.

There nothing in the regulations governing fee awards in discrimination cases (29 C.F.R. § 1614 501(I)(e)(2)) that mentions the Laffey Matrix, let alone requires its use. Indeed, courts have rejected the mandatory use of the Laffey Matrix, *see Novak v. Capital Mgmt.*, 496 F. Supp. 2d 156, 159 (D.D.C. 2007), and the EEOC has held it will rely primarily on the fee arrangement in the

parties' agreement in making an attorneys' fee award. *Parker v. Solebon*, 01883428, 2152/E12 (1989).

Other courts have specifically held that an attorney cannot receive more than the contract rate. *Johnson v. Georgia Express*, 488 F.2d 714, 718 (5th Cir. 1974) ("In no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount."). In the absence of a duty to charge rates based upon the Laffey Matrix, any claim for negligence based upon Mr. Hickey's failure to do so (Counterclaim at ¶48) cannot be sustained and should not be considered by the jury at trial.[2]

On this issue, Scott's legal expert, Kristen Alden, conceded that there are no cases, guidelines, codes, regulations or any other requirement mandating that a lawyer use Laffey rates when submitting a fee petition:

> Q.  Are you aware of any reported cases, guidelines, government statutes, codes, regulations, anything that requires a lawyer to bill -- submit a fee petition using a Laffey rate?
>
> A.  No.

*See* Excerpts of Alden Deposition, attached as Exhibit 1, at p. 54.

Ms. Alden also acknowledged that, under the applicable legal authority, the billing rate set forth under the retainer agreement between a lawyer and client is the presumptive rate to be used in connection with a fee petition:

> Q.  Is there any adverse authority, and I'm talking about cases, regulations, anything, that suggest that an attorney should rather petition using a contractual rate if that's the attorney's contractual rate?
>
> A.  Is there any authority saying that an attorney should use –
>
> Q.  Should use the lower contract rate rather than the higher Laffey rate in filing a fee petition.

---

[2] Mr. Hickey respectfully submits that the Retainer Agreement is a valid and binding contract between himself and his former client, which appropriately governs the fees to be charged and sought in a fee petition.

3

> A. It's a complicated question. I believe the cases say that if your fee agreement identifies a lower rate than your hourly rate – I'm sorry, than the market rate -- let me back up. Forgive me.
>
> *I believe the cases say that the fee agreement is a presumptive market rate*, but there are multiple circumstances and evidence that the attorney can submit to demonstrate that the fee agreement is not the presumptive market rate and is not the rate for which the attorney should submit the fee petition.
>
> Q. And your use of the word may suggests that the use of the higher Laffey rate is discretionary on the part of the lawyer; is that correct?
>
> A. Well, in theory *submitting the attorney fee petition at all is discretionary*.

*Id.*, Alden Deposition, pp. 54 - 55 (emphasis added).

Scott's legal expert also conceded that, in this case, Mr. Hickey preserved his right to seek attorneys' fees under his contract rate in accordance with the terms of his agreement with Scott, such that he could seek any unpaid sums from the Department of Energy. *Id.* at pp. 42-43.[3]

In light of the expert testimony adduced by Scott, which makes clear that there is no requirement that an attorney use Laffey rates in a fee petition (the filing of which is in itself discretionary), any evidence regarding the Laffey issue should be excluded at trial. For these reasons, evidence regarding the Laffey Matrix is irrelevant. In any event, such evidence

---

[3] On this issue, which was raised on summary judgment, the Court in its September 16, 2010 Opinion observed that "Hickey may be correct that he acted properly in seeking only his contractual rate in his fee petition to the EEOC." Mem. Opinion dated September 16. 2010, Document 86 at p. 12. Noting that Alden "disputes this" and that such disagreement "precludes summary judgment," *Id.* at 12-13, the Court cited to Ms. Alden's Affidavit, which not only pre-dated the testimony, but does not demonstrate that use of Laffey rates is required.

Rather, Ms. Alden's February 19, 2010 Affidavit, Document No. 67-4, merely states that, in her view, "*it is standard* for lawyers who practice federal employment discrimination law to use Laffey Matrix rates in fee petitions regardless of the amount actually charged to the client. *Id.* at p. 11 (emphasis added). However, such a general statement is not tantamount to an opinion that the applicable standard of care *requires* use of the Laffey rates in an attorney's fee petition or that the failure to do so constitutes a breach of the standard of care. *See* Exhibit 2, Alden Affidavit dated Feb. 19, 2010 at ¶ 47.

4

nevertheless should be excluded because of the substantial risk that Mr. Hickey would be unduly prejudiced, and the further danger that it would confuse the issues and mislead the jury.

