# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT J. HICKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 07-1866 |
| | ) (JDB) |
| | ) |
| CHARLENE SCOTT, | ) JUDGE: BATES, J. |
| | ) |
| Defendant. | ) |

_____

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE TESTIMONY AND EVIDENCE REGARDING DEFENDANT'S AFFIRMATIVE DEFENSES**

## INTRODUCTION

In a two-page memorandum couched as a motion *in limine* and without any legal or factual support, Plaintiff ("Hickey") is essentially arguing for the dismissal of the following affirmative defenses asserted by Scott: statute of limitations, laches, res judicata, payment, and violations of Ethics Rule 1.5. Hickey makes the bald unsupported assertions that these affirmative defenses were not pled with the requisite degree of particularity or alternatively that insufficient information was provided to support them in discovery and that therefore, evidence as to these defenses is inadmissible as irrelevant under Federal Rules of Evidence 402 and 403. Hickey is asking this Court to make a dispositive ruling on these defenses through the wrong procedural vehicle – a motion *in limine*. Additionally, Hickey's arguments are without merit because Scott has pled these affirmative defenses with the requisite degree of particularity and fully and completely responded to Hickey's discovery requests; Hickey has failed to show otherwise through either supporting case law or portions of the record in this case.

## ARGUMENT

**I.  HICKEY IS IMPROPERLY ATTEMPTING TO MOVE FOR THE DISMISSAL OF SCOTT'S AFFIRMATIVE DEFENSES BY FILING A MOTION IN LIMINE.**

Because Hickey has used the wrong procedural mechanism to dismiss this case, his motion should be denied.  Any attempt to use a motion *in limine* to preclude a claim because of a purported lack of evidentiary support must fail.  *See C & E Servs., Inc. v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008).  "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruption." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990); *see also C & E Servs., Inc.*, 539 F. Supp 2d at 323.

The plaintiff is attempting to use his motion *in limine* as a substitute for a motion for summary judgment. A motion *in limine* should be used to narrow evidentiary issues for trial and eliminate unnecessary trial interruptions.  *See Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010).  "[A] motion *in limine* should not be used to resolve factual disputes or weigh evidence." *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Motions *in limine* are not subject to the same procedural safeguards as motions for summary Judgment. *Id.* They should not be substituted for motions for summary judgment. *Id.*

At this stage, the parties should be free to advance their defenses and introduce any evidence they believe supports that defense.  *See Winstead v. Dist. of Columbia*, 720 F. Supp. 2d 44, 49-50 (D.D.C. 2010). In *Williams,* for example, the court denied the plaintiff's motion *in limine* that sought to limit the defendant's presentation of evidence concerning its defense that an employee was required to notify its employer of the plaintiff's claims pursuant to District of

Columbia Whistleblower Protection Act. 747 F. Supp. 2d 10, 15 (D.D.C. 2010). The Court held that while "resolution of whether Plaintiff was required to provide notice under § 12–309 and, if so, whether the notice she provided was sufficient, could substantially narrow the issues that need to be addressed at trial, … a motion *in limine* is [not] the proper vehicle to do so. Such issues are more appropriately addressed in the context of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *Id.*

At this stage in the litigation, Scott is free to assert colorable defenses that were validly raised. *See Winstead*, 720 F. Supp. 2d at 49-50; *Williams*, 747 F. Supp. 2d at 15. Hickey had an opportunity to file a motion for summary judgment and took advantage of that opportunity. He asserted in his Memorandum in Support of his Motion for Summary Judgment that the defendant's affirmative defenses were improper. (Pl. MSJ Mem. at 6-7.) He did not prevail. Thus, the Court should deny the Plaintiff's Motion *In Limine* to Preclude Testimony and Evidence Regarding Defendant's Affirmative Defenses.

If Hickey wishes to have these affirmative defenses dismissed, he can only do so by filing a motion to dismiss or for summary judgment.

