UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT J. HICKEY, <br><br> Plaintiff, <br><br> v. <br><br> CHARLENE SCOTT, <br><br> Defendant. | Civil Action No. 07-1866 (JDB) |

## MEMORANDUM OPINION & ORDER

Plaintiff Robert J. Hickey ("Hickey") brings this suit against defendant Charlene Scott ("Scott") for breach of contract, alleging that Scott failed to pay him the attorneys' fees to which he was entitled after he successfully represented her in a sexual harassment suit before the Equal Employment Opportunity Commission ("EEOC"). Scott has counterclaimed, arguing that Hickey committed legal malpractice and breached his fiduciary duties by engaging in unreasonable billing practices. Scott also contends that Hickey violated the applicable standard of care by failing to request Laffey Matrix hourly rates in his petition for attorneys' fees before the EEOC.[1] Presently before the Court are three evidentiary questions with respect to this claim - - whether the parties' experts should be permitted to testify on (1) whether it is a breach of the appropriate standard of care for an eligible attorney not to request Laffey rates in his fee petition

---

[1] The "Laffey Matrix" is compiled by the Office of the United States Attorney for the District of Columbia, and establishes a market rate for employment attorneys of various experience levels for particular "billing" years. It is used in statutory fee-shifting cases and has its origin in the decision in Laffey v. Nw. Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grds.*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).

before the EEOC, and instead request only his lower, contractual hourly rate; (2) whether Hickey satisfied the legal criteria for an award of Laffey rates; and (3) whether Hickey's failure to petition for Laffey rates was the proximate cause of any injury to Scott.  For the reasons explained below, the Court will allow expert testimony on only the first of these three questions.

      1.      Whether it is a breach of the applicable standard of care for an eligible attorney not to file a fee petition for Laffey rates before the EEOC is a question that the jury must decide, and on which expert testimony is appropriate.  Indeed, in the District of Columbia, expert testimony is required to establish the standard of care in legal malpractice cases "'unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge.'"  Chase v. Gilbert, 499 A.2d 1203, 1211 (D.C. 1985) (quoting O'Neil v. Bergan, 452 A.2d 337, 341 (D.C. 1982)); see also Clay v. Deering, 618 A.2d 92, 95 (D.C. 1992).[2] The type of negligence asserted here -- a failure to petition for Laffey rates -- is not a matter of common knowledge upon which a jury could find legal malpractice in the absence of expert testimony.  Cf. O'Neil, 452 A.2d at 342 (listing, as examples of "[t]he kind of care and skill that can be found within the jury's common knowledge," an attorney's "allowing the statute of limitations to run on the client's claim, or permitting entry of a default against the client") (internal citations omitted).  Therefore, the Court will allow experts to opine on the applicable standard of care, and whether it is a breach of that standard of care for an attorney in Hickey's position not to petition for Laffey rates, as opposed to lower contractual billing rates, from the EEOC.

---

    [2] Because the Court's subject-matter jurisdiction is based on diversity of citizenship, District of Columbia law applies.  See, e.g., Baker v. Gurfein, 744 F. Supp. 2d 311, 316 (D.D.C. 2010); Davis v. Grant Park Nursing Home LP, 639 F. Supp. 2d 60, 64-65 (D.D.C. 2009).

2. The legal criteria for an award of Laffey rates is, however, a matter of law, on which the Court will instruct the jury. And because this is a matter of law, experts will not be permitted to describe the circumstances under which an attorney is legally eligible for Laffey rates. See, e.g., 4 Legal Malpractice § 36:21 (2011 ed.) (explaining that "[b]ecause issues of law are for the court, expert testimony [on issues of law] is not admissible"); CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Assocs., 411 B.R. 571, 587 (N.D. Ill. 2009) (refusing to permit an expert to "testify about his interpretation of Delaware or Maryland fiduciary law" since such testimony "on how to interpret the law could overrride the judge's instructions to the jury, and multiple presentations of the law can create a significant potential for jury confusion"). Once the Court has instructed the jury as to the law on an attorney's eligibility for Laffey rates, the question of whether Hickey satisfied these legal criteria will be one for the jury to decide, based on the Court's instructions and the jury's assessment of the facts that have been presented at trial.

3. The final, and most difficult, question -- whether Hickey's failure to petition for Laffey rates before the EEOC was the proximate cause of Scott's injury -- presents the so-called "case within a case" problem typical of legal malpractice actions. See, e.g., Rubens v. Mason, 387 F.3d 183, 189 (2d Cir. 2004) (explaining that in legal malpractice actions, "[t]he malpractice judge or jury must decide a 'case within a case' and determine what the result would have been absent the alleged malpractice"). In order for Scott to prove that Hickey's failure to petition for Laffey rates proximately caused her injury, she must prove that a reasonable ALJ would have awarded fees at the higher Laffey rates if Hickey had sought them. In other words, Scott must show that the outcome of the ALJ's underlying decision on attorneys' fees would have been more

favorable to her, absent Hickey's alleged negligence.[3]