    **B.**    **Any Laffey-Related Counterclaims Fail Because Scott Lacks The Requisite Expert Testimony.**

Federal Rule of Evidence 702 governs the use of expert testimony in federal courts. In relevant part, the Rule provides: "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," an expert "may testify thereto." Fed. R. Evid. 702; *United States v. Morrow*, 374 F. Supp. 2d 51, 60 (D.D.C. 2005). *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993)(establishing a gatekeeping role for trial court judges in determining the admissibility of expert testimony on scientific evidence, which must be relevant, reliable, and helpful to the jury's evaluation of such evidence); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (extending gatekeeping obligations to non-scientific testimony as well as scientific testimony).

It is well settled that where the subject of alleged negligence is "so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson," *District of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C. 1995) (citing *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987)), a plaintiff is required to provide expert testimony to establish the applicable standard of care, a deviation from that standard, and a causal relationship between the deviation and the injury alleged. *See, e.g., Clark v. District of Columbia*, 708 A.2d 632, 634 (D.C. 1997); *Lasley v. Georgetown Univ.*, 688 A.2d 1381, 1385 (D.C. 1997); *District of Columbia v. White*, 442 A.2d 159, 164 (D.C. 1982). This requirement, which serves to preclude juries from engaging in prohibited speculation or conjecture, *Lasley*, 688 A.2d at 1385, is commonly associated with professional malpractice cases, but nevertheless applies to a broad

5

range of situations involving issues outside the realm of "common knowledge and everyday experience." *Hampton*, 666 A.2d at 35, 36 (citing examples).

Here, the lack of expert testimony regarding the requirements of the applicable professional standard of care is fatal to Scott's Laffey-related claims and mandates exclusion of the testimony. This issue is complex, technical and well outside the common knowledge and experience of the average layperson, thus requiring the presentation of expert testimony, which Scott lacks. Because Scott has no expert testimony that an attorney must use Laffey rates in connection with a fee petition, any Laffey-related evidence or testimony with respect to that issue should be precluded.

### C. Because There Is No Proximately Caused Injury Based On The Failure To Petition At Laffey Rates, Any Testimony Or Evidence Thereof Should Be Excluded.

As to any counterclaim related to Mr. Hickey's failure to submit a fee petition using Laffey rates, there is no evidence that Scott sustained any damages proximately caused by the fee arrangement or billing practices.[4]

The law is clear that a plaintiff must show she sustained some legally cognizable injury as a result of the attorney's negligence. *Chase*, 499 A.2d at 1211-12; *McCord v. Bailey*, 636 F.2d 606, 611 (D.C. Cir. 1980), *cert. denied*, 451 U.S. 983 (1981). In this context, proximate cause requires proof that the "case within the case" would have been successful (or that the outcome would have been different). *Jacobsen v. Oliver*, 451 F. Supp. 2d 181, 187 (D.D.C. 2006).[5]

---

[4] The burden is on Ms. Scott to show specifically how she has suffered or been injured in connection with her Counterclaims. *Weaver v. Bratt*, 421F.Supp.2d 25 (D.D.C. 2006).

[5] A legal malpractice plaintiff is said to have a multiple burden of proof and must present *two* cases: (1) one showing that his attorney performed negligently; and (2) a second or underlying predicate case, showing that the plaintiff had a meritorious claim that he lost due to his attorney's negligence. *Id.;* Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice*, §33.10 at 1035-6 (4th ed. 2006). Only by proving both cases can a former client demonstrate proximate cause in a legal malpractice case. *Id.* "This means that plaintiff must establish not only the attorney's negligence, but also that there should have been a better result in the underlying lawsuit or matter." Mallen & Smith, *Legal Malpractice*, §33.10, p. 1035; *Macktal v. Garde*, 111 F. Supp. 2d 18, 21 (D.D.C. 2000). A valid claim is one that should have either prevailed or achieved a better result. Mallen & Smith, *Legal Malpractice*, §31.17, p. 485.

6

Applying these principles here, there is no evidence that Mr. Hickey's use of his contract rate (as opposed to the higher Laffey billing rate) impacted the ultimate outcome of the underlying case or would not have resulted in a greater monetary award to Scott in the EEOC matter. Here, Scott cannot establish that she would have "fared better" in the underlying EEOC case, *but for* Mr. Hickey's use, or non-use in his fee petition of higher billing rates --- to the contrary, had he used the Laffey rate, *it is he as the attorney,* who would have benefited thereby, and not Scott, because any greater fee award would have ultimately been disbursed to him.[6]

On this issue, Scott's legal expert will not opine that, had Mr. Hickey used Laffey rates in his fee petition, that any difference would have been disbursed to or recoverable by Scott. In that regard, Ms. Alden concedes that how any additional fees are disbursed "depends on the contract between the attorney and the client." Exhibit 1 at pp. 55-56. Scott's expert testified that she was not rendering an opinion regarding whether, had Mr. Hickey petitioned using Laffey rates, the differential would have been disbursed to or recoverable by Scott.