## II.    SCOTT'S PLEADING OF HER AFFIRMATIVE DEFENSES SATISFIED THE APPLICABLE PLEADING STANDARD.

The Federal Rules of Civil Procedure require an affirmative defense to be stated only in "short and plain terms." Fed. R. Civ. P 8(b)(1)(A). Nothing more is required and Hickey has failed to provide the Court with any authority to the contrary. Therefore, Scott adequately pled the affirmative defenses of statute of limitations, laches, res judicata, payment, and violations of Ethics Rule 1.5.

### III. HICKEY'S ARGUMENTS THAT SCOTT FAILED TO PROVIDE INFORMATION ABOUT THESE DEFENSES IN DISCOVERY IS ALSO WITHOUT MERIT.

#### A. STATUTE OF LIMITATIONS

First, Hickey argues that this affirmative defense must be dismissed because the length of the limitations period is not clear from the Defendant's answer. That is ridiculous because the limitations period is set forth in a statute and the limitations period is three years.[1]

Hickey also claims that the information was not provided in discovery, but he provides no basis for the Court to conclude that the information that. Hickey has not pointed to any discovery requests in which he requested this information or any responses by Scott which omit the requested information or documents.

#### B. LACHES

Hickey makes the same arguments to support his requested dismissal of the Laches defense. Once again, Hickey is misguided. He has not moved for dismissal of this claim, he has not proven to the Court that Plaintiff withheld this information in discovery and he has failed to demonstrate that Scott did not meet the applicable pleading standard in Rule 8(b).

#### C. RES JUDICATA

Hickey again has used the wrong procedural mechanism for seeking dismissal of this claim. However, as regards this issue, Hickey is also engaging in double-speak. On the one hand, he contends that any defenses raised by Scott are barred by the related doctrine of collateral estoppel. Yet, on the other hand, Hickey's entire case is based upon his collateral attack of the EEOC decision. Had he accepted what the EEOC awarded, this case never would

---

[1] For breach of contract in the District of Columbia, a general, three-year, "catch-all" statute of limitations is applied. D.C. Code § 12-301(8); *see also Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 320 (D.C. 2008). In general, this three-year statute of limitations means "the time when the plaintiff suffers injury." *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 994 (D.C. 1978).

have been filed or litigated.  In any event, Hickey has failed to demonstrate as a matter of law that his claims may be barred by collateral estoppel or res judicata.

Hickey relies upon *Vengas v. Mitchell,* 495 U.S. 82 (1990), in support of his assertion that the principles of res judicata – which include collateral estoppel – bar Scott from re-litigating the issue of whether his attorney's fees were reasonable.  Instead, *Vengas*, supports Scott's argument that any award of attorney's fees belongs to her, not Hickey, and that any Laffey Matrix differential that would have been awarded belonged to her not Hickey. *See id.*

Indeed, *Vengas* establishes that Hickey may be barred by collateral estoppel from claiming that the $47,000.00 in attorney's fees – which the EEOC expressly found unreasonable – was indeed reasonable and chargeable to Scott.  *See id.*  *Vengas* involved a claim by a lawyer for attorney's fees under a contingency fee agreement. The lawyer petitioned for reasonable attorney's fees and the court awarded his client fees in the amount of $117,000.  However, under the contingency agreement, the lawyer was entitled to 40% of the total recovery, or $406,000.

The Court determined that nothing barred the lawyer from collecting more than the fees awarded because the arrangement was controlled by a contingency agreement between lawyer and client:

> Because it is the party, rather than the lawyer, who is eligible, we have consistently maintained that fees may be awarded under §1988, even to those plaintiffs who did not need them to maintain their litigation, either because they were fortunate enough to be able to retain counsel on a fee-paying basis, . . . or because they were represented free of charge by non-profit legal aid organizations. . . .  And just as we have recognized that it is the party's entitlement to receive the fees in the appropriate case, so have we recognized that as far as § 1988 is concerned, it is the party's right to waive, settle or negotiate that eligibility.
> ∗∗∗
> In sum, § 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer.  What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the "reasonable attorney's fee" that a defendant must pay pursuant to

5

a court order. § 1988 itself does not interfere with the enforceability of a contingent-fee contract.