"[C]ausation is normally a question of fact reserved for the jury." Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C., 133 F. Supp. 2d 747, 762 (D. Md. 2001) (applying Maryland law). In general, then, it is for "the fact-finder in the legal malpractice action [to resolve] . . . whether a reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence." Rubens, 387 F.3d at 189; see also Justice v. Carter, 972 F.2d 951, 957 (8th Cir. 1992) (finding that it was for the jury to "apply the law to the facts" to determine "what a *reasonable judge* would have decided" with respect to the confirmation of a bankruptcy reorganization plan) (emphasis in original). Significantly, the appropriate standard for the fact-finder to apply in making this determination is the objective, "reasonable person" standard, meaning that the fact-finder need not attempt to discern "what a particular judge would have decided" based on the facts before him but only "what a *reasonable judge* would have decided." Justice, 972 F.2d at 957. Applying the "reasonable judge" standard, the fact-finder should decide the probable outcome of the underlying case "by substituting its own judgment for that of the factfinder in the earlier case." Id. And as long as the earlier case does not hinge on a disputed

---

[3] Because the District of Columbia "derives its common law from the state of Maryland," courts applying D.C. law may look to Maryland law when there is no controlling D.C. authority directly on point. Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n, 641 A.2d 495, 507 n.22 (D.C. 1994); see also Hill v. Md. Cas. Co., 620 A.2d 1336, 1337 n.3 (D.C. 1993) (quoting Walker v. Indep. Fed. Sav. & Loan Ass'n, 555 A.2d 1019, 1022 (D.C. 1989)) (explaining that "when 'there are no District cases squarely on point, . . . [and] [i]n the absence of appellate or other authority in this jurisdiction,' this court may give Maryland law special attention because the District 'was carved out of Maryland and derives its common law from that state'"). Here, there is no controlling D.C. authority on the precise issue presented to the Court -- i.e., whether the fact-finder may consider expert testimony in assessing proximate cause in a legal malpractice "case within a case." Accordingly, the Court will look to available Maryland law, as well as law from other jurisdictions.

issue of law, but only involves an application of law to facts, the jury should perform its traditional function of applying law to facts -- "even when the earlier factfinder was a judge, an administrative hearings officer, an arbitrator, a court-martial, or any tribunal deciding on factual grounds." Chocktoot v. Smith, 280 Or. 567, 571 (Or. 1977) (en banc); see also Blanks v. Shaw, 171 Cal. App 4th 336, 357-58 (Cal. App. Ct. 2009) (explaining that "[t]he identity or expertise of the original trier of fact (i.e., a judge or an arbitrator or another type of adjudicator) does not alter the jury's responsibility in the legal malpractice trial within a trial").[4]

Hence, in attorney malpractice cases where causation requires proof of what would have happened in the underlying "case within the case," courts simply "instruct the jury on the legal aspects of the case," and then leave it to the jury to decide, based on the law, what a reasonable fact-finder would have concluded if the attorney had not been negligent. See, e.g., Helmbrecht, 122 Wisc. 2d at 128-30 (explaining that it was for the jury to decide "what a reasonable judge

---

[4] The exception to this rule occurs when the issue of proximate cause turns on a question of law. For example, when a plaintiff sues her attorney for legal malpractice based on the attorney's alleged failure to perfect an appeal, "[t]he trial judge . . . decides the issue of proximate cause as a matter of law." Royal Ins. Co. of Am., 133 F. Supp. 2d at 762. To hold otherwise would require asking "the jury to speculate over what an appellate court might have done" had the attorney appealed, which, in turn, would require the jury to engage in "an analysis of the law and the rules of appellate procedure." Daugert v. Pappas, 704 P.2d 600, 604 (Wash. 1985) (en banc). For this reason, courts have held that "a judge is best suited to determine whether an appellate court would have granted a more favorable judgment for a client had its attorney filed an appeal." Royal Ins. Co. of Am., 133 F. Supp. 2d at 762. Whether the issue of proximate cause in a legal malpractice action should be decided by the judge or the jury thus depends "not on whether the original action is tried before a jury, but, rather, whether the issue remaining in the malpractice action is one of law or one of fact." Helmbrecht v. St. Paul Ins. Co., 122 Wisc. 2d 94, 125 (Wis. 1985). Where, as here, the proximate cause issue in the malpractice action only requires an application of law to facts, "there is no reason why the jury cannot replicate the judgment of another factfinding tribunal, whatever its composition." Chocktoot, 280 Or. at 574; see also Helmbrecht, 122 Wisc. 2d at 129-30 (explaining that once a jury is "properly instructed on the law," it can "reasonably apply the law to the particular facts involved and resolve the issue of what a reasonable judge would have awarded").

would have awarded as property division and maintenance" if a divorce attorney had not been negligent, but that the jury instructions "should have addressed what factors a court applies to its findings of fact in making its determination as to property division and maintenance"); Tarleton v. Arnstein & Lehr, 719 So. 2d 325, 330 (Fla. Dist. Ct. App. 1998) (holding in a legal malpractice case brought by an ex-wife against her divorce attorney that it was for "the jury, sitting as the trier of fact in the dissolution action" to determine whether the ex-wife would have been awarded a higher amount at trial than what she ultimately received under terms of a settlement agreement); Phillips v. Clancy, 152 Ariz. 415, 422 (Ariz. App. Ct. 1986) (concluding, in a malpractice action based on an attorney's failure to request a hearing before an ALJ, that "on remand, in the 'case within the case,' the jury should be instructed on the applicable Social Security law and regulations and be asked if, based on the facts presented, but for the alleged negligence, [the plaintiff] would have been entitled to disability benefits").