> THE WITNESS:
> A.   You're going to have to ask the question again. . . . The amount of fees that the attorney gets versus the amount of fees that the client gets, that's the question?
>
> Q.   Uh-huh.
>
> A.   I believe the fee agreement and the ethical rules will control that.
>
> Q.   Okay. And that's not something that you're opining about with respect to this case?
>
> A.   Oh, you mean if [Mr. Hickey] had submitted for Laffey and got more fees, where would the money go?
>
> Q.   Right.

---

[6] Scott does not allege that the EEOC would have issued a greater attorneys' fees award if Mr. Hickey had employed different billing practices. *See* Complaint, *passim*. In any event, such a claim would be completely speculative since it would be impossible to predict how, if at all, the administrative law judge's award of attorneys' fees would have been different.

7

A.  No, I'm not going to give an opinion on that.

Exhibit 1 at 65.[7]

Moreover, as this Court itself observed, without resolving the issue, during a Status Conference on October 18, 2010, any differential (between the Laffey rates awarded and the recoverable fees) are not for the claimant to retain, but are rather passed on to the attorney:

> MR. MELEHY: Well, the other layer in that is failing to petition for the Laffey Matrix rates which would go back to her [Scott].
>
> THE COURT: It would only go back through her for the most part. It's not money – attorneys' fees in the Laffey Matrix context or otherwise, although they are the plaintiff's attorneys' fess – and that's not the plaintiff in this case but the plaintiff in the underlying case – *aren't, for the most part, for the plaintiff to retain. They are passed on to the attorney.* So to view the failure to seek the Laffey Matrix amount of fees as an independent damage award to Ms. Scott may be a little bit off target.
>
> Now, I'm not resolving that issue. I'm not sitting here resolving that issue, but I'm not sure you should look at that as a freestanding, independent recover in the normal course of thinks and specifically in the malpractice framework that that's asserted under ....

Exhibit 3, Transcript of proceedings, October 18, 2010 at p. 5 (emphasis added).

As the former client, Scott cannot show that, had a different billing practice been utilized, she somehow would be in a better position than she is now. *See Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C. 1985); *Niosi v. Aiello,* 69 A.2d 57, 60 (D.C. 1949); *Jacobsen,* 451 F. Supp. 2d 181, 187 (D.D.C. 2006).[8] Mr. Hickey's use in his fee petition of his contract rate (as opposed to the higher

---

[7] In that regard, Ms. Alden acknowledged that applying the higher Laffey rates is intended to compensate counsel commensurate with *the lawyer's* experience and the risk taken in prosecuting the lawsuit. Alden Deposition at pp. 92-93. Moreover, Ms. Alden did not foreclose the possibility that, had Laffey rates been used and had the ALJ awarded an additional $84,000.00, that this money would have been distributed to Mr. Hickey in accordance with the terms of the contract (which preserved Mr. Hickey's right to seek additional funds from the Department of Energy), Alden Deposition at pp. 36-39, 42-43, 56, 59, and therefore would not constitute damages to Scott in this legal malpractice case.

[8] As previously briefed in Mr. Hickey's Motion for Summary Judgment, Scott must show that she would have "fared better" or obtained a more favorable award against DOE from the EEOC on the underlying Charge of

Laffey rate) did not result in and is not the proximate cause of any loss to Scott. Therefore, evidence and testimony regarding the Laffey-related issue should be excluded at trial.[9] Because there is no evidence to support a claim that Mr. Hickey's decision to not use the Laffey Matrix proximately caused Scott any loss, the issue is a question of law for the Court to decide now. *Cf. District of Columbia v. Zukerberg*, 880 A.2d 276, 281 (D.C. 2005)("Proximate cause is generally a factual issue to be resolved by the jury, however, it becomes a question of law when the evidence adduced at trial will not support a rational finding of proximate cause." )(internal citations and quotations omitted).

Therefore, Mr. Hickey respectfully requests that this Court exclude evidence and argument concerning the Laffey Matrix to prevent the jury from speculating about theoretical damages that are not the proximate and direct result of Mr. Hickey's alleged acts or omissions.

### D. Mr. Hickey Is Entitled To Judgmental Immunity With Respect To The Decision To Submit A Fee Petition Using His Contract Billing Rate And Not Using The Laffey Matrix Rate.