*Id.* at 87-89.

Therefore, as Hickey correctly points out, any additional attorney's fees awarded by the EEOC – beyond those charged by Hickey – belong to Scott. More importantly, Hickey and Scott had an hourly agreement which limited Hickey to an hourly fee of $225 per hour and, by legal implication, permitted Hickey to charge Scott only for reasonable time expenditures. Hickey billed Scott for a great deal of time that was unreasonably spent, far more than the $47,000.00 which the EEOC expressly found unreasonable. Hickey had a full and fair opportunity to demonstrate to the EEOC that his time expenditure was reasonable, but he failed. He cannot now take a contrary position and argue that the $47,000.00 is reasonable.

Hickey has filed a motion *in limine* and seeks to bar evidence of what the EEOC did. Scott should be free to present evidence to the jury demonstrating that the EEOC was at least partially correct when it determined that $47,000.00 of Hickey's fee was unreasonable.

### D. VIOLATION OF ETHICS RULE 1.5

Hickey begins this argument with an incorrect statement – that Scott did not allege in her counter-claims that Hickey violated District of Columbia Rule of Professional Conduct 1.5. (Pl. Mem. at 2.) That is incorrect. In paragraph 36 of Scott's Second Amended Answer, she alleged that Hickey's claims were barred in whole or in part by the fact that Hickey was charging unreasonable fees in violation of Rule 1.5 of the District of Columbia Rules of Professional Responsibility. (Second Am. Answer. ¶ 36.) In Count I (Malpractice) and Count II (Breach of Fiduciary Duty), Scott incorporated all of the allegations previously made, including all affirmative defenses raised. (*Id*. ¶¶ 46, 56.)

Additionally, Hickey argues that a violation of an Ethics Rule does not automatically constitute a defense to a claim for fees or malpractice or a breach of fiduciary duty. (Pl. Mem. at 2.) Hickey is once again wrong. A lawyer's violation of a rule of professional responsibility may constitute a violation of his fiduciary duty to a client. *Griva v. Davison*, 637 A.2d 830, 846-47 (D.C. 1994).

For these reasons, his request for a dispositive ruling on this claim should be denied and Scott should be free to introduce evidence on the issue.

### E. PAYMENT

Hickey's argument regarding payment he received from Scott is utterly and completely frivolous. As this Court acknowledge in its memorandum opinion on summary judgment and Rule 11 sanctions, after the EEOC awarded attorney's fees of $139,338.27, Scott offered to pay Hickey $123,138.27 and Hickey rejected the offer. (Sept. 16, 2010 Mem. Op. at 2.) During the litigation, Scott sent Hickey a check for $123,138.27. (*Id.* at 3, n.1.) The payment was accompanied by a letter stating that Hickey was free to pursue his other claims as the payment was made unilaterally. Hickey was fully aware of the circumstances of the payment and Scott has never argued or intended to argue that the payment was an accord and satisfaction of the entire debt. Hickey's sole argument is that the defense lacks specificity.

While Scott could have been more specific about the circumstances of her offer of payment and her payment of the sums awarded by the EEOC, she was not required to be in her answer. Hickey is fully aware of the circumstances surrounding his disagreement with Scott and the reasons he decided to pursue this litigation.

**CONCLUSION**

For the reasons stated, Hickey's Motion *in Limine* to Preclude Testimony and Evidence Regarding Defendant's Affirmative Defenses should be denied.

Respectfully Submitted,

MELEHY & ASSOCIATES, LLC.


 /s/   Omar Vincent Melehy
Omar Vincent Melehy
Melehy & Associates, LLC
D.C. Bar No. 415849
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
Phone: (301) 587-6364
Fax:    (301) 587-6308
Email: ovmelehy@melehylaw.com
*Attorney for Defendant*