This Court will follow that approach here. The jury will be instructed on the applicable law applied in determining an attorney's entitlement to Laffey rates. The jury will then have to decide, based on the Court's instruction as to the law and its own assessment of the facts, whether a reasonable EEOC ALJ would have awarded Laffey rates if Mr. Hickey had sought them.

The only remaining question then is whether the jury should be assisted by expert testimony in making this determination. Most courts to address the issue have suggested that "*any* affidavit or testimony from an 'expert' arbitrator or judge as to what should have happened in the proceeding that is the subject of subsequent malpractice litigation is likely more prejudicial than probative, because the affidavit or testimony would tend improperly to displace the fact-finder in the malpractice 'case within a case.'" See Rubens, 387 F.3d at 191 (emphasis in

original); see also Justice, 972 F.2d at 957 (explaining that evidence of outcomes in "'comparable' court cases" would not assist the jury in determining what a reasonable judge should have decided); Whitley v. Chamouris, 265 Va. 9, 11 (Va. 2003) (noting that expert testimony on causation in a legal malpractice case would be improper, since it would require "either a prediction of what some other fact finder would have concluded," which would be speculative, or "an evaluation of the legal merits" of the underlying claims, which would be impermissible legal opinion); Piscitelli v. Friedenberg, 87 Cal. App. 4th 953, 972-73 (Cal. App. Ct. 2001) (holding that admission of expert testimony on "the ultimate result of the underlying arbitration" constituted a "clear abuse of discretion" since it was "precisely the jury's role to step into the shoes of the arbitrators, consider the facts of [the plaintiff's] underlying claims and ultimately determine their merits").

      This Court agrees.  Here, neither Kristin Alden (Scott's expert) nor Joel Bennett (Hickey's expert) will be allowed to "invade[] the jury's function" by reaching "the ultimate question" of whether a petition for Laffey rates before a "reasonable ALJ" would have been successful, if such a petition had been made.  See Piscitelli, 87 Cal. App. 4th at 973.  Again, a jury in a malpractice case "must attempt to decide the case not as a particular judge or jury, but independently as the factfinder."  Id.  Expert testimony will not assist the jury in performing this independent fact-finding function.  Accordingly, the Court will instruct the jury that it is to decide, based only on the law provided by the Court and the facts presented at trial (and without the aid of expert testimony), whether a reasonable ALJ would have awarded Laffey rates in the underlying EEOC proceeding, if Hickey had sought them.

      The Court recognizes that there is a fine line between expert testimony on why Hickey's

failure to petition for Laffey rates constituted a breach of the standard of care (which is permissible) and expert testimony on whether a reasonable ALJ would have awarded Laffey rates if Hickey had sought them (which is not permissible). For example, Alden will be permitted to testify that, based on her experience before the EEOC, she believes Hickey breached the applicable standard of care by failing to petition for Laffey rates because it is common practice for attorneys in EEOC proceedings to request and receive Laffey rates. See generally Diamond v. Sokol, Civ. A. No. 05-4993, 2007 WL 3168469, at *1 (S.D.N.Y. Oct. 27, 2007) (quoting Middle Mkt. Fin. Corp. v. D'Orazio, Civ. A. No. 96-8138, 2002 WL 31108260, at *8 (S.D.N.Y. Sept. 23, 2002)) (explaining that a legal expert may "address issues rooted in the experience of practicing lawyers" and "offer his or her 'conclusion[s] that the defendant did or did not exercise the appropriate standard of care'"). She will not, however, be permitted to opine on whether, if Hickey had sought Laffey rates, a reasonable ALJ would have awarded them in this case. Although the distinction may be subtle, it is one that must be drawn.

    Accordingly, it is hereby **ORDERED** that

(1) The parties' experts, Kristin Alden and Joel Bennett, shall be permitted to testify on whether it is a breach of the appropriate standard of care for an eligible attorney not to file a fee petition for Laffey rates before the EEOC in the circumstances presented here;

(2) The experts will not be permitted to testify as to whether Hickey satisfied the legal criteria (as set by the Court) for an award of Laffey rates; and

(3) The experts will not be permitted to testify as to whether Hickey's failure to petition for Laffey rates was the proximate cause of Scott's injury, i.e., whether a

reasonable ALJ would have awarded Laffey rates if they had been sought.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　JOHN D. BATES
　　　　　　　　　　　　　　　　　　　United States District Judge

Dated: July 11, 2011