Mr. Hickey cannot be liable for a mistake of judgment, where the proper course is open to reasonable doubt and where, as trial counsel, he had discretion concerning his billing practices, including whether to submit a fee petition and what hourly billing rate to use in that petition.

---

Discrimination. Because the underlying proceeding was resolved in her favor, she cannot do so. *See Tassin v. Labranche*, 365 So.2d 31 (La. Ct. App. 4th Cir. 1978)(summary judgment granted in legal malpractice action where underlying award was favorable to client, who neither identified a specific act of negligence nor explained why the award was so inadequate as to be an abuse of the factfinder's discretion); *George v. CIGNA Ins. Co.*, 691 So.2d 1209 (Fla. Dist Ct. App. 3d Dist. 1997)(dismissing legal malpractice case where underlying case was favorably resolved in client's favor); *Aquilina v. O'Connor*, 59 A.D.2d 454, 399 N.Y.S. 919 (3d Dep't 1977)(legal malpractice action dismissed because client sustained no damages where underlying case was favorably terminated).

[9] As briefed in Mr. Hickey's Motion for Summary Judgment, Scott has failed to properly mitigate any damages she could conceivably claim as a result of the attorneys' fees award. In March 2005, after terminating Mr. Hickey's services, Scott --- through her new attorney (Leon Swinsen) --- could have appealed the attorneys' fees award, but chose not to do so. By failing to appeal, Ms. Scott has filed to mitigate and has waived any claim for the alleged higher amount. *See Edward M. Crough, Inc. v. Dep't of Gen. Servs. of the District of Columbia*, 572 A.2d 457, 466 (D.C. 1990) ("[t]he doctrine of avoidable consequences, also known as the duty to mitigate damages, bars recovery for losses suffered by a non-breaching party that could have been avoided by reasonable effort and without risk of substantial loss or injury").

9

In the context of legal malpractice claims, courts consistently recognize that attorneys should not be liable for a mistake of judgment, where the proper course is open to reasonable doubt. In that regard, litigation counsel has broad discretion concerning case strategy, which theories to plead, what defenses to raise, litigation tactics, what evidence to present, just to name a few. Mallen & Smith, *Legal Malpractice* §31:8 at 420-21 (2006). These principles have given rise to the development of judgmental immunity for lawyers. *Id.* at 421-425. The doctrine has been recognized by the District of Columbia Court of Appeals in *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 670 (D.C. 2009). *See also Mills v. Cooter*, 647 A2d 1118, 1121-22 (D.C. 1994)(acknowledging the general principle that the conduct of litigation generally rests within the discretion of the attorney and finding that "the second-guessing after the fact of [trial lawyer's] professional judgment was not a sufficient foundation for a legal malpractice claim"). Here, whether to use his contract rate (or the higher Laffey rate) in Mr. Hickey's fee petition is a matter of professional judgment and for which he is entitled to immunity.

Scott's legal expert acknowledged the propriety of Mr. Hickey's use of his contract rate, which Ms. Alden testified was the presumptive rate to be used in submitting a fee petition. Exhibit 1 at pp. 54-55 ("I believe the cases say that the fee agreement is a presumptive market rate . . .."). Ms. Alden also conceded that the submission of a fee petition is, in itself, a discretionary act. *Id.* at p. 55 ("Well, in theory submitting the attorney fee petition at all is discretionary [on the part of the lawyer])." Therefore, it stands to reason that the use of the Laffey rate in a fee petition is likewise discretionary on the part of the lawyer, particularly where the use of the Laffey Matrix is *not mandatory* and there is no reported case, guideline, statute, code, or regulation *requiring* a lawyer to bill using a higher Laffey rate. *Id.* at p. 54.

It is clear that both the decision to submit a fee petition, and the determination regarding which billing rate to use therein, are matters committed to the discretion of litigation counsel, which, are protected by the judgmental immunity doctrine. For these reasons, any claim with respect to the Laffey rate issue is foreclosed under District of Columbia law and any evidence or testimony related thereto should be precluded at trial.

### III.  CONCLUSION

For these reasons, Robert J. Hickey, Counterclaim-Defendant, respectfully requests that this Court enter an Order precluding Scott from making any claim for or eliciting any trial testimony regarding the Laffey Matrix or use of Laffey rates in connection with her counterclaims for legal malpractice and breach of fiduciary duty.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

*/s/ Laura N. Steel, Esq.*
Laura N. Steel, Esq. (D.C. Bar No. 367174)
Kevin Farrell, Esq. (D.C. Bar No. 492142)
700 11th Street, NW, 4th Floor
Washington, DC 20001
Phone: 202-626-7660
Fax: 202-628-3606

***Counsel for Robert J. Hickey, Counterclaim-Defendant***

407109